FILED *Paid*

2011 MAR 28 A 9:30

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
N.D. CA. SAN JOSE

99

**REESE RICHMAN LLP**
Michael R. Reese (California State Bar No. 206773)
Kim E. Richman
Belinda L. Williams
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone:     (212) 643-0500
Facsimile:     (212) 253-4272
E-mail: mreese@reeserichman.com
        krichman@reeserichman.com
        bwilliams@reeserichman.com

- and -

ADR

**MILBERG LLP**
Sanford P. Dumain
Peter E. Seidman
Anne Marie Vu (California State Bar No. 238771)
One Pennsylvania Plaza, 49th Floor
New York, New York  10119
Telephone:     (212) 594-5300
Facsimile:     (212) 868-1229
E-mail: sdumain@milberg.com
        pseidman@milberg.com
        avu@milberg.com

*Attorneys for Plaintiff*

HRL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE DIVISION)

KEVIN LOW, individually and on behalf of
all others similarly situated,

        Plaintiff,

    v.

LINKEDIN CORPORATION., a California
Corporation, and DOES 1 to 50 inclusive,

        Defendants.

CASE NO. CV 11 - 01468

COMPLAINT

**CLASS ACTION**

JURY TRIAL DEMANDED

CLASS ACTION COMPLAINT

BY FAX

1      Plaintiff Kevin Low ("Plaintiff" or "Mr. Low") brings this action individually and on
2  behalf of all others similarly situated (the "Class," as defined below), by his undersigned
3  counsel, against LinkedIn Corporation ("LinkedIn," the "Company," or "Defendant") and Doe
4  Defendants 1 to 50 inclusive (collectively with LinkedIn, "Defendants").

5      This case arises from Defendants' intentional and knowing transmission of Plaintiff and
6  the other Class members' personally identifiable browsing history and other person information
7  to third parties, including advertisers, Internet marketing companies, data brokers, and web
8  tracking companies, without the consent or knowledge of LinkedIn users, in violation of federal
9  and state laws, and in violation of the Company's published privacy policy.  Plaintiff and the
10 Class seek damages and equitable relief as alleged below.

11     Plaintiff alleges the following upon personal knowledge as to his own acts, and upon
12 information and belief based on the investigation conducted by Plaintiff's counsel as to all other
13 matters.

14                                      **PARTIES**

15     1.     **PLAINTIFF KEVIN LOW** resides in San Francisco, California. Mr. Low was a
16 registered user of LinkedIn during the time relevant to this action.  LinkedIn has disclosed Mr.
17 Low's personally identifiable information in connection with his browsing history without his
18 consent.  Had he been given the choice, Mr. Low would not have disclosed his personally
19 identifiable browsing history to third parties.  Mr. Low was embarrassed and humiliated by the
20 disclosure of his personally identifiable browsing history.  Moreover, Mr. Low's personally
21 identifiable browsing history is valuable personal property with a market value.  As a result of
22 Defendant's unlawful conduct, Mr. Low relinquished this valuable personal property without the
23 compensation to which he was due.

24     2.     Specifically, Mr Low's personal LinkedIn user identification, and a social search
25 for his own name, was transmitted to third parties by LinkedIn, in association with those third
26 parties' tracking cookies as described below:

27
28

CLASS ACTION COMPLAINT                          - 1 -

- On or about March 24, 2011, via Mr. Low's computer located at his home in San Francisco, California, LinkedIn provided Mr. Low's personal identity to Scorecard Research, linking it to Scorecard's secretly embedded tracking device that surreptitiously recorded Mr. Low's internet browsing history.

- On or about March 24, 2011, via Mr. Low's computer located at his home in San Francisco, California, LinkedIn provided Mr Low's personal identity to Quantcast, linking to it to Quantcast's secretly embedded tracking device that surreptitiously recorded Mr. Low's internet browsing history.

- On or about March 24, 2011, via Mr. Low's computer located at home in San Francisco, California, LinkedIn provided Mr. Low's identity to Nielsen Netratings ("imrworldwide"), linking it to Nielsen's secretly embedded tracking device that surreptitiously recorded Mr. Low's internet browsing history.

3.     **DEFENDANT LINKEDIN** is a business-oriented web-based social networking site that presents itself as an online community offering professionals ways to network *via* e-mail and instant messaging.  It was founded in 2002 and, in February 2008, announced "LinkedIn mobile" for web-enabled wireless phones that use wireless application protocol (WAP). LinkedIn mobile allows users to access LinkedIn from any mobile device.  LinkedIn also provides services to advertisers and marketers.  It sells premium marketing services to individuals and organizations seeking to utilize the vast database of LinkedIn user data, thereby monetizing its users' personal information.

4.     LinkedIn is a California corporation with its principal place of business in the San Jose Division of the Northern District of California.  Specifically, LinkedIn is located at 2029 Stierlin Court, Mountain View, California, which is located within Santa Clara County, California.  It conducts business throughout California and the United States. LinkedIn reported more than 90 million registered users as of January 1, 2011, spanning more than 200 countries

1    and territories worldwide. The Company states that "on average, a new member joins every

2    second of every day, or approximately one million every 12 days." (*See*

3    *http://press.linkedin.com/about/*). In January 2011, LinkedIn filed for an initial public offering

4    and is reportedly valued at $2.51 billion.

5        5.    **THE JOHN DOE DEFENDANTS.** The true names and capacities, whether

6    individual, corporate, associate or otherwise, of each of the defendants designated as a DOE are

7    unknown to Plaintiff at this time and therefore Plaintiff sues the DOE Defendants by such

8    fictitious names, pursuant to California Civil Code § 474. Plaintiff will ask leave of the Court to

9    amend this Complaint to show the true names and capacities of the DOE Defendants when that

10   information is ascertained. Plaintiff is informed and believes, and thereon alleges that each of

11   the defendants designated herein as a DOE is legally responsible in some manner, for the

12   performance of the acts and omissions described below, and is liable for the events and

13   happenings alleged and, in such manner, proximately caused harm to Plaintiff as further alleged.

14       6.    Defendant LinkedIn, and the DOE Defendants, and each of them, are individually

15   sued as participants, co-conspirators, and aiders and abettors in the improper acts, plans,

16   schemes, and transactions that are the subject of this Complaint.

17                          **JURISDICTION AND VENUE**

18       7.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness

19   Act of 2005, 28 U.S.C. § 1332 (a) and 1332 (d), because the amount in controversy exceeds

20   $5,000,000.00 exclusive of interests and costs, and more than two-thirds of the members of the

21   Class are citizens of states different from that of Defendants. This Court also has federal

22   question jurisdiction as this Complaint alleges violations of the Stored Communications Act, 18

23   U.S.C. § 2701 *et seq.*, (the "SCA").

24       8.    Venue for this action properly lies in this District pursuant to 28 U.S.C. § 1391 as

25   Defendant LinkedIn's principal executive office and headquarters are located in California.

26

27

28

CLASS ACTION COMPLAINT                    - 3 -

**STATEMENT OF THE CASE**

**TRACKING COMPANIES AND PERSONAL DATA COLLECTION**

9.      In a year-long investigation into online tracking the *Wall Street Journal* recently "exposed a fast-growing network of hundreds of companies that collect highly personal details about Internet users—their online activities, political views, health worries, shopping habits, financial situations and even, in some cases, their real names—to feed the $26 billion U.S. online-advertising industry," thereby demonstrating how lucrative this industry has become. *Available at http://online.wsj.com/article_email/SB10001424052748703529004576 160764037920274 -lMyQjAxMTAxMDIwODEyNDgyWj.html* (last visited March 25, 2011)

10.     These tracking companies stealthily plant millions of devices, such as "cookies" and "beacons" in the computers and mobile devices. The terms "cookies" and "beacons" are misleadingly innocuous because in fact, "cookies" and "beacons" are devices used to spy on Internet users. Together, they track and record each new page the user visits and links this information to a collective commercial database that combines the records of all the pages that the user has visited in the previous minutes, months and years. The tracking companies use the personal information they thus collect to construct and/or update profiles of what particular users are doing with their web browsers.

11.     Such profiles are often anonymous, meaning that they reflect the viewing habits of some computer user at some IP address, but are not associated with the viewing patterns of a specific person. Not so with LinkedIn users. On the contrary, LinkedIn associates its users unique identifiers with the cookies and beacons that are the keys to their browsing history. LinkedIn thus puts a name to browsing histories that would otherwise be anonymous, thereby exploiting its users' personal information for commercial profit.

12.     As indicated in the quotation below, the "de-anonymization" of otherwise anonymous web browsing and Internet data is a well-recognized phenomenon:

> Information collected voluntarily from a user may be compiled with user metrics such as data stored on cookie files. Thus, data that previously identified a unique person's preferences (such as the sites visited and likely interests), but not the identity of that unique user, made [sic] be combined with personally identifying information, removing the anonymity of web browsing and Internet statistics.

1   Not all sites, however, combine personal information and web statistics. *Ian C.*
    *Ballon, Web Beacons, Cookies and Other Online Data Gathering Mechanisms*, E-
2   Commerce & Internet Law 26.03, at 26-20 (2010-2011 update).

3

4       13.     Consequently, anyone who has used the Internet to discreetly seek advice about

5   hemorrhoids, sexually transmitted diseases, abortion, drug and/or alcohol rehabilitation, mental

6   health, dementia, etc., can be reasonably certain that these sensitive inquiries have been captured

7   in the browsing history and incorporated into a personalized profile which will be packaged for

8   sale to marketers who will then send targeted solicitations to them exploiting that information.

9   If the user is on LinkedIn, their browsing history will be linked to their personal identification

10  and served up to marketers for use as they see fit.

11  **How LinkedIn Puts a Personal Name To Its Users' Profiles**

12      14.     **First,** upon sign-up, LinkedIn assigns each member a unique user identification

13  number that is associated with their name.

14      15.     **Second**, the pages on LinkedIn's website link and transmit the user's unique

15  LinkedIn user ID number with third party tracking IDs (*i.e.*, cookies). These third party tracking

16  IDs function as an index to an extensive record of that person's online reading history as

17  collected by secret tracking "beacons" that are placed around the Web by the third parties and

18  their affiliates. Tracking enables the data aggregators to retain information that can be used to

19  connect records of a person's actions or reading habits across space, cyberspace, or time.

20  LinkedIn's role in this process is to add "social" information such as the name of each user and

21  the other LinkedIn profiles they view and interact with, to the otherwise potentially anonymous

22  tracking process.

23      16.     **Third,** LinkedIn discloses this package of information to third parties, not once,

24  but in updated form each time the member logs in and views pages on the LinkedIn website. This

25  is done in two ways.  One is *via* a standard piece of information called the "HTTP Referer"

26  header, which tells the third party what precise URL the user is looking at.  LinkedIn profile

27  URLs contain the User's ID.  The other is by explicitly adding the LinkedIn User ID as a "URL

28  parameter" when the request is transmitted to the third party.  Together, these transmissions

1  allow third parties to see: (a) which LinkedIn user ID corresponds to each of their Cookie IDs

2  and recorded web browsing histories; and (b) which other LinkedIn profile pages each of those

3  users is looking at and interacting with.

4       17.    The third parties need not do anything further to receive this information; it is

5  readily transmitted to them when members log in and browse around LinkedIn.com.

6       18.    Below is an excerpt from a relevant test transmission:

7  GET /cgi-bin/m1?ci=us-
   603751h&cg=0&cc=1&si=http%3A//www.linkedin.com/profile/view%3Fid%3D**110198243**%26a
8  uthType%3Dname%26authToken%3D2uu_%26goback%3D%252Enmp_*1_*1_*1_*1%26trk
   %3Dnus_variable_vname&rp=http%3A//www.linkedin.com/home%3Ftrk%3Dhb_tab_home_to
9  p&ts=compact&rnd=1300470040318&ja=1
10 HTTP/1.1
   Host: secure-us.imrworldwide.com
11 Referer:
   http://www.linkedin.com/profile/view?id=110198243&authType=name&authToken=2uu_&goba
12 ck=%2Enmp_*1_*1_*1_*1_*1&trk=nus_variable_vname

13
   HTTP/1.1 200 OK
14 **Set-Cookie: V5=AStfNjA7EigrEhowDBgjIy06GyAHO1InHIL9uQ__; expires=Mon,**
   **15-Mar-2021 17:40:40 GMT; domain=.imrworldwide.com; path=/cgi-bin**
15 **Set-Cookie: IMRID=TYOZGIpsDDwAADNSOeY; expires=Mon, 15-Mar-2021 17:40:40**
   **GMT; path=/cgi-bin; domain=.imrworldwide.com**
16

17 In the example above, the LinkedIn user ID and the corresponding cookie identifier are indicated

18 in bold.  Thus, merely logging in and looking at a profile page caused LinkedIn to transmit the

19 user ID bundled with that site's tracking cookie ID to IMRWorldwide/Nielsen Netratings. The

20 LinkedIn pages also sent test profile ID to Quantcast, Scorecard Research and Doubleclick.

21      19.    As set forth below, this illicit process allows online marketers and other data

22 aggregators frightening access to the most intimate details of the user's life.

23

24 **Personal Information is Collected In Profiles That Are Bought and Sold As A Commodity**

25      20.    By collecting personal information from the computers and mobile devices

26 "[w]ebsites and stores can, therefore, easily buy and sell information on visitors with the

27 intention of merging behavioral with demographic and geographic data in ways that will create

28 social categories that advertisers covet and target with ads tailored to them or people like them."

1  Joseph Turow, Jennifer King, Chris Jay Hoofnagle, Amy Bleakley, and Michael Hennessy,

2  *Americans Reject Tailored Advertising and Three Activities that Enable It* (Sept. 29, 2009),

3  *available at* http://ssrn.com/abstract=1478214. Multiple marketers have touted the high market

4  value of this information in targeting consumers based on the data mined from their computers

5  and mobile devices giving credence to the statement, "the more information that is known about

6  a consumer, the more a company will pay to deliver a precisely-targeted advertisement to him."

7  Federal Trade Commission Preliminary Staff Report, *Protecting Consumer Privacy in an Era of*

8  *Rapid Change,* (Dec. 2010) at 24 ("FTC Report").

9      21.    One data aggregator, Audience Science, states that its work involves "recording

10  billions of behavioral events daily and reaching over 385 million unique Internet users" and then

11  making such data available to its clients: "web publishers, marketers, networks, exchanges, and

12  agencies[,] to create intelligent audience segments to connect people with relevant advertising

13  driving    the    transition    to    data-driven    audience    marketing    online."    *See*

14  MediaPost, http://mediapost.com/events/?/showID/OMMAGlobalNewYork.09.NewYorkCity/

15  type/Exhibitor/itemID/647/OMMAGlobalNewYork-Exhibitors%20and%20Sponsors.html    (last

16  visited Mar. 25, 2011).

17      22.    On March 7, 2011, the *Wall Street Journal* published an article under the

18  headline, "Web's Hot New Commodity: Privacy" in which it highlighted a company called

19  "Allow Ltd.," one of nearly a dozen companies that offer to sell people's personal information

20  on their behalf, and given them 70% of the sale. One Allow Ltd. customer received payment of

21  $8.95 for letting Allow tell a credit-card company he is shopping for new plastic. *Id.* In January

22  2011, at the World Economic Forum in Davos, Switzerland, one discussion centered on turning

23  personal data into an "asset class." During the course of the discussion, Michele Luzi, director at

24  consulting firm Bain & Co. stated, "We are trying to shift the focus from purely privacy to what

25  we call property rights." *Id.*

26      23.    LinkedIn has profited handsomely from the sale of these profiles at the expense of

27  its users' privacy. From January 2010 to September 2010 the Company earned $161.4 million in

28  revenue from three products: marketing solutions (advertising), premium subscriptions, and

CLASS ACTION COMPLAINT      - 7 -

1  hiring solutions (job listings).   Advertising accounted for 32% of the Company's revenue

2  ($51.37 million) during that period, and 30% of revenue ($23.8 million) in 2009.  Premium

3  subscriptions accounted for 27% of revenue ($44.1 million) from January to September 2010,

4  and 41% of revenue ($33.2 million) in 2009.  (*See* http://mashable.com/2011/01/28/linkedins-

5  ipo-an-overview/).

6  **LINKEDIN VIOLATES ITS PRIVACY POLICY**

7      24.      LinkedIn's privacy policy, which has been described as a "6,250-word essay" (*see*

8  http://www.pcadvisor.co.uk/news/index.cfm?newsid=3223258&pn=2), is opaque and confusing.

9  One thing, however, is clear: it does not inform LinkedIn users that the Company allows third

10 parties to link their unique identifier with their personal and private browsing history and other

11 personal information. On the contrary, LinkedIn states unequivocally that "We do not sell, rent,

12 or otherwise provide your personal identifiable information to any third parties for marketing

13 purposes."

14      25.      The LinkedIn privacy policy specifically provides:

15

16      Of course, maintaining your trust is our top concern, so we adhere to the
        following principles to protect your privacy:

17          •      *We do not rent, sell, or otherwise provide your personally
                  identifiable information to third parties for marketing purposes.*
18

19          •      We do not share any information you have not chosen to display
                  on your LinkedIn profile to other parties, unless compelled by law, or as
20                necessary to enforce our User Agreement or protect the rights, property, or
                  personal safety of LinkedIn, its Users, and the public.

21          •      All information that you provide will be protected with industry
                  standard protocols and technology.
22

23 (*See* Exhibit A attached hereto)(emphasis added).

24      26.      LinkedIn  fails  to  disclose  that  it  allows  marketers  to  identify  otherwise

25 anonymous cookies.  Instead, it states the opposite:

26      F.      Cookies

27      In the course of serving advertisements or optimizing the Services to our Users,
        we may allow authorized third parties to place or recognize a unique cookie on
28      your browser. *Any information provided to third parties through cookies will*

---

CLASS ACTION COMPLAINT                          - 8 -

*not be personally identifiable but may provide general segment information (e.g., your industry or geography, career field, or information about your professional or educational background) for greater customization of your user experience.* Most browsers are initially set up to accept cookies, but you can reset your browser to refuse all cookies or to indicate when a cookie is being sent. *LinkedIn does not store unencrypted personally identifiable information in the cookies.*

(*See* Exhibit A attached hereto)(emphasis added).

27.     LinkedIn makes the following statements concerning its usage of web beacons:

G.     Advertising and Web Beacons

To support the Services we provide at no cost to our Users, as well as provide a more relevant and useful experience for our Users, we serve our own ads and also allow third party advertisements on the site. These advertisements are targeted and served to Users, by both LinkedIn and other companies, called ad networks. Ad networks include third party ad servers, ad agencies, ad technology vendors and research firms.

Advertisements on LinkedIn may be targeted to Users who fit a certain general profile category (e.g., "product managers in Texas") or may be based on anonymized information inferred from a User's profile (e.g., industry, compensation bracket, gender, age, ethnic origin, nationality, religion, or other aspects of your life) in addition to a User's use of the LinkedIn site. *LinkedIn does not provide personally identifiable information to any third party ad network.*

(*See* Exhibit A attached hereto)(emphasis added).

28.     LinkedIn makes the following statements concerning its usage of log files, IP address and information about the users' computers and mobile devices:

H.     Log files, IP addresses and information about your computer and mobile device

Due to the communications standards on the internet, when you visit the LinkedIn website we automatically receive the URL of the site from which you came and the site to which you are going when you leave LinkedIn. LinkedIn also receives the internet protocol ("IP") address of your computer (or the proxy server you use to access the World Wide Web), your computer operating system and type of web browser you are using, email patterns, mobile device operating system (if you are accessing LinkedIn using a mobile device), as well as the name of your ISP or your mobile carrier. We use this information to analyze overall trends to help improve the service. *The linkage between your IP address and your personally identifiable information is not shared with third parties without your permission, except as described in Section 2.K ("Compliance with Legal Process"), below.*

| CLASS ACTION COMPLAINT | - 9 - | |

1    Section 2.K - Compliance with Legal Process

2    It is possible that we may need to disclose personal information, profile
     information and/or information about your activities as a LinkedIn User when
3    required by subpoena or other legal process, or if LinkedIn has a good faith belief
     that disclosure is necessary to (a) investigate, prevent or take action regarding
4    suspected or actual illegal activities or to assist government enforcement agencies;
     (b) to enforce the User Agreement, to investigate and defend ourselves against
5    any third party claims or allegations, or to protect the security or integrity of our
     site; and/or (c) to exercise or protect the rights, property or personal safety of
6    LinkedIn, our Users, employees, or others.

7    (*See* Exhibit A attached hereto)(emphasis added).

8    29.    With respect to sharing personal information with third parties, LinkedIn makes

9    the following representations:

10    E.    Sharing Information with Third Parties

11    ***LinkedIn takes the privacy of our Users very seriously, and we do not sell, rent,***
      ***or otherwise provide your personally identifiable information to third parties for***
12    ***marketing purposes. Further, we will only share your personally identifiable***
      ***information with third parties to carry out your instructions or to provide the***
13    ***Services or information unless compelled by law, or as necessary to enforce our***
      ***User Agreement or protect the rights, property, or personal safety of LinkedIn,***
14    ***its Users, and the public.*** For example, we use a credit card processing company
      to bill Users for subscription fees. ***These third parties do not retain, share, or***
15    ***store any personally identifiable information except to provide these services,***
      ***and they are bound by confidentiality agreements limiting the use of your***
16    ***information.***

17    (*See* Exhibit A attached hereto)(emphasis added).

18    30.    Concerning sharing information with third party service providers, LinkedIn

19    makes the following representations:

20    F.    Working with Third Parties to Offer Services.

21    We collaborate with third parties to offer services and functionality using
      LinkedIn developer tools such as our application programming interfaces
22    ("APIs"). These third parties are either partners ("LinkedIn Partners") with whom
      we have negotiated an agreement to provide services ("Combined Services"), or
23    developers ("Platform Developers") who have agreed to our API terms in our
      developer signup flow to build applications ("Platform Applications"). Both the
24    negotiated agreements and our API terms and conditions contain restrictions on
      access, storage and use of your information.

25                          *        *        *

26    If you, your connections, members of your network, or other Users of LinkedIn
27    use or interact with any Combined Service or Platform Application, the LinkedIn
      Partner or Platform Developer may access and share certain information about
28    you with others, such as your profile information and information visible only to

CLASS ACTION COMPLAINT                    - 10 -

your connections. This includes information about your connections by virtue of you being connected to others. However, **because a Combined Service or Platform Application can make calls on behalf of the User interacting with it to access non-public information, the level of detail accessible by the Combined Service or Platform Application through LinkedIn is constrained by the same settings that govern visibility of your data to that User on LinkedIn. For example, assuming you have not already given a Platform Developer's application permission to access your information, your non-public profile information should not be visible to someone using the same Platform Application if it is not otherwise accessible to that person on LinkedIn.**

(*See* Exhibit A attached hereto) (emphasis added).

31.    Furthermore, even if the LinkedIn privacy agreement did accurately describe LinkedIn's disclosure of its users' personal information, which it does not, it is now widely accepted that such privacy policies are ineffective when it comes to providing consumers with useful and accurate information about how their personal information will be collected and used. In a preliminary staff report prepared by the Federal Trade Commission, entitled, *Protecting Consumer Privacy in an Era of Rapid Change*, the Federal Trade Commission stated that, "[T]he notice-and-choice model, as implemented, has led to long, incomprehensible privacy policies that consumers typically do not read, let alone understand" and that they are wholly inadequate in an age in which companies "collect and use consumers' information in ways that often are invisible to consumers." FTC Report at iii.   The FTC also found that "privacy notices are often opaque, lack uniformity, and are too long and difficult to navigate.   Too frequently they bury disclosures of important information. . . . A particularly strong illustration of where privacy policies have been ineffective is in the mobile context where, because of the small size of the device, a privacy notice can be spread out over 100 separate screens.   Indeed, it is difficult to imagine consumers scrolling through each screen or making informed choices based on the information contained in them." *Id.* at 70.   *See also*, Aleecia M. McDonald & Lorrie Faith Cranor, *The Cost of Reading Privacy Policies*, 4 I/S L.J. & Pol'y for Info. Soc'y 543, 565 (2008) (estimating that it would take consumers hundreds of hours to read the privacy policies they might typically encounter in one year on the Internet).

32.    Research confirms that consumers almost never get past the first few sentences of privacy policies or terms of service, if they read them at all, and that, moreover, when they see

1   the hyperlinked words "Privacy Policy" on a Web site, they assume that they mean that their

2   information is not being collected or shared, even if the policy says just the opposite. *See* Turow,

3   *supra*. This is especially so when the first few sentences of the privacy policy evince concern

4   for maintaining the users' privacy. The take-it-or-leave-it LinkedIn "privacy policy" --- which

5   would be more aptly named a "disclosure policy" --- is no exception. Statements such as:

6   "maintaining your trust is our top concern," "LinkedIn takes the privacy of our Users very

7   seriously, and we do not sell, rent, or otherwise provide your personally identifiable information

8   to third parties for marketing purposes," its representation that it is a licensee of the "TRUSTe

9   Privacy Program," and that it participates in the EU Safe Harbor Privacy Framework as set forth

10  by the U.S. Department of Commerce, falsely indicates to most consumers that LinkedIn is

11  guarding their personal information when the opposite is the case.

12      33.     Moreover, LinkedIn's "privacy policy" misleadingly makes distinctions between

13  Personal Identifiable Information ("PII") and anonymous information and states that to the extent

14  it provides PII to third parties to provide authorized services, "[t]hese third parties do not retain,

15  share, or store any personally identifiable information except to provide these services, and they

16  are bound by confidentiality agreements limiting the use of your information." This falsely

17  suggests that LinkedIn protects the users' personal information from disclosure, when in fact it

18  does not and misleadingly suggests that PII is substantively different from non-personally

19  identifiable information when in practice, this distinction is irrelevant to privacy issues:

20          Data privacy historically has been thought of in terms of *personally identifying*
            *information* (alternatively called *personally identifiable or individually*
21          *identifiable* information or referred to simply as *PII*). Attention had been focused
            on personal data that could identify an individual person --- by data elements such
22          as the person's name, postal address, email address, social security number or
            driver's license number --- as opposed to aggregate data, which may be useful to
23          companies but not reveal anything in particular about any individual user, or data
            unique to a person that could distinguish that person from someone else, but not
24          reveal a person's identity (such as cookie data that shows almost everything about
            a user's use of a site except who that user is). . . . The Federal Trade Commission
25          noted in a 2009 report, however, that changes in data collection and use practices
            and new technologies increasingly make the distinction between PII and non-PII
26          less meaningful. . . . As technologies improve, it is assumed that it will be easier
            to actually identify a specific person based on data that to date has been
27          considered non-PII or pseudonymous. . . .

28

Even where data itself is anonymous or pseudonymous, it can become identifiable when combined and linked together. . . . Thus, distinctions between PII and non-PII may not have any bearing on the particular privacy risks at issue. . . . For all these reasons, the FTC has suggested that, at least in the context of behavioral advertising, the relevant criteria is *whether information reasonably could be associated with a particular consumer or device*, not whether it is PII or non-PII.

The increased use of third party cookies, the use of cookies for increasingly more sensitive data and the practice of some sites in combining information voluntarily obtained with data collected through cookies and other technical means have blurred the difference between personally identifying information and non-PII.

Ian C. Ballon, *E-Commerce and Internet Law: Treatise With Forms,* 26.01 Data Privacy Law - In General, at pp. 26-7 - 26-9, and 26.03 Web Beacons, Cookies and Other Online Data Gathering Mechanisms, at pp. 26-20 - 26-21 (2d ed. West 2009).

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a Class defined as follows: All persons who reside in the United States and who, any time after March 25, 2007 had signed up for LinkedIn's services.

35.     Excluded from the Class are Defendant; any parent, subsidiary, or affiliate of Defendant or any employees, officers, or directors of Defendant; legal representatives, successors, or assigns of Defendant; and any justice, judge or magistrate judge of the United States who may hear the case, and all persons related to any such judicial officer, as defined in 28 U.S.C. § 455(b).

36.     **Numerosity**. The Class members are so numerous and dispersed nationwide that joinder of all members is impracticable.   Upon information and belief, the Class members number in the hundreds of thousands, if not millions.   The exact number of Class members is unknown, but can be determined from Defendant's computerized and other records.   Plaintiff reasonably estimates and believes that there are thousands of persons in the Class.

37.     **Commonality**. There are numerous and substantial questions of law and fact that are common to all members of the Class, which predominate over any question affecting only individual Class members. The members of the Class were and continue to be subjected to the

1  same practices of the Defendants. The common questions and issues raised by Plaintiff's claims

2  include:

3            (a)     whether Defendants shared Plaintiff's and the Class's personal

4  information with third-party advertisers and online tracking companies;

5            (b)     whether LinkedIn violated its own Terms and Privacy Policies by sharing

6  of Plaintiff's personal information with third-party advertisers, and online tracking companies;

7            (c)     whether LinkedIn breached its contract with consumers, and if so, the

8  appropriate measure of damages and remedies against Defendant for such breach;

9            (d)     whether LinkedIn breached the covenants of good faith and fair dealing,

10  and if so, the appropriate measure of damages and remedies against Defendant for such breach;

11            (e)     whether Defendants violated the SCA; California Business and

12  Professions Code § 17200 *et seq.*; California Business and Professions Code § 17500 *et seq.*;

13  Consumer Legal Remedies Act, California Civil Code § 1750; Article I, Section 1 of the

14  California Constitution; and other violations of common law;

15            (f)     whether Plaintiff and the Class have been damaged as a result of

16  Defendants' alleged violations as alleged herein; and, if so, the appropriate relief for Defendants'

17  violations; and

18            (g)     whether Defendants have been unjustly enriched as a result of its unlawful

19  conduct, and, if so, whether Defendants should disgorge inequitably obtained money that they

20  have been unjustly enriched by; and, the nature and extent of any other remedies, and injunctive

21  relief, to which Plaintiff and the Class are entitled.

22       38.   **Typicality**. Plaintiff's claims are typical of the claims of all of the other members

23  of the Class, because his claims are based on the same legal and remedial theories as the claims

24  of the Class and arise from the same course of conduct by Defendants.

25       39.   **Adequacy**. Plaintiff will fairly and adequately protect the interests of all

26  members of the class in the prosecution of this Action and in the administration of all matters

27  relating to the claims stated herein. Plaintiff is similarly situated with, and has suffered similar

28  injuries as, the members of the Class he seeks to represent. Plaintiff has retained counsel

1  experienced in handling class action lawsuits.  Neither Plaintiff nor his counsel have any interest

2  that might cause them not to vigorously pursue this action.

3      40.  **Superiority**.  A class action is superior to other available methods for the fair and

4  efficient adjudication of the controversy, since individual joinder of the Class members is

5  impracticable.  Even if individual Class members were able to afford individual litigation, it

6  would be unduly burdensome to the Courts in which the individual litigation would proceed.

7  Defendants have subjected the Class to the same violations as referenced herein.  Accordingly,

8  class certification is appropriate under Rule 23 because common issues of law and fact regarding

9  Defendants' uniform violations predominate over individual issues, and class certification is a

10  superior method of resolving these claims.  No unusual difficulties are likely to be encountered

11  in the management of this action as a class action.  Defendants acted and continue to act in a

12  manner that is generally applicable to all members of the Class, making final injunctive relief

13  appropriate.

## FIRST CAUSE OF ACTION
### (Stored Communications Act, 18 U.S.C. § 2701 *et seq.*)

16      41.  Plaintiff hereby incorporates by reference the allegations contained in all of the

17  preceding paragraphs of this complaint.

18      42.  Defendants provide electronic communication service to the public *via* their

19  LinkedIn accounts.  18 U.S.C. § 2510(15).

20      43.  Defendants provide remote computing service to the public because they provide

21  computer storage and processing services by means of an electronic communications system.  18

22  U.S.C. § 2711(2).

23      44.  LinkedIn users' personal identification numbers and personal information are

24  stored by Defendants are electronic communications within the meaning of 18 U.S.C. § 2510

25  (12).

26      45.  Defendants hold their users' personal identification number and personal

27  information in electronic storage within the meaning of 18 U.S.C. § 2510(17).

28

46.     In relevant part, 18 U.S.C. § 2701(a)(1)-(2) of the SCA provide that an offense is committed by anyone who: "(1) intentionally accesses without authorization a facility through which electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains . . . [an] electronic communication while it is in electronic storage in such system."

47.     Defendants intentionally exceeded their authorization to access and control confidential and private information relating to Plaintiff's and the Class's electronic communications in violation of 18 U.S.C. § 2701 *et seq.* of the SCA.

48.     In relevant part, 18 U.S.C. § 2702(a)(1)-(2) of the SCA provides that a person or entity shall not: "(1) . . . knowingly divulge to any person or entity the contents of a communication . . . ; and (2) . . . shall not knowingly divulge to any person or entity the contents of any communication . . . ."

49.     Section 2707 of the SCA provides for a civil cause of action and allows for damages, and declaratory and equitable relief.

50.     Defendants knowingly divulged confidential and private information relating to Plaintiff's electronic communications in violation of 18 U.S.C. § 2701 *et seq.* of the SCA.

51.     Defendants engage in the foregoing acts without obtaining the lawful consent of the user. 18 U.S.C. § 2702(b)(3).

52.     By engaging in the foregoing acts, Defendants knowingly divulge the contents of communication carried and maintained by Defendants on behalf of and received by transmissions from their users in violation of 18 U.S.C. § 2702(a)(2).

53.     Plaintiff and the Class are entitled to statutory damages of no less than $1,000.00 (one thousand dollars) per violation.   Because Defendants' violations were willful and intentional, Plaintiff and the Class are entitled to recover punitive damages as provided by 18 U.S.C. § 2702(c).

## SECOND CAUSE OF ACTION
### (Article I, Section 1 of the California Constitution)

54.    Plaintiff hereby incorporates by reference the allegations contained in all of the preceding paragraphs of this complaint.

55.    The California Constitution expressly grants an inalienable right to privacy.

56.    Plaintiff had a legally protected informational privacy interest in the confidential and sensitive information that Defendants obtained from him and unlawfully disseminated.

57.    Plaintiff had a legally protected autonomy privacy interest in making intimate personal decisions regarding their use of the Internet without observation, intrusion or interference.

58.    Plaintiff reasonably expected that his confidential and sensitive information and intimate personal decisions would be kept private.

59.    Defendants committed a "serious invasion of privacy" by revealing Plaintiff's PII in conjunction with data tracking cookies.

## THIRD CAUSE OF ACTION
### (Violation Of California Business And Professions Code § 17200 *et seq.*
### Unfair Competition)

60.    Plaintiff hereby incorporates by reference the allegations contained in all of the preceding paragraphs of this complaint.

61.    At all relevant times, Defendants engaged, and continue to engage, in unfair, unlawful, and fraudulent business practices in California by engaging in the misconduct detailed above.

62.    Defendants misled consumers by continuously and falsely representing during the Class Period that they would not make personally identifiable information available to third parties without the consent of Plaintiff when in fact it secretly provided such information to third parties as alleged herein.

63.    Defendants engaged in these unfair and fraudulent practices to increase their profits.  The business practices alleged above are unlawful under § 17200 *et seq.* because they

1  violate § 17500 *et seq.*, the Stored Communications Act, California's Consumer Legal Remedies

2  Act, California Constitution, Article 1, Section 1, and the other claims named herein, among

3  others.

4       64.  Had Plaintiff known that Defendants would share his personally identifiable

5  information with third parties, his would not have purchased or used to Defendants' services,

6  which in turn, forced his to relinquish, for free, valuable personal information. As a result of

7  Defendants' acts of unfair competition, Plaintiff and the Members of the Class have suffered, and

8  continues to suffer, injury in fact and have lost money and/or property as a result of such

9  fraudulent, unfair, and/or unlawful business practices, in an amount that will be proven at trial,

10  but which is in excess of the jurisdictional minimum of this Court.

11       65.  The aforementioned practices that Defendants have used, and continue to use to

12  their significant gain, also constitute unlawful competition and provide an unlawful advantage

13  over Defendants' competitors, as well as injury to Plaintiff.

14       66.  Plaintiff seeks full restitution and disgorgement of money, as necessary and

15  according to proof, to restore to Plaintiff the value of all personal information that Defendants

16  unlawfully converted by means of the unfair and/or fraudulent business practices complained of

17  herein, plus interest thereon.

18       67.  Plaintiff seeks an injunction to prohibit Defendants from continuing to engage in

19  the unfair trade practices complained of herein. Cal. Bus. & Prof. Code § 17203. The acts

20  complained of herein occurred, at least in part, within the Class Period.

21       68.  Plaintiff is further entitled to and does seek both a declaration that the above-

22  described business practices are unfair, unlawful, and/or fraudulent, and injunctive relief

23  restraining Defendants from engaging in any of such practices in the future. Such misconduct by

24  Defendants, unless and until enjoined and restrained by order of this Court, will continue to

25  cause injury in fact to the general public and the loss of money and property because Defendants

26  will continue to violate the law, unless specifically ordered to comply with the same. This

27  expectation of future violations will require current and future customers to repeatedly and

28

1 continuously seek legal redress in order to recoup monies paid to Defendants to which
2 Defendants are not entitled.

3 **FOURTH CAUSE OF ACTION**
**(Violation Of California Business and Professions Code § 17500, *et seq*.**
4 **Untrue and Misleading Statements)**

5 69. Plaintiff hereby incorporates by reference the allegations contained in all of the
6 preceding paragraphs of this Complaint.

7 70. Plaintiff asserts this cause of action against Defendants for violations of
8 California Business and Professions Code § 17500 *et seq*. for untrue and misleading statements.

9 71. At all relevant times, Defendants engaged in a scheme of offering its LinkedIn
10 services to Plaintiff by way of, *inter alia*, commercial marketing and advertising, the World
11 Wide Web (Internet), product packaging and labeling, and other promotional materials. These
12 materials misrepresented and/or omitted the truth about the extent to which Defendants would
13 share valuable personal information with third parties. Defendants knew, or should have known,
14 that these statements were deceptive, misleading, or untrue.

15 72. Said advertisements and inducements were made within the State of California
16 and come within the definition of advertising as contained in Business and Professions Code
17 § 17500 *et seq*. in that such promotional materials were intended as inducements to purchase and
18 use products and services offered by Defendants and are statements disseminated by Defendants
19 to Plaintiff and were intended to reach Plaintiff. Defendants knew, or should have known, that
20 these statements were misleading and deceptive.

21 73. In furtherance of said plan and scheme, Defendants have prepared and distributed
22 within the State of California *via* commercial marketing and advertising, the World Wide Web
23 (Internet), product packaging and labeling, and other promotional materials, statements that
24 misleadingly and deceptively represent the truth about personal information that LinkedIn users
25 entrust to Defendants.

26 74. Consumers, including Plaintiff, were among the intended targets of such
27 representations.

28

CLASS ACTION COMPLAINT - 19 -

75.     The above acts of Defendants, in disseminating said misleading and deceptive statements throughout the State of California to consumers, including Plaintiff, were and are likely to deceive reasonable consumers, including Plaintiff, by obfuscating the truth about Defendants' use of their personal information.

As a result of the above violations, Plaintiff has suffered injury in fact and lost money or property.  Plaintiff and the Members of the Class, pursuant to Business and Professions Code § 17535, are entitled to an order of this Court enjoining such future conduct on the part of Defendants, and such other orders and judgments that may be necessary to return Defendants' ill-gotten gains and restore to any person in interest any money paid for Defendants' services as a result of the wrongful conduct of Defendants.

## FIFTH CAUSE OF ACTION
### (Violation of the California Consumer Legal Remedies Act – Cal. Civ. Code § 1750 *et seq.* – Injunctive Relief Only)

76.     Plaintiff hereby incorporates by reference the allegations contained in all of the preceding paragraphs of this complaint.

77.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (the "CLRA").  This cause of action does not seek monetary damages at this point, but is limited solely to injunctive relief.  Plaintiff will amend this Class Action Complaint to seek damages in accordance with the CLRA after providing the Defendants with notice pursuant to California Civil Code § 1782.

78.     Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or that have resulted, in the sale or lease of goods or services to consumers.

79.     Plaintiff is a "consumer" as that term is defined by the CLRA in California Civil Code § 1761(d).

80.     Defendants provided "services" to Plaintiff within the meaning of California Civil Code § 1761(b).

81.     By engaging in the actions, misrepresentations, and misconduct set forth in this Class Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(5) by misrepresenting that the service has particular uses, benefits, or quantities that they do not have.

82.     By engaging in the actions, misrepresentations, and misconduct set forth in this Complaint, Defendants violated, and continue to violate, § 1770(a)(7) by misrepresenting the service is of a particular standard, quality, or grade.

83.     By engaging in the actions, misrepresentations, and misconduct set forth in this complaint, Defendants violated, and continue to violate, § 1770(a)(9) by advertising services with intent not to sell them as advertised.

84.     By engaging in the actions, misrepresentations, and misconduct set forth in this complaint, Defendants violated, and continue to violate, § 1770(a)(16) by misrepresenting that a subject of a transaction has been supplied in accordance with a previous representation when they have not.

85.     Plaintiff requests that this Court enjoin Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendants are not restrained from engaging in these types of practices in the future, Plaintiff and the Class will continue to suffer harm.

## SIXTH CAUSE OF ACTION
### (Breach of Contract)

86.     Plaintiff hereby incorporates by reference the allegations contained in all of the preceding paragraphs of this complaint.

87.     Plaintiff submits personal information to LinkedIn and LinkedIn promises that it will not share this information with third-party advertisers without Plaintiff's consent, and the consent of each Class member, respectively.

88.     The LinkedIn Privacy Policy states that LinkedIn will not divulge personal information to outside advertising companies without the user's consent. Despite this promise, LinkedIn did in fact knowingly share users' personal information with third-party advertisers in violation of its own Agreement with its users.

89. Plaintiff never consented to the sharing of his personal information to third-party advertisers.

90. Plaintiff has performed his obligations under the contract.

91. LinkedIn materially breached its contractual obligations through its conduct as alleged herein, including its transmission of Plaintiff's personal information to third-party advertisers, as well as Plaintiff's personal identification number without consent.

92. Plaintiff and the Class have been damaged as a direct and proximate result of LinkedIn's breach of their agreements with Plaintiff and the Members of the Class.

**SEVENTH CAUSE OF ACTION**
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

93. Plaintiff hereby incorporates by reference the allegations contained in all of the preceding paragraphs of this complaint.

94. As set forth in the Sixth Cause of Action, Plaintiff submits personal information to LinkedIn and LinkedIn promises in its Privacy Policy that it will not share this information with third-party advertisers without Plaintiff's consent, and the consent of each Class member, respectively.

95. A covenant of good faith and fair dealing, which imposes upon each party to a contract a duty of good faith and fair dealing in its performance, is implied in every contract, including the Agreement that embodies the relationship between LinkedIn and its users.

96. Good faith and fair dealing is an element imposed by common law or statute as an element of every contract under the laws of every state. Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to violate the spirit of the bargain and not to intentionally do anything to injure the other party's right to receive the benefits of the contract.

97. Plaintiff reasonably relied upon LinkedIn to act in good faith both with regard to the contract and in the methods and manner in which it carries out the contract terms. Bad faith can violate the spirit of the Agreement and may be overt or may consist of inaction. LinkedIn's

1  inaction in failing to adequately notify Plaintiff of the release of personal information to outside

2  advertisers evidences bad faith and ill motive.

3      98.    The contract is a form contract, the terms of which Plaintiff is deemed to have

4  accepted once Plaintiff and the Class signed up with LinkedIn. The contract purports to give

5  discretion to LinkedIn relating to LinkedIn's protection of users' privacy. LinkedIn is subject to

6  an obligation to exercise that discretion in good faith. The covenant of good faith and fair

7  dealing is breached when a party to a contract uses discretion conferred by the contract to act

8  dishonestly or to act outside of accepted commercial practices. LinkedIn breached its implied

9  covenant of good faith and fair dealing by exercising bad faith in using its discretionary rights to

10 deliberately, routinely, and systematically make Plaintiff's personal information available to

11 third parties.

12     99.    Plaintiff has performed all, or substantially all, of the obligations imposed on him

13 under the contract, whereas LinkedIn has acted in a manner as to evade the spirit of the contract,

14 in particular by deliberately, routinely, and systematically without notifying Plaintiff of its

15 disclosure of his personal information to third-party advertisers. Such actions represent a

16 fundamental wrong that is clearly beyond the reasonable expectations of the parties. LinkedIn's

17 disclosure of such information to third party advertisers and tracking companies is not in

18 accordance with the reasonable expectations of the parties and evidences a dishonest purpose.

19     100.   LinkedIn's ill motive is further evidenced by its failure to obtain Plaintiff's

20 consent in its data mining efforts while at the same time consciously and deliberately utilizing

21 data mining to automatically and without notice providing user information to third-party

22 advertisers and Internet tracking companies. LinkedIn profits from advertising revenues derived

23 from its data mining efforts from Plaintiff and the Class.

24     101.   The obligation imposed by the implied covenant of good faith and fair dealing is

25 an obligation to refrain from opportunistic behavior. LinkedIn has breached the implied

26 covenant of good faith and fair dealing in the Agreement through its policies and practices as

27 alleged herein. Plaintiff and the Class have sustained damages and seek a determination that the

28

CLASS ACTION COMPLAINT                          - 23 -

1   policies and procedures of LinkedIn are not consonant with LinkedIn's implied duties of good

2   faith and fair dealing.

3

### EIGHTH CAUSE OF ACTION
### (Common Law Invasion Of Privacy)

4

5      102.   Plaintiff hereby incorporates by reference the allegations contained in all of the

6   preceding paragraphs of this complaint.

7      103.   Plaintiff had a legally protected informational privacy interest in the confidential

8   and sensitive information that Defendants obtained from his and unlawfully disseminated.

9      104.   Plaintiff and the Class members had a legally protected autonomy privacy interest

10   in making intimate personal decisions regarding their use of their computers and mobile devices

11   without observation, intrusion or interference.

12      105.   Plaintiff and the Class members reasonably expected that their confidential and

13   sensitive information and intimate personal decisions would be kept private.

14      106.   Defendants intentionally committed a "serious invasion of privacy" that would be

15   highly offensive to a reasonable person by making public Plaintiff's personally identifying

16   information in conjunction with her personal identification number and data tracking cookies.

17      107.   As a consequence, Plaintiff was personally injured and suffered emotional distress

18   damages.

19

### NINTH CAUSE OF ACTION
### (Conversion)

20

21      108.   Plaintiff hereby incorporates by reference the allegations contained in all of the

22   preceding paragraphs of this complaint.

23      109.   Plaintiff's personal browsing history and other personally identifiable information

24   – including full name, email address, mailing address, zip code, telephone number, and credit

25   card number – is valuable property owned by Plaintiff.

26      110.   Defendants unlawfully exercised dominion over said property and thereby

27   converted Plaintiff's and the Class members' respective personal information by providing it to

28

| CLASS ACTION COMPLAINT | - 24 - | |

third parties in violation of the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, and in violation of its contracts with Plaintiff and the respective class members.

111. Plaintiff and the Class were damaged thereby.

## TENTH CAUSE OF ACTION
### (Unjust Enrichment)

112. Plaintiff hereby incorporates by reference the allegations contained in all of the preceding paragraphs of this complaint.

113. By engaging in the conduct described in this Complaint, Defendants have knowingly obtained benefits from Plaintiff under circumstances that make it inequitable and unjust for Defendants to retain them.

114. Defendants have received a benefit from Plaintiff and Defendants have received and retained money from advertisers and other third parties as a result of sharing the personal information of Defendants' users' with those advertisers without Plaintiff's knowledge or consent as alleged in this Complaint.

115. Plaintiff did not expect that Defendants would seek to gain commercial advantage from third parties by using his personal information without his consent.

116. Defendants knowingly used Plaintiff's personal information without his knowledge or consent to gain commercial advantage from third parties and had full knowledge of the benefits they have received from Plaintiff. If Plaintiff had known Defendants were not keeping his personal information from third parties, he would not have consented and Defendants would not have gained commercial advantage from third parties.

117. Defendants will be unjustly enriched if Defendants are permitted to retain the money paid to them by third parties, or resulting from the commercial advantage they gained, in exchange for Plaintiff's personal information.

118. Defendants should be required to provide restitution of all money obtained from their unlawful conduct.

119. Plaintiff and the Members of the Class are entitled to an award of compensatory and punitive damages in an amount to be determined at trial or to the imposition of a

1   constructive trust upon the wrongful revenues and/or profits obtained by and benefits conferred

2   upon Defendants as a result of the wrongful actions as alleged in this complaint.

3       120.    Plaintiff and the Class have no remedy at law to prevent Defendants from

4   continuing the inequitable conduct alleged in this complaint and the continued unjust retention of

5   the money Defendants received from third-party advertisers.

6                                **REQUEST FOR RELIEF**

7       WHEREFORE, Plaintiff Low, on behalf of himself and the Class, requests the following

8   relief:

9       A.      An order certifying that this action is properly brought and may be maintained as

10   a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff be appointed

11   as Class Representative, and that Plaintiff's counsel be appointed Class Counsel;

12       B.      An award of damages (except as to the CLRA claim, which is only for injunctive

13   relief) as alleged above;

14       C.      Restitution of all monies unjustly obtained or to be obtained from Plaintiff and

15   members of the Class (except for the CLRA claim, which is for injunctive relief only);

16       D.      Declaratory and injunctive relief;

17       E.      An award of reasonable attorneys' fees and costs; and

18       F.      Such other relief at law or equity as this court may deem just and proper.

19                                **DEMAND FOR JURY TRIAL**

20       Plaintiff hereby demands trial of his claims by jury to the extent authorized by law.

21

22   DATED:   March 25, 2011                Respectfully submitted,

23                                          **REESE RICHMAN LLP**

24                                          By: _____

25                                              Michael R. Reese (Cal. State Bar No. 206773)
                                                Kim E. Richman
26                                              Belinda L. Williams
                                                875 Avenue of the Americas, 18th Floor
27                                              New York, New York 10001
                                                Telephone: (212) 643-0500
28

---

CLASS ACTION COMPLAINT                    - 26 -

1

2
- and -

3
**MILBERG LLP**
Sanford P. Dumain

4
Peter E. Seidman
Anne Marie Vu(SBN 238771)

5
One Pennsylvania Plaza, 49th Floor
New York, New York  10119

6
Telephone:    (212) 594-5300
Facsimile:    (212) 868-1229

7
E-mail: sdumain@milberg.com
  pseidman@milberg.com

8
  avu@milberg.com

9
*Attorneys for Plaintiff*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| CLASS ACTION COMPLAINT | - 27 - | |

Home    What is LinkedIn?    Join Today    Sign In

Privacy Policy

## LinkedIn Privacy Policy Highlights

This page summarizes the key highlights from our Privacy Policy. For more information, read our full Privacy Policy.

Please note that our Privacy Policy has been updated. Please click here for a summary of the changes.

1. **Personal information collected**

   We collect information:

   - When you register an account to become a LinkedIn user ("User"), such as your name, e-mail, employer, country, and a password.

   - When you add to your profile with further information about yourself or your private contacts, join or post to LinkedIn Groups, Answers and other Member-to-Member communication.

   - We use cookies and other technologies to recognize you, customize your experience, and serve advertisements.

   - Like all websites, we automatically receive from your Internet use information like your IP address, the URLs of sites from which you arrive or leave the LinkedIn website, your type of browser, your operating system, your mobile provider, your mobile device, and your ISP.

   - We retain information you provide in connection with third party services available through LinkedIn like surveys and polls or other third party research undertaken with your consent.

2. **Uses of personal information**

   We use the information you provide to:

   - Enable you to share your information and communicate with other Users, or provide your personal details to third parties offering combined services with LinkedIn;

   - Administer your account with us and customize the service we provide to you and other Users; and to

   - Send you service or promotional communications through email and notices on the LinkedIn website.

   We do not sell, rent, or otherwise provide your personal identifiable information to any third parties for marketing purposes. We also provide you with the means to control whether or not your contact information is viewable to other Users through your profile.

   Please note that in order to deliver certain services (for example, LinkedIn Premium Services), we may share information with third parties. For example, to process subscription payments made by you, we share some of your information with the payment processing company we use.

3. **Your information choices**

   You can:

   - Review, enhance or edit your personal information through your personal profile page;

   - Choose what information you make available to search engines through your profile;

   - Control the messages you receive from LinkedIn and other Users and how these messages are sent;

   - Change your settings to control visibility and accessibility through our website; and

   - Tell us to close your LinkedIn account.

4. **Your obligations to other Users.**

   - Do not abuse the LinkedIn service by using it to spam, abuse, harass, or otherwise violate the User Agreement or Privacy Policy.

5. **Important information**

   - LinkedIn is a licensee of TRUSTe, an organization established to promote fair information practices. We have agreed to disclose our privacy practices and have them reviewed by TRUSTe. If we cannot resolve your privacy queries, you can raise your complaint with TRUSTe.

   - Notice of all changes that materially affect ways in which your personal information may be used or shared will be posted in updates to our Privacy Policy.

6. **Security**

   - Personal information you provide will be secured with industry standards and technology. Since the internet is not a 100% secure environment, we cannot ensure or warrant the security of any information you transmit to LinkedIn. There is no guarantee that information may not be accessed, disclosed, altered, or destroyed by breach of any of our physical, technical, or managerial safeguards.

   - You are responsible for maintaining the secrecy of your unique password and account information, and for controlling access to your email communications at all times.

7. **How to contact us**

   If you have any questions or comments please email us at privacy@linkedin.com or contact us at:
   LinkedIn Corporation
   Attn: Privacy Policy Issues
   2029 Stierlin Court
   Mountain View,CA 94043
   USA

## LinkedIn Privacy Policy

**Introduction:**

The mission of LinkedIn is to connect the world's professionals to enable them to be more productive and successful. We work to fulfill this mission by helping you, your connections, and millions of other professionals meet, exchange ideas, learn, make deals, find opportunities or employees, work, and make decisions in a network of trusted relationships and groups.

Being part of LinkedIn means sharing information about yourself with other professionals, communicating with them, as well as working privately on your own. By default, your account is set up to share the information that we have found the vast majority of our Users are interested in sharing. But the amount and type of information you decide to share, and with whom you share it, is up to you.

Here are the three main types of information on LinkedIn:

*Information about yourself that you share.* This is the information that your connections, other professionals, and companies see about you. This includes your profile and your contributions to discussions on LinkedIn Groups, Answers, or other community features LinkedIn may offer. **You have control over what you share,** and **you can update information at any time.**

*Communication.* We help you communicate with connections and other professionals. Some of this is one-to-one, some of it is in groups, and some of it is public discussion. **You decide how much or how little you wish to communicate to individuals or groups.**

*Private activity.* We also provide tools that you can use privately on LinkedIn (for example, searching, or adding notes to your connections information.) **These actions and information are private and we don't share or distribute them to others on the website.**

Of course, maintaining your trust is our top concern, so we adhere to the following principles to protect your privacy:

* We do not rent, sell, or otherwise provide your personally identifiable information to third parties for marketing purposes.

* We do not share any information you have not chosen to display on your LinkedIn profile to other parties, unless compelled by law, or as necessary to enforce our User Agreement or protect the rights, property, or personal safety of LinkedIn, its Users, and the public.

* All information that you provide will be protected with industry standard protocols and technology.

We reserve the right to modify this Privacy Policy at any time, so please review it frequently. If we make material changes to this policy, we will notify you here, by email, or by means of a notice on our home page. By continuing to use the LinkedIn service after notice of changes has been sent to you or published on the LinkedIn website, you are consenting to the changes.

**Please read this policy** and send us questions, concerns and suggestions at privacy@linkedin.com.

**What LinkedIn's Privacy Policy Covers:**

1. Information collected by LinkedIn.

2. How LinkedIn uses your information.

3. Your information choices.

4. Your obligations as a User.

5. Important information regarding service eligibility and US Department of Commerce Safe Harbor certification.

6. Security.

7. How to contact us.

**1. Personal information collected**

The mission of LinkedIn is to connect the world's professionals to enable them to be more productive and successful. To achieve this mission, LinkedIn makes services available through our website, mobile applications, and developer platform, to enable professionals to develop, maintain and enhance a network of contacts, seek experts and consultants, fill job opportunities, create, share, and distribute information in collaboration with one another ("Services"). By joining LinkedIn, you voluntarily and willingly provide us certain information, including personally identifiable information, which we collect in order to provide the Services. If you have any hesitation about providing information to us and/or having your information displayed on the LinkedIn website or otherwise used in any manner permitted in this Privacy Policy and the User Agreement, you should not become a member of the LinkedIn community; and, if you are already a member, you should close your account.

We collect your personal information in the following ways:

**A.** *Registration*

In order to become a User, you must provide us the following information to create an account: name, email address, country, and password. Like other passwords, you should choose one that is known only by you. You acknowledge that this information is personal to you, and by creating an account on LinkedIn, you allow others, including LinkedIn, to identify you.

**B.** *Profile Information*

Once you become a User, you may provide additional information in the Profile section describing your skills, professional experiences, educational background, recommendations from other LinkedIn Users, group memberships, and networking objectives. Providing additional information about yourself beyond what is minimally required at registration is entirely up to you, but providing additional information enables you to derive more benefit from LinkedIn and your professional network by helping you build and leverage your professional network and facilitating your search for professional resources, information, and new opportunities. Any information you provide at registration or in the Profile section may be used by LinkedIn as described in the User Agreement and this Privacy Policy, including for the purpose of serving advertisements through the service. If you decide not to share certain information, you may not receive the full benefit of being a LinkedIn User.

C. *Contacts Information*

In order to connect with others on LinkedIn, you may use the Services to send invitations either to their LinkedIn profiles or email addresses if they are not Users. The names and email addresses of people whom you invite will be used to send your invitations and reminders as well as to allow LinkedIn to help expand your network. Please note that when you send an invitation to connect to another User, that User will have access to your email address because it is displayed in the invitation. Your connections will also have access to your email address. You may not invite anyone you do not know and trust to connect with you.

You may also choose to manually enter or upload data about your contacts to the "Contacts" section of your account on LinkedIn. Information entered into Contacts is only viewable by you. By providing email addresses or other information of non-Users to LinkedIn, you represent that you have authority to do so. All information that you enter or upload about your contacts will be covered by the User Agreement and this Privacy Policy and will enable us to provide customized services such as suggesting people to connect with on LinkedIn.

D. *Customer Service*

We may collect information through the LinkedIn website or through our customer service website in order to, among other things, accurately categorize and respond to customer inquiries and investigate breaches of our terms.

E. *Site Usage*

We may collect information about the fact that you use certain features and functionality of LinkedIn, interact with third party Platform Applications like InApps, click on ads, or participate in research initiatives like polling and surveys on LinkedIn.

F. *Cookies*

Like most websites, we use cookies and web log files to track site usage and trends, to improve the quality of our service, to customize your experience on LinkedIn, as well as to deliver third-party advertising to Users both on and off the LinkedIn site. A cookie is a tiny data file that resides on your computer, mobile phone, or other device, and allows us to recognize you as a User when you return to the LinkedIn website using the same computer and web browser. You can remove or block cookies using the settings in your browser, but in some cases that may impact your ability to use LinkedIn. One type of cookie, known as a "persistent" cookie, is set once you've logged in to your LinkedIn account. The next time you visit the LinkedIn website, the persistent cookie will allow us to recognize you as an existing User so you will not need to log in before using the Services. In order to access or change any of your private information (like a credit card number) or to send a message to another User, however, you must log in securely again with your password even if your computer contains your persistent cookie. Another type of cookie, called a "session" cookie, is used to identify a particular visit to the LinkedIn website. Session cookies expire after a short time or when you close your web browser.

In the course of serving advertisements or optimizing the Services to our Users, we may allow authorized third parties to place or recognize a unique cookie on your browser. Any information provided to third parties through cookies will not be personally identifiable but may provide general segment information (e.g., your industry or geography, career field, or information about your professional or educational background) for greater customization of your user experience. Most browsers are initially set up to accept cookies, but you can reset your browser to refuse all cookies or to indicate when a cookie is being sent. LinkedIn does not store unencrypted personally identifiable information in the cookies.

G. *Advertising and Web Beacons*

To support the Services we provide at no cost to our Users, as well as provide a more relevant and useful experience for our Users, we serve our own ads and also allow third party advertisements on the site. These advertisements are targeted and served to Users, by both LinkedIn and other companies, called ad networks. Ad networks include third party ad servers, ad agencies, ad technology vendors and research firms.

Advertisements on LinkedIn may be targeted to Users who fit a certain general profile category (e.g., "product managers in Texas") or may be based on anonymized information inferred from a User's profile (e.g., industry, compensation bracket, gender, age, ethnic origin, nationality, religion, or other aspects of your life) in addition to a User's use of the LinkedIn site. LinkedIn does not provide personally identifiable information to any third party ad network.

To increase the effectiveness of ad delivery, we may include a file, called a web beacon, from an ad network within pages served by LinkedIn. The web beacon allows the ad network to provide anonymized, aggregated auditing, research and reporting for advertisers. Web beacons also enable the ad networks to serve ads to you when you visit other websites. Because your web browser must request these advertisements and web beacons from the ad network's servers, these companies can view, edit or set their own cookies, just as if you had requested a web page from their site.

You may opt-out of use of web beacons in LinkedIn pages that you view and of placement of a cookie by ad networks in your browser. To opt-out, click here to go to the "Partner Advertising" section and change the setting to "No". If you opt-out you may lose certain functionality of the LinkedIn Services, as well as the potential benefit of receiving ads that are targeted to your interests which, in turn, may limit your ability to fully realize the benefits of the LinkedIn Services to build and leverage your professional network.

H. *Log files, IP addresses and information about your computer and mobile device*

Due to the communications standards on the internet, when you visit the LinkedIn website we automatically receive the URL of the site from which you came and the site to which you are going when you leave LinkedIn. LinkedIn also receives the internet protocol ("IP") address of your computer (or the proxy server you use to access the World Wide Web), your computer operating system and type of web browser you are using, email patterns, mobile device operating system (if you are accessing LinkedIn using a mobile device), as well as the name of your ISP or your mobile carrier. We use this information to analyze overall trends to help improve the service. The linkage between your IP address and your personally identifiable information is not shared with third parties without your permission, except as described in Section 2.K ("Compliance with Legal Process"), below.

I. *Linked Accounts*

If you link your LinkedIn account to another account or service, or use other, third-party sites or services in conjunction with your LinkedIn account, we may collect information related to your use of third party sites and services accessed through LinkedIn or when you access LinkedIn through a third-party site or service.

J. *Rights to Access, Correct and Eliminate Information About You*

You have a right to access, modify, correct and eliminate the data you supplied to LinkedIn. If you update any of your information, we may keep a copy of the information that you originally provided to us in our archives for uses documented in this policy. You may request deletion of your information at any time by contacting LinkedIn customer service. We will respond to your request within 30 days.

## 2. Uses of personal information

### A. Consent to LinkedIn Processing Information About You

The information you provide to LinkedIn may reveal, or allow others to identify, your nationality, ethnic origin, religion, gender, age, geography, or other aspects of your private life. By providing information to us for the purposes of creating your User account or adding any additional details to your LinkedIn profile, you are expressly and voluntarily accepting the terms and conditions of this Privacy Policy and LinkedIn's User Agreement that allow LinkedIn to process information about you. Supplying information to LinkedIn, including any information deemed "sensitive" by applicable law, is entirely voluntary on your part. You have the right to withdraw your consent to LinkedIn's collection and processing of your information at any time, in accordance with the terms of this Privacy Policy and the User Agreement, by changing your Settings, or by closing your account, but please note that your withdrawal of consent will not be retroactive.

### B. LinkedIn Communications

As described in the User Agreement, we will communicate with you through email and notices posted on the LinkedIn website, messages to your LinkedIn inbox, or through other means available through the service, including mobile text messages. We may send you a series of emails that help inform new Users about the features of the Services, and we will also send you service messages relating to the functioning of the Services. We may also send you messages with promotional information directly or on behalf of our partners, unless you have opted out of receiving promotional information.

You can change your e-mail and contact preferences at any time by logging into your account and changing your settings related to your email notification choices. If you wish, you can also opt-out of receiving promotional emails by sending a request to LinkedIn customer service through our customer service site.

Please be aware that you cannot opt-out of receiving service messages from LinkedIn. Also, if we send communications to you via the carrier service with which you have a mobile communications subscription or otherwise have access, you understand you will pay any service fees associated with your receipt of messages on your mobile device (including text messaging charges).

### C. User Communications

Many communications you initiate through LinkedIn (e.g., an invitation sent to a non-User) will list your primary email address and name in the header of the message. Messages you initiate may also provide aggregate information about your network (for instance how many people are in your network), but will not list the people to whom you're directly connected. Other communications that you initiate through the LinkedIn service, like a request for an introduction, will list your name as the initiator but will not include your personal email address contact information. Your contact information will only be shared with another User if both of you have indicated that you would like to establish contact with each other.

### D. Customized Content

We use information provided to us (or to third parties with whom it offers combined services) to customize your experience on our website. For example, when you login to your account, we will display the names of new Users who have recently joined your network or recent status updates from your connections.

### E. Sharing Information with Third Parties

LinkedIn takes the privacy of our Users very seriously, and we do not sell, rent, or otherwise provide your personally identifiable information to third parties for marketing purposes. Further, we will only share your personally identifiable information with third parties to carry out your instructions or to provide the Services or information unless compelled by law, or as necessary to enforce our User Agreement or protect the rights, property, or personal safety of LinkedIn, its Users, and the public. For example, we use a credit card processing company to bill Users for subscription fees. These third parties do not retain, share, or store any personally identifiable information except to provide these services, and they are bound by confidentiality agreements limiting the use of your information.

We also offer a "public profile" feature that allows Users to publish portions of their LinkedIn profile to the public internet. This public profile is what search engines will display when someone searches for your name. Users may opt-out of this feature by editing their account settings; however, LinkedIn does not warrant how often third-party search engines will update their caches, which may contain old public profile information.

We may provide aggregated anonymous data about the usage of the Services to third parties for purposes that we deem, in our sole discretion, to be appropriate, including to prospective advertisers on LinkedIn.

### F. Working with Third Parties to Offer Services.

We collaborate with third parties to offer services and functionality using LinkedIn developer tools such as our application programming interfaces ("APIs"). These third parties are either partners ("LinkedIn Partners") with whom we have negotiated an agreement to provide services ("Combined Services"), or developers ("Platform Developers") who have agreed to our API terms in our developer signup flow to build applications ("Platform Applications"). Both the negotiated agreements and our API terms and conditions contain restrictions on access, storage and use of your information.

If you choose to use Combined Services or a Platform Application, you may be asked to confirm acceptance of the privacy policy and/or user agreement of the LinkedIn Partner or Platform Developer, which have not necessarily been reviewed or approved by LinkedIn. It is your choice whether or not to make use of Combined Services or Platform Applications and whether to proceed under any third party terms.

Also, despite our agreements and technical steps taken to restrict access to and avoid possible misuse of information we may not screen or audit all Combined Services or Platform Applications. We also cannot guarantee that any LinkedIn Partner or Platform Developer will abide by our agreement. You agree that your use of Combined Services or Platform Applications is on an "as is" basis and without any warranty.

If you, your connections, members of your network, or other Users of LinkedIn use or interact with any Combined Service or Platform Application, the LinkedIn Partner or Platform Developer may access and share certain information about you with others, such as your profile information and information visible only to your connections. This includes information about your connections by virtue of you being connected to others. However, because a Combined Service or Platform Application can make calls on behalf of the User interacting with it to access non-public information, the level of detail accessible by the Combined Service or Platform Application through LinkedIn is constrained by the same settings that govern visibility of your data to that User on LinkedIn. For example, assuming you have not already given a Platform Developer's application permission to access your information, your non-public profile information should not be visible to someone using the same Platform Application if it is not otherwise accessible to that person on LinkedIn.

Please also note that because of our relationship with certain LinkedIn Partners and Platform Developers, permission to access certain account information may be automatically granted to provide the combined services or functionality. You can view a list of LinkedIn Partners here.

To revoke permission granted to a Combined Service or Platform Application at any time, please visit the settings page. If the relevant Platform Developer or Application, or LinkedIn Partner is not listed under Authorized Applications, go directly to the Application Details page for the Platform Application you wish to uninstall. Note, however, that even if you revoke the permission granted a third party, your connections, other members of your network, or other Users of LinkedIn may still be using the Platform Application, so the Platform Application or Combined Service may still have access to certain information about you, just as those Users do. That is why it is important to only connect to Users you know and trust. To report any suspected misuse of information, contact LinkedIn's customer service. LinkedIn is not responsible for your use of or inability to use any Combined Service or Platform Application, including the content, accuracy, or reliability of applications and the privacy practices or other policies of LinkedIn Partners or Platform Developers.

G. *Polls and Surveys*

Polls and Surveys may be conducted by LinkedIn, LinkedIn Users or third parties. As a User, you may be invited to participate in polls and surveys from the LinkedIn website. Your selection may be random, or it may be based on your non-personally identifiable information, such as job title, geography, company size and/or industry. Whether or not you decide to participate in a poll or survey is completely up to you.

After you complete a poll, you will be given access to the aggregate responses of the poll on a results page. Some third parties may target advertisements to you on the results page based on your answers in the poll. Further, LinkedIn or third parties may follow up with you via InMail regarding your participation unless you have opted out of receiving InMail messages.

We may use third parties to deliver incentives to you to participate in surveys or polls. If the delivery of incentives requires your contact information, you may be asked to provide personally identifiable information to the third party fulfilling the incentive offer, which will only be used for the purpose of delivering incentives and/or verifying your contact information. It is up to you whether you provide this information, or whether you desire to take advantage of an incentive.

We will not disclose any personally identifiable information to any third parties in connection with the conduct of any polls or surveys. Your consent to use any personally identifiable information for the purposes set forth in the poll or survey will be explicitly requested by the party conducting it. LinkedIn is a member of the Council of American Survey Research Organizations ("CASRO") and abides by CASRO guidelines for market research. You may opt-out of participating in Surveys by changing your settings to stop receiving these inquiries and requests.

H. *Search*

We offer search services to help find information and learn more about other Users (for example, you can search for Users with particular expertise or consulting experience, or that you may know from your industry or profession), as well as employment opportunities. LinkedIn search also allows Users to find jobs, companies, and contributions to the community aspects of the LinkedIn Services, such as Groups and Answers that will help Users more effectively use LinkedIn and expand their network. We use information from User profiles and contributions to Groups and Answers to inform and refine our search service.

I. *Answers, Groups, and other Services*

If you post on the Answers section of LinkedIn, participate in LinkedIn Groups, or import a blog, you should be aware that any personally identifiable information you choose to provide there can be read, collected, or used by other Users of these forums, as well as Platform Developers and other third parties, and could be used to send you unsolicited messages. LinkedIn is not responsible for the information you choose to submit in these forums.

J. *Testimonials and Advertisements Placed through LinkedIn Ads Service*

If you provide any testimonials about the LinkedIn Services or place advertisements through the LinkedIn Ads, we may post those testimonials and examples of advertisements you place in connection with our promotion of these services to third parties. Testimonials and advertisements may include your name and other personal information that you have provided. For more information about Ads please see the Ads Terms of Use.

K. *Compliance with Legal Process*

It is possible that we may need to disclose personal information, profile information and/or information about your activities as a LinkedIn User when required by subpoena or other legal process, or if LinkedIn has a good faith belief that disclosure is necessary to (a) investigate, prevent or take action regarding suspected or actual illegal activities or to assist government enforcement agencies; (b) to enforce the User Agreement, to investigate and defend ourselves against any third party claims or allegations, or to protect the security or integrity of our site; and/or (c) to exercise or protect the rights, property or personal safety of LinkedIn, our Users, employees, or others.

L. *Disclosures to others*

We may also disclose your personal information and other information you provide to another third party as part of a reorganization or a sale of the assets of LinkedIn Corporation, a subsidiary or division. Any third party to which LinkedIn transfers or sells LinkedIn's assets will have the right to continue to use the personal and other information that you provide to us.

3. **Your information choices**

A. *Accessing and Changing Your Account Information*

You can review the personal information you provided to us and make any desired changes to the information you publish, or to the settings for your LinkedIn account including your email and contact preferences, at any time by logging in to your account on the LinkedIn website. Please be aware that even after your request for a change is processed, LinkedIn may, for a time, retain residual information about you in its backup and/or archival copies of its database.

B. *Default Settings*

Because the mission of LinkedIn is to connect the world's professionals to enable them to become more productive and successful, we have established what we believe to be reasonable default settings that we have found most professionals desire. Because Users may use and interact with LinkedIn in a variety of ways, and because those uses may change over time, we designed our settings to provide our users granular control over the information they share. We encourage our Users to review their account settings and adjust them in accordance with their preferences.

LinkedIn accounts are also defaulted to allow Users to be contacted to participate in polls, surveys and partner advertising. click here to change these settings.

C. *Closing Your Account*

You can close your account through the LinkedIn customer service site. If you close your LinkedIn account, we will remove your name and other personally identifiable information from our publicly viewable database. If you close your account, we have no obligation to retain your information, and may delete any or all of your account information without liability. However, we may retain certain data contributed by you if LinkedIn believes it may be necessary to prevent fraud or future abuse, or for legitimate business purposes, such as analysis of aggregated, non-personally identifiable data, account recovery, or if required by law. LinkedIn may also retain and use your information if necessary to provide the Services to other Users. For example, just as an email you may send to another person through an email service provider resides in that person's inbox even after you delete it from your sent files or close your account, emails or InMails you send on LinkedIn to other Users, as well as your contributions to LinkedIn Answers or Groups, may remain visible to others after you have closed your account. Similarly, other information you have shared with others, or that other Users have copied, may also remain visible. LinkedIn disclaims any liability in relation to the deletion or retention (subject to the terms herein) of information or any obligation not to delete the information. LinkedIn does not control when search engines update their cache, which may contain certain public profile information that has since been removed from LinkedIn's publicly viewable database.

D. *Memorializing Accounts*

If we learn that a User is deceased, we may memorialize the User's account. In these cases we may restrict profile access, remove messaging functionality, and close an account if we receive a formal request from the User's next of kin or other proper legal request to do so.

## 4. Your Obligations

As a User, you have certain obligations to other Users. Some of these obligations are imposed by applicable law and regulations, and others have become commonplace in user-friendly communities of like-minded members such as LinkedIn:

- You must, at all times, abide by the terms and conditions of the then-current Privacy Policy and User Agreement. This includes respecting all intellectual property rights that may belong to third parties (such as trademarks or photographs).

- You must not download or otherwise disseminate any information that may be deemed to be injurious, violent, offensive, racist or xenophobic, or which may otherwise violate the purpose and spirit of LinkedIn and its community of Users.

- You must not provide to LinkedIn and/or other Users information that you believe might be injurious or detrimental to your person or to your professional or social status.

- You must keep your username and password confidential and not share it with others.

Any violation of these guidelines may lead to the restriction, suspension or termination of your account at the sole discretion of LinkedIn.

## 5. Important Information

A. *Children and Minors*

Children are not eligible to use our service and we ask that minors (under the age of 18) do not submit any personal information to us or use the service.

B. *TRUSTe and Safe Harbor*

LinkedIn is a licensee of the TRUSTe Privacy Program. TRUSTe is an independent organization whose mission is to enable individuals and organizations to establish trusting relationships based on respect for personal identity and information by promoting the use of fair information practices. This Privacy Policy covers the site www.linkedin.com. Because LinkedIn wants to demonstrate our commitment to our Users' privacy, we have agreed to disclose our privacy practices and have them reviewed for compliance by TRUSTe.

We also participate in the EU Safe Harbor Privacy Framework as set forth by the United States Department of Commerce and have also self-certified our privacy practices as consistent with U.S.-E.U. Safe Harbor principles: Notice, Choice, Onward Transfer, Access and Accuracy, Security, Data Integrity and Enforcement. As part of our participation in the Safe Harbor Privacy Framework, LinkedIn has agreed to TRUSTe dispute resolution for disputes relating to our compliance with it.

Please note that by becoming a User, you have given us your express and informed consent to transfer the data that you provide to us to the United States and to process it in the United States.

If Users have questions or concerns regarding this Privacy Policy, including the Safe Harbor Privacy Framework, you should first contact LinkedIn by email at privacy@linkedin.com. If you do not receive acknowledgment of your inquiry or it is not satisfactorily addressed, you may raise your complaint with TRUSTe on their website accessible here, by fax at +1-415-520-3420, or mail at WatchDog Complaints, TRUSTe, 55 2nd Street, 2nd FloorSan Francisco, CA, USA 94105. TRUSTe will serve as a liaison with LinkedIn to resolve Users' concerns. If you are faxing or mailing TRUSTe to lodge a complaint, you must include the following information: the name of the company, the alleged privacy violation, your contact information, and whether you would like the particulars of your complaint shared with the company. The TRUSTe complaint resolution process shall be conducted in English, regardless of your country of residence.

Please understand that the TRUSTe program only covers information collected through the website www.linkedin.com, and does not cover information that may be collected through software downloaded from our website like the LinkedIn Toolbar or the Firefox or Outlook Plugins.

C. *Changes to this Privacy Policy*

We may update this Privacy Policy at any time, with or without advance notice. In the event there are significant changes in the way we treat your personally identifiable information, or in the Privacy Policy document itself, we will display a notice on the LinkedIn website or send you an email, as provided for above. Unless stated otherwise, our current Privacy Policy applies to all information that LinkedIn has about you and your account.

Using the LinkedIn Services after a notice of changes has been sent to you or published on our site shall constitute consent to the changed terms or practices.

### 6. Security

In order to help secure your personal information, access to your data on LinkedIn is password-protected, and sensitive data (such as credit card information) is protected by SSL encryption when it is exchanged between your web browser and the LinkedIn website. To protect any data you store on our servers, LinkedIn also regularly audits its system for possible vulnerabilities and attacks, and we use a tier-one secured-access data center. However, since the internet is not a 100% secure environment, we cannot ensure or warrant the security of any information you transmit to LinkedIn. There is no guarantee that information may not be accessed, disclosed, altered, or destroyed by breach of any of our physical, technical, or managerial safeguards. It is your responsibility to protect the security of your login information. Please note that emails, instant messaging, and similar means of communication with other Users of LinkedIn are not encrypted, and we strongly advise you not to communicate any confidential information through these means.

### 7. How to contact us

If you have questions or comments about this Privacy Policy, please email us at privacy@linkedin.com.

LinkedIn Corporation
Attn: Legal Department, Privacy Policy Issues
2029 Stierlin Court
Mountain View,CA 94043
USA

---

Help Center | About | Blog | Careers | Advertising | Recruiting Solutions | Tools | Mobile | Developers | Language

LinkedIn Updates | LinkedIn Answers | LinkedIn Jobs | Jobs Directory | Company Directory | Groups Directory | Service Provider Directory | Title Directory

LinkedIn Corporation © 2011 | User Agreement | Privacy Policy | Copyright Policy