SIMON J. FRANKEL (State Bar No. 171552)
E-Mail: sfrankel@cov.com
MALI B. FRIEDMAN (State Bar No. 247514)
E-Mail: mfriedman@cov.com
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, California 94111
Telephone:     (415) 591-6000
Facsimile:     (415) 591-6091

Attorneys for Defendant
LINKEDIN CORPORATION

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| KEVIN LOW, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        vs.<br><br>LINKEDIN CORPORATION, a California Corporation, and Does 1 to 50 inclusive,<br><br>        Defendants. | Civil Case No.: 5:11-cv-01468 LHK<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT LINKEDIN CORPORATION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br>(Fed. R. Civ. P. 12(b)(1), (b)(6))<br><br>Date:   September 15, 2011<br>Time:  1:30 pm<br>Courtroom:  4, 5th Floor |

NOTICE OF MOTION AND MOTION OF DEFENDANT LINKEDIN CORPORATION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

Civil Case No.: 5:11-cv-01468 LHK

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ........................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 2

I.      INTRODUCTION ........................................................................................... 2

II.     ALLEGATIONS OF THE COMPLAINT ...................................................... 3

III.    ARGUMENT ................................................................................................... 5

        A.      The Complaint Must Be Dismissed Because It Does Not Allege The
                Injury In Fact Necessary To Support Article III Standing. ................. 6

        B.      Each Of The Causes Of Action In The Complaint Fails To State A
                Claim ................................................................................................... 8

                1.      Plaintiff Fails To State a Claim Under the Stored
                        Communications Act ("SCA"). ............................................. 8

                        a)      The SCA Does Not Apply Because No Allegations in the
                                Compliant Pertain to Stored Communications ............................ 9

                        b)      Any Access Of Stored Communications By LinkedIn Was
                                Authorized Under The SCA's Service Provider Exception ........ 10

                        c)      Any Disclosure Of Stored Communications By LinkedIn
                                Was Permissible Because No Communications Content Is
                                At Issue And Disclosure of Non-Content Information To
                                Non-Governmental Entities Is Permissible. ................................ 11

                        d)      Any Disclosure of Communications Content Was
                                Authorized Under the "Addressee or Intended Recipient"
                                Exception To The SCA ................................................................ 13

                2.      Plaintiff's Claims Under the California Business and
                        Professions Code Must Be Dismissed As A Matter Of Law ................. 13

                        a)      The UCL And FAL Claims Fail Because Plaintiff Has Not
                                Alleged Injury In Fact Or Loss Of Money Or Property. ............. 14

                        b)      The UCL and FAL Claims Fail Because Plaintiff Does
                                Not Allege Reliance On LinkedIn's Alleged "Unfair
                                Competition" or "False Advertising." ........................................ 16

                        c)      The UCL Cause Of Action Does Not Properly Allege
                                Unlawful, Fraudulent, Or Unfair Conduct ................................. 17

                3.      Plaintiff's CLRA Cause Of Action Fails To State A Claim For
                        Multiple Reasons. ................................................................. 18

4. Plaintiff's Privacy Claims Under The California Constitution And Common Law Invasion Of Privacy Should Be Dismissed............. 19

 a) Plaintiff's Claim Under The California Constitution Fails Because Plaintiff Has Not Alleged A Serious Invasion Of Privacy. ......................................................................... 19

 b) Plaintiff's Common Law Invasion of Privacy Claim Fails Because LinkedIn's Conduct Was Not Offensive And Objectionable To A Reasonable Person. ..................................... 20

5. Plaintiff's Claims Of Breach Of Contract And Breach Of Implied Covenant Of Good Faith And Fair Dealing Each Fail Because Plaintiff Does Not Allege Actual Damages, Let Alone The Kinds of Damages Cognizable Under These Claims. ...................... 21

6. Plaintiff's Conversion Claim Fails As A Matter of Law. ........................ 23

7. The Unjust Enrichment Claim Fails On Multiple Grounds and Should Be Dismissed. .............................................................................. 24

IV. CONCLUSION............................................................................................. 25

NOTICE OF MOTION AND MOTION OF DEFENDANT LINKEDIN CORPORATION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

ii

Civil Case No.: 5:11-cv-01468 LHK

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aguilera v. Pirelli Armstrong Tire Corp.,*
223 F.3d 1010 (9th Cir. 2000) ........................................................22

*Ajaxo Inc. v. E*Trade Group, Inc.,*
135 Cal. App. 4th 21 (2005) .........................................................23

*Applied Equip. Corp. v. Litton Saudia Arabia Ltd.,*
7 Cal. 4th 503 (1994) ...................................................................22

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) ...........................................................6, 16

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ......................................................................6

*Berry v. Am. Express Publ'g, Inc.,*
147 Cal. App. 4th 224 (2007) .......................................................19

*Bohach v. City of Reno,*
932 F. Supp. 1232 (D. Nev.1996) ................................................11

*Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.,*
688 F. Supp. 2d 940 (N.D. Cal. 2010) ..........................................23

*Britz Fertilizers, Inc. v. Bayer Corp.,*
665 F. Supp. 2d 1142 (E.D. Cal. 2009) ........................................22

*Californians for Disability Rights v. Mervyn's, LLC,*
39 Cal. 4th 223 (2006) .................................................................14

*Camacho v. Auto Club of S. Cal.,*
142 Cal. App. 4th 1394 (2006) .....................................................17

*Claridge v. RockYou, Inc.,*
No. 4:09-cv-06032-PJH, 2011 WL 1361588 (N.D. Cal. April 11, 2011) ..............................15

*Columbia Pictures, Inc. v. Bunnell,*
245 F.R.D. 443 (C.D. Cal. 2007) ...................................................9

*Crowley v. CyberSource Corp.,*
166 F.Supp.2d 1263 (N.D. Cal. 2001) ..........................................10

*Daugherty v. Am. Honda Motor Co., Inc.,*
144 Cal. App. 4th 824 (2006) .......................................................17

NOTICE OF MOTION AND MOTION OF DEFENDANT
LINKEDIN CORPORATION TO DISMISS THE
COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES

iii

Civil Case No.: 5:11-cv-01468 LHK

*Doe v. Texaco*,
No. C 06-02820 WHA, 2006 WL 2053504 (N.D. Cal. July 21, 2006) ..................................16

*Drum v. San Fernando Valley Bar Ass'n*,
182 Cal. App. 4th 247 (2010) ..................................................................................................18

*Dyer v. Nw Airlines Corps.*,
334 F. Supp. 2d 1196 (D.N.D. 2004)........................................................................................22

*Fairbanks v. Super Ct.*,
46 Cal. 4th 56 (2009) ...............................................................................................................19

*Ferrington v. McAfee, Inc.*,
No. 10-cv-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ...................................19

*First Nationwide Sav. v. Perry*,
11 Cal. App. 4th 1657 (1992) ..................................................................................................25

*Folgelstrom v. Lamps Plus, Inc.*,
No. B221376, 2011 WL 1601990 (Cal. Ct. App. Apr. 29, 2011) ....................................20, 21

*Fraser v. Nationwide Mut. Ins. Co.*,
352 F.3d 107 (3d Cir. 2003) ....................................................................................................10

*Fremont Indem. Co. v. Fremont Gen. Corp.*,
148 Cal. App. 4th 97 (2007) ..............................................................................................23, 24

*G.S. Rasmussen & Assoc. Inc. v. Kalitta Flying Serv.*,
Inc., 958 F.2d 896 (9th Cir. 1992) ...........................................................................................23

*GA Escrow, LLC v. Autonomy Corp. PLC*,
No. C 08-01784 SI, 2008 WL 4848036 (N.D. Cal. Nov. 7, 2008)...........................................24

*Genevive La Court, et al. v. Specific Media, Inc.*,
2011 WL 1661532, at *3-6 (C.D. Cal. Apr. 28, 2011) ..............................................................7

*Gerlinger v. Amazon.com, Inc.*,
311 F. Supp. 2d 838 (N.D. Cal. 2004).................................................................................24, 25

*Gibson v. Office of the Attorney Gen.*,
561 F.3d 920 (9th Cir. 2009) ....................................................................................................22

*Hernandez v. Hillsides, Inc.*,
47 Cal.4th 272 (2009) ...............................................................................................................21

*Hill v. MCI WorldCom Commcn's, Inc.*,
120 F. Supp. 2d 1194 (S.D. Iowa 2000) ..................................................................................12

NOTICE OF MOTION AND MOTION OF DEFENDANT
LINKEDIN CORPORATION TO DISMISS THE
COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES

iv

Civil Case No.: 5:11-cv-01468 LHK

*Hill v. Nat'l Collegiate Athletic Ass'n*,
  7 Cal. 4th 1 (1994) ...........................................................................................................20

*In re Application*,
  416 F. Supp. 2d 13 (D.D.C. 2006) ......................................................................................12

*In re Doubleclick Inc. Privacy Litig.*,
  154 F. Supp. 2d 497 (S.D.N.Y. 2001) ..................................................................................7

*In re Facebook Privacy Litig.*,
  No. C 10-02389 JW, 2011 WL 2039995 (N.D. Cal. May 12, 2011)...............................passim

*In re JetBlue Airways Corp. Privacy Litig.*,
  379 F. Supp. 2d 299 (E.D.N.Y. 2005) ...........................................................................7, 23

*Jessup-Morgan v. America Online Inc.*,
  20 F. Supp. 2d 1105 (E.D. Mich. 1998) .............................................................................12

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002) ...............................................................................................9

*Laster v. T-Mobile USA Inc.*,
  407 F. Supp. 2d 1181 (S.D. Cal. 2005).............................................................................16

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992).............................................................................................................6

*Marolda v. Symantec Corp.*,
  672 F. Supp. 2d 992 (N.D. Cal. 2009) ...............................................................................19

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989) .............................................................................................17

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ...............................................................................................5

*NVIDIA GPU Litig.*, 2009 WL 4020104, at *12 (N.D. Cal. Nov. 19, 2009) ...............................24

*Reyes v. Wells Fargo Bank, N.A.*,
  No. C-10-01667 JCS, 2011 WL 30759 (N.D. Cal. Jan. 3, 2011) .........................................22

*Robins v. Spokeo, Inc.*,
  2011 WL 597867, at *1 (C.D. Cal. Jan. 27, 2011) ................................................................7

*Rubio v. Capital One Bank*,
  613 F.3d 1195 (9th Cir. 2010) ...........................................................................................14

*Ruiz v. Gap, Inc.*,
  540 F. Supp. 2d 1121 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) ..........passim

NOTICE OF MOTION AND MOTION OF DEFENDANT
LINKEDIN CORPORATION TO DISMISS THE
COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES

v

Civil Case No.: 5:11-cv-01468 LHK

*Schauer v. Mandarin Gems of Cal., Inc.*,
  125 Cal. App. 4th 949 (2005) ...................................................................18

*Shulman v. Group W Prods, Inc.*,
  18 Cal. 4th 200 (1998) .....................................................................20, 21

*Silvaco Data Systems v. Intel Corp.*,
  184 Cal. App. 4th 210 (2010) .................................................................15

*State Wide Photocopy Corp. v. Tokai Financial Services, Inc.*,
  909 F.Supp. 137 (S.D.N.Y. 1995) ............................................................10

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)...................................................................................5

*Thompson v. Home Depot, Inc.*,
  2007 WL 2746603, at *3 (S.D. Cal. Sept. 18, 2007)..................................15

*United States v. Forrester*,
  512 F.3d 500 (9th Cir. 2008) ..................................................................12

*Vess v. Ciba-Geigy Corp, USA*,
  317 F.3d 1097 (9th Cir. 2003) ...........................................................17, 19

*Warth v. Seldin*,
  422 U.S. 490 (1975)..................................................................................7

*Whiteside v. Tenet Healthcare Corp.*,
  101 Cal. App. 4th 693 (2001) .................................................................17

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990)..................................................................................6

**STATUTES**

18 U.S.C. § 2510(8) ....................................................................................11

18 U.S.C. § 2510(15) ..........................................................................8, 9, 10

18 U.S.C. § 2701 *et seq.* .......................................................................1, 5, 8

18 U.S.C. § 2701(a)(1), (2)..................................................................8, 9, 10

18 U.S.C. § 2701(c)(1) ...............................................................................10

18 U.S.C. §§ 2702(a)(1), (2)........................................................................8

18 U.S.C. § 2702(b)(1) ...............................................................................13

NOTICE OF MOTION AND MOTION OF DEFENDANT
LINKEDIN CORPORATION TO DISMISS THE
COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES

vi

Civil Case No.: 5:11-cv-01468 LHK

18 U.S.C. § 2702(c)(6) ..................................................................................................11

18 U.S.C. § 2703(c)(2) ..................................................................................................12

18 U.S.C. § 2711(2) ...................................................................................................8, 10

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ..............................................................passim

Cal. Bus. & Prof. Code § 17204 ....................................................................................14

Cal. Bus. & Prof. Code § 17500 .................................................................................1, 14

Cal. Civ. Code §§ 1750 *et seq.* ..............................................................................1, 17, 18

Cal. Civ. Code § 1761(a) ...............................................................................................19

Cal. Civ. Code § 1761(b) ...............................................................................................19

Cal. Civ. Code § 1761(d) ...............................................................................................18

Cal. Civ. Code § 1770(a) ...............................................................................................18

Cal. Civ. Code § 3358.....................................................................................................23

California Constitution, Article 1, Section 1 ...............................................................1, 5

Fed. R. Civ. Proc. 9(b) ...................................................................................................17

Fed. R. of Civ. Proc. 12(b)......................................................................................passim

**OTHER AUTHORITIES**

*Orin S. Kerr, A User's Guide To The Stored Communications Act, And A Legislator's*
    *Guide To Amending It*, 72 GEO. WASH. L. REV. 1208, 1214 & n.47......................10

S. Rep. 99-541 ................................................................................................................11

NOTICE OF MOTION AND MOTION OF DEFENDANT
LINKEDIN CORPORATION TO DISMISS THE
COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES

vii

Civil Case No.: 5:11-cv-01468 LHK

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 15, 2011, at 1:30 p.m., in the courtroom of the Honorable Lucy H. Koh, or at such date and time as the Court may otherwise direct, Defendant LinkedIn Corporation will, and hereby does, move to dismiss the Complaint in *Low et al. v. LinkedIn Corporation*, 5:11-cv-01468 LHK pursuant to Federal Rule of Civil Procedure 12(b)(1), or in the alternative, to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

This motion is made on the grounds that (1) plaintiff lacks Article III standing to bring this Complaint; and (2) each of the causes of action in plaintiff's Complaint fails to state a claim as a matter of law.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, and such other submissions or argument that may be presented before or at the hearing on this motion.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether plaintiff fails to allege an "injury in fact" or any actual or concrete harm and thus lacks standing under Article III of the United States Constitution.

2.      Whether the Complaint should be dismissed because plaintiff fails to state a claim upon which relief can be granted for each of the ten causes of action in the Complaint, causes of action pursuant to the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*; Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; Consumer Legal Remedies Act, Cal. Civil Code §§ 1750 *et seq.*; Article 1, Section 1 California Constitution; invasion of privacy; breach of contract; breach of implied covenant of good faith and fair dealing; conversion; and unjust enrichment.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

This putative class action against LinkedIn Corporation is yet another lawsuit that was precipitated by—and apparently based largely on—newspaper articles discussing online tracking practices. *See* Complaint ("Compl.") ¶¶ 9, 22. The central claim of the Complaint is that LinkedIn randomly assigns unique user identification numbers ("User IDs") to users of its website and then transmits these User IDs to third parties, which somehow—in a manner that is never explained—allows those third parties to correlate the identity of users with their browsing histories through third party cookies placed and controlled by these third parties (and not by LinkedIn). The net result, plaintiff contends, is that users' previously anonymous browsing histories are no longer anonymous to those third parties.

Not only does the Complaint fail to explain how this alleged transmittal of a LinkedIn User ID resulted in the de-anonymization of plaintiff's browsing history; it fails to explain either how plaintiff was harmed by, or how LinkedIn benefited from, this purported practice. Equally significant, the Complaint does not allege conduct that establishes any of the statutory or common law actions it purports to plead.

As a threshold matter, the Complaint fails to establish Article III standing under the U.S. Constitution. The Complaint does not identify any concrete or particularized injury to plaintiff, only offering passing allegations of conjectural and hypothetical harm that do not constitute "injury in fact" as a matter of law.

In addition, each cause of action in the Complaint suffers from critical pleading defects that require dismissal with prejudice at the pleading stage:

1.     Plaintiff's Stored Communications Act claim fails on multiple grounds as the Complaint's allegations explicitly pertain to communications in transmission (not storage); the statute's "service provider exception" applies on the face of the Complaint; no communications content is at issue and the alleged disclosures were made to non-governmental entities; and the alleged disclosures were made to the intended recipients of the communications.

2.     The causes of action under the California Business & Professions Code do not state a claim because plaintiff does not allege loss of money or property or even that any such loss was "as a result of" LinkedIn's conduct.

3.     The Consumer Legal Remedies Act claim fails because plaintiff is not a "consumer," no "goods" or "service" are at issue, and plaintiff does not allege reliance.

4.     The privacy claims under the California Constitution and common law invasion of privacy must be dismissed because the invasion of privacy alleged is, as a matter of law, not sufficiently invasive or offensive.

5.     Plaintiff's breach of contract and breach of covenant of good faith and fair dealing claims fail because plaintiff does not allege any actual harm or damages.

6.     The conversion claim fails because no tangible property is at issue and no damages are alleged.

7.     Finally, plaintiff's unjust enrichment claim fails because it is a remedy (not an independent cause of action), and such a remedy is not available here, where plaintiff has alleged an explicit contract and has not sufficiently alleged any tangible benefit to LinkedIn.

Given these threshold defects, the Complaint should be dismissed with prejudice.

## II.     ALLEGATIONS OF THE COMPLAINT

Defendant LinkedIn is a web-based social networking site that, through an online community, offers professionals ways to network via e-mail and instant messaging.  Compl. ¶ 3. Upon registration, LinkedIn assigns each member a unique User ID.  *Id.* ¶ 14.  Plaintiff Kevin Low was a "registered user of LinkedIn."  *Id.* ¶ 1.  LinkedIn sells premium marketing services to some individuals and organizations.  *Id.* ¶ 3.  Plaintiff, however, does not allege that he purchased any of these premium services or otherwise paid any money to LinkedIn, but only refers in passing to having "purchased *or* used" LinkedIn's services.  *See id.* ¶ 64 (emphasis added).[1]

---

[1] In fact, LinkedIn's records show that plaintiff *never* paid for LinkedIn's service, as LinkedIn will establish if this action proceeds past the pleading stage.

The central allegation in the Complaint is that LinkedIn "transmit[ted]" plaintiff's and the purported class members' unique User IDs to third parties without consent and in violation of both law and LinkedIn's privacy policy.  *Id.* ¶¶ 1, 11.  In particular, the Complaint alleges that when a LinkedIn user views another user's profile on the site, the User ID of the viewing user is transmitted to third parties.  *See id.* ¶¶ 16-18.  According to the Complaint, by transmitting these User IDs to third parties, "LinkedIn associates its users unique identifiers with the cookies and beacons that are the keys to their browsing history . . . thus put[ting] a name to browsing histories that would otherwise be anonymous, thereby exploiting its users' personal information for commercial profit."  *Id..* ¶ 11; *see id.* ¶¶ 14-18.  The Complaint, however, does not explain how transmission of a randomly assigned number *could* render a browsing history non-anonymous.  (And in fact, the Complaint's basic factual premise—that the *viewing* user's User ID is transmitted to third parties in the referral header or as a "URL parameter" (*see id.* ¶¶ 14-18)—is not correct).[2]

Also notably absent from the Complaint is any concrete articulation of how LinkedIn's purported conduct harmed plaintiff.  The only assertion of harm is plaintiff's passing assertion that he was "embarrassed and humiliated by the disclosure of his personally identifiable browsing history" and that as a result of this disclosure he has "relinquished [] valuable personal property without the compensation to which he was due."  *Id.* ¶ 1.  The Complaint does not elaborate on plaintiff's alleged emotional distress, and the only additional

---

[2] The User ID present in each LinkedIn profile URL actually is that of the user whose page is *viewed*, not (as the Complaint asserts (*see id.* ¶ 16)) that of the user who is doing the viewing. Accordingly, transmittal of the User ID in the manner alleged in the Complaint would not provide *any* information about the identity of the user engaged in the viewing.  Thus, contrary to the Complaint's basic premise, the alleged test transmission described by plaintiff (*see id.* ¶ 18) contains the User ID of the *viewed profile*, not of the viewer, and thus neither reveals the identity of the browsing user nor adds any information to a user's browsing history. Furthermore, even if plaintiff engaged in a so-called "social search" (*see id.* ¶ 2) and viewed his own profile, such that the User ID present in the referral header or URL parameter *was* plaintiff's, it would be impossible for a third party to distinguish this activity from a non-"social search," where the allegedly transmitted User ID was that of the *viewed profile*.  As a factual matter, this foundational defect is fatal to plaintiff's claims.  But even accepting the Complaint's (factually incorrect) statements as true under the standards of a motion to dismiss, the Complaint still must be dismissed in its entirety here, as set out in the text.

NOTICE OF MOTION AND MOTION OF DEFENDANT
LINKEDIN CORPORATION TO DISMISS THE
COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES

4

Civil Case No.: 5:11-cv-01468 LHK

fact even remotely related to the loss of "valuable personal property" consists of a vague

reference to a U.K.-based service, unconnected to plaintiff, that purportedly enables users to sell

their personal data to others.  *See id.* ¶ 22.  Although the Complaint points out that LinkedIn

earned revenues in 2010 (*id.* ¶ 23), it does not explain how LinkedIn allegedly benefited from

the alleged conduct, other than a conclusory and unsupported statement that LinkedIn "profits

from advertising revenues derived from its data mining" (*id.* ¶ 100).

Despite the paucity of the factual allegations as to the purportedly improper

conduct of LinkedIn, how such conduct harmed plaintiff, or how LinkedIn was benefited, the

Complaint seeks to allege ten causes of action on behalf of a class of all persons in the United

States who signed up for LinkedIn services after March 25, 2007.  *Id.* ¶ 34.  In particular, the

Complaint alleges a violation of the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.*

(First Cause of Action), Article 1, Section 1 of the California Constitution (Second Cause of

Action), California Business and Professions Code Sections 17200 and 17500 (Third and Fourth

Causes of Action), California's Consumer Legal Remedies Act (Fifth Cause of Action), as well

as claims for breach of contract (Sixth Cause of Action), breach of implied covenant of good

faith and fair dealing (Seventh Cause of Action), common law invasion of privacy (Eighth

Cause of Action), conversion (Ninth Cause of Action), and unjust enrichment (Tenth Cause of

Action).  *Id.* ¶¶ 41-120.

## III.    ARGUMENT

Where the allegations of the Complaint do not establish standing under Article

III of the U.S. Constitution, a federal court does not have subject matter jurisdiction to hear the

case, and the Complaint must be dismissed pursuant to Federal Rule of Civil Procedure

12(b)(1).  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998).

A court may dismiss a claim under Rule 12(b)(6) when "there is no cognizable

legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."

*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a motion under Rule 12(b)(6),

"all material allegations of the complaint are accepted as true, as well as all reasonable

inferences to be drawn from them."  *Id.*  However, as the Supreme Court recently emphasized,

NOTICE OF MOTION AND MOTION OF DEFENDANT
LINKEDIN CORPORATION TO DISMISS THE
COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES

5

Civil Case No.: 5:11-cv-01468 LHK

"labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Hence, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A plaintiff therefore must plead "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

> ### A. The Complaint Must Be Dismissed Because It Does Not Allege The Injury In Fact Necessary To Support Article III Standing.

To have the requisite Article III standing to maintain an action in federal court, a plaintiff must allege adequate "injury in fact"—meaning that the plaintiff has "suffered . . . an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotations and citation omitted). The injury in fact must be "concrete in both a qualitative and temporal sense," and plaintiff must "allege an injury to [himself] that is 'distinct and palpable' as opposed to merely 'abstract.'" *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (citations omitted). Article III standing also requires that the plaintiff allege that the challenged conduct caused the injury and that a favorable decision will redress the injury. *See Lujan*, 504 U.S. at 560-61.

Here, plaintiff barely references any purported injury, and what he does mention is purely abstract and conjectural. In a 120 paragraph Complaint, the only reference to any injury is a passing statement in the first numbered paragraph, not backed up with any factual support, alleging that plaintiff was "embarrassed and humiliated by the disclosure of his personally identifiable browsing history" and that as a result of this disclosure he has "relinquished this valuable personal property without the compensation to which he was due." Compl. ¶ 1. There are no further allegations that elaborate on these fleeting references.

As at least two California district courts recently have held in cases asserting parallel claims, such vague, abstract, and conclusory allegations of palpable injury do not give

NOTICE OF MOTION AND MOTION OF DEFENDANT
LINKEDIN CORPORATION TO DISMISS THE
COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES

6

Civil Case No.: 5:11-cv-01468 LHK

plaintiff standing to sue.  *See Genevive La Court, et al. v. Specific Media, Inc.*, No. SACV 10-1256-GW (JCGx), 2011 WL 1661532, at *3-6 (C.D. Cal. Apr. 28, 2011) (no Article III standing where plaintiffs did not provide "particularized example" of how secret collection and retention of plaintiff's browsing history caused injury or harm); *Robins v. Spokeo, Inc.*, No. CV10-05306 ODW (AGRx), 2011 WL 597867, at *1 (C.D. Cal. Jan. 27, 2011) (plaintiff's concern that defendant's website would adversely affect him in future failed to confer Article III standing).

Indeed, federal courts have rejected the notion apparently advanced by plaintiff here—that he was deprived of the economic value of his personal information (allegedly his browsing history) because such information, in the aggregate, may have value to a defendant or third parties.  *See In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001) (court rejected web consumers' argument that because "companies pay DoubleClick for plaintiffs' attention (to advertisements) and demographic information," the value of these services rightfully belonged to plaintiffs: "although demographic information is valued highly . . . the value of its collection has never been considered a economic loss to the subject"); *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) ("It strains credulity to believe that [a data mining company] would have gone to each individual JetBlue passenger and compensated him or her for access to his or her personal information.  There is likewise no support for the proposition that an individual passenger's personal information has or had any compensable value in the economy at large.").

Because the named plaintiff has not alleged that he suffered any concrete and palpable injury that would be redressed by proceeding with his claims, he lacks Article III standing, and the entire Complaint must be dismissed pursuant to Rule 12(b)(1).[3]

---

[3] Judge Ware's recent opinion in *In re Facebook Privacy Litigation*, read broadly, suggests that merely alleging a violation of a statute is sufficient to confer Article III standing.  *See* No. C 10-02389 JW, 2011 WL 2039995, at *4.  But we respectfully suggest that this outcome rests on a misinterpretation of of the Supreme Court case Judge Ware cited, *Warth v. Seldin*, 422 U.S. 490 (1975).  While *Warth* recognized that alleging a violation of a statutory right can be an element of injury in fact, the decision still required the plaintiff to "allege a distinct and palpable injury to himself . . . ."  Id. at 500-501 (citation omitted).  Indeed, a strict application of Judge Ware's approach would entirely collapse the question of standing under Rule 12(b)(1) into whether or not the plaintiff has stated a claim under Rule 12(b)(6).

**B.      Each Of The Causes Of Action In The Complaint Fails To State A Claim.**

Even if plaintiff has sufficiently alleged Article III standing, the Complaint must still be dismissed pursuant to Rule 12(b)(6) because each cause of action is defective as a matter of law.[4]

**1.      Plaintiff Fails To State A Claim Under The Stored Communications Act.**

The Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701 *et seq*., which is Title II of the Electronic Communications Privacy Act ("ECPA"), regulates access to and disclosure of stored electronic communications that are held by two types of regulated entities— providers of electronic communication service ("ECS") and providers of remote computing service ("RCS").  An ECS is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications."  18 U.S.C. § 2510(15).  An RCS is defined as "the provision to the public of computer storage or processing services by means of an electronic communications system."  18 U.S.C. § 2711(2).

Subject to certain exceptions, the SCA prohibits " (1) intentionally access[ing] without authorization a facility through which an [ECS] is provided; or (2) intentionally exceed[ing] an authorization to access that facility . . . and thereby obtain[ing], alter[ing], or prevent[ing] authorized access to a wire or electronic communication while it is in electronic storage in such system."  *Id.* §§ 2701(a)(1), (2).  Subject to certain exceptions, the statute also prohibits the person or entity providing an ECS or RCS to the public from "knowingly divulg[ing] to any person or entity the contents of a communication" while in electronic storage by the ECS or which is carried or maintained on the RCS.  *Id.* §§ 2702(a)(1), (2).  Plaintiff's claim under this statute fails on multiple, independent grounds.

---

[4] As the *In re Facebook Privacy Litigation* court noted, a plaintiff may be able to allege sufficient injury in fact to support standing under Article III without the ability to assert any cause of action successfully—including because he cannot adequately allege the specific injury required for that cause of action.  2011 WL 203995, at *4, n.5 (N.D. Cal. May 12, 2011) (citing *Doe v. Chao*, 540 U.S. 614, 624-25 (2004) (plaintiff may have "injury enough to open the courthouse door, but without more [may have] no cause of action" under which he can obtain relief)).

a)    **The SCA Does Not Apply Because No Allegations In The Compliant Pertain To Stored Communications.**

As a threshold matter, as its name suggests, the Stored Communications Act protects only electronic communications held *in storage* by an ECS or RCS.  18 U.S.C. § 2701(a)(1), (2).  "[E]lectronic storage," is defined by the statute as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof" or "any storage of such communication by an electronic communication service for purposes of backup protection of such communication."  *Id.* § 2510(17).  The Complaint, however, does not allege that any communications were acquired or disclosed while in storage in violation of the statute.  Rather, the allegations in the Complaint explicitly pertain to *transmissions* of data.  *See e.g.*, Compl. ¶ 15 (alleging that "the pages on LinkedIn's website link and *transmit* the user's unique LinkedIn user ID number with third party tracking IDs (*i.e.* cookies); *id.* ¶ 16 (alleging addition of User ID as a "'URL parameter' when the request is *transmitted* to the third party"); *id.* ¶ 16 (describing what "these *transmissions*" purportedly allow third parties to see); *id.* ¶ 17 (stating that the information is "readily *transmitted*" to third parties when users log in and browse the LinkedIn website); *id.* ¶ 18 (providing excerpt from purportedly relevant "test *transmission*"); *id.* ¶ 18 (alleging that "merely logging in and looking at a profile page caused LinkedIn to *transmit* the user ID bundled with that site's cookie ID to IMRWorldwide/Nielson Netratings") (emphasis added in all).

Although the Complaint asserts summarily that LinkedIn holds personal identification numbers and personal information in electronic storage (*see id.* ¶¶ 44-45), nowhere does it assert that these User ID's or any other personal information were improperly accessed or disclosed, *while in electronic storage*.  In fact, it is axiomatic that the Wiretap Act (Title 1 of ECPA) pertains to electronic communications in transmission whereas the SCA pertains to electronic communications in storage and that an electronic communication cannot simultaneously be in transmission and in storage.  *See Columbia Pictures, Inc.* v. *Bunnell*, 245 F.R.D. 443, 450 (C.D. Cal. 2007); *see generally Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 877 (9th Cir. 2002).

Moreover, even if plaintiff did allege that the User ID assigned to him by LinkedIn was in storage, this still would not trigger the SCA.  To the extent the User ID resided on LinkedIn's system, any access would not be "unauthorized" or "exceed[ing] an authorization" (*see* Compl. ¶ 46), because, as the Complaint alleges, the User ID is assigned by and belongs to LinkedIn, not plaintiff (*see id.* ¶ 14), and the SCA does not limit LinkedIn's access to its own systems.  *See Crowley v. CyberSource Corp.*, 166 F.Supp.2d 1263, 1272 (N.D. Cal. 2001) (citing *State Wide Photocopy Corp. v. Tokai Financial Services, Inc.*, 909 F.Supp. 137, 145 (S.D.N.Y. 1995)) ("Amazon's access to its own systems is not limited under the ECPA.").  In addition, to the extent plaintiff might allege that his User ID resided on his home computer, this also would not trigger the SCA, because a home computer is not an ECS and thus falls outside the protections of the SCA.[5]  Accordingly, because the Complaint does not—and could not—allege that any communications are in electronic storage, the SCA claim must be dismissed as a matter of law.

### b)      Any Access Of Stored Communications By LinkedIn Was Authorized Under The SCA's Service Provider Exception.

To the extent any stored communications are plausibly at issue, plaintiff's claim still fails because any access of these communications by LinkedIn would be permitted.  This is because the SCA exempts from its prohibitions of unauthorized access "conduct authorized . . . by the person or entity providing a wire or electronic communications service."  18 U.S.C. § 2701(c)(1).  Courts have read Section 2701(c) as a sweeping "service-provider exemption," that "exempt[s] from [the SCA's] protection all searches [of stored data] by [service] providers."  *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 114-15 (3d Cir. 2003) ("we read § 2701(c) literally to except from [SCA's] protection all searches by communications service

---

[5] This is clear from the definition of "electronic communication service."  *See* 18 U.S.C. § 2510(15). Because the SCA prohibits only the unauthorized access of a facility through which an ECS is provided, *id.* § 2701(a)(1), the statute pertains only where a user's communications are in the possession of the service provider.  *See Orin S. Kerr, A User's Guide To The Stored Communications Act, And A Legislator's Guide To Amending It*, 72 GEO. WASH. L. REV. 1208, 1214 & n.47.  A home computer clearly also does not fit within the definition of RCS.  *See* 18 U.S.C. § 2711(2).

providers."); *Bohach v. City of Reno*, 932 F. Supp. 1232, 1236 (D. Nev.1996) (Reno police department could retrieve pager text message stored on police department's computer system without violating SCA because the department "is the provider of the 'service'" and "service providers [may] do as they wish when it comes to accessing communications in electronic storage"). Accordingly, because the Complaint alleges that LinkedIn is the provider of an electronic communications service to plaintiff (*see, e.g.*, Compl. ¶ 42), any access of stored communications was permissible under the SCA.

> ### c) Any Disclosure Of Stored Communications By LinkedIn Was Permissible Because No Communications Content Is At Issue And Disclosure of Non-Content Information To Non-Governmental Entities Is Permissible.

Plaintiff's SCA claim also fails because no communications content is at issue, and the SCA does not bar disclosure of non-content records to non-governmental entities. Although the SCA prohibits, under some circumstances, the disclosure of communications *content*, the statute permits the disclosure of non-content *records* to non-government entities without restriction. 18 U.S.C. § 2702(c)(6) (an ECS or RCS may "divulge a record or other information pertaining to a subscriber to or customer of [the] service (not including the contents of communications . . .) . . . to any person other than a governmental entity"). Communications "contents" is defined in Title I of ECPA for purposes of the SCA as "any information concerning the substance, purport, or meaning of that communication." *Id.* § 2510(8). Although ECPA does not explicitly define the terms "record" or "other information," the legislative history of the statute explains that the term "contents" "distinguishes between the substance, purport or meaning of the communication and the existence of the communication or transactional records about it." S. Rep. 99-541, at *13.

Notably, prior to the 1986 amendment to ECPA, "contents" was defined as "any information concerning the *identity of the parties to such communication or the existence*, substance, purport, or meaning of that communication." *Id.* § 2510(8) (1968) (emphasis added). The removal of the italicized language in the 1986 amendment to ECPA indicates that transactional information—such as User IDs, URLs, IP addresses, and other basic identification

1   information—no longer constitutes "contents" of a communication under the statute.  *See also*

2   *id.* § 2703(c)(2) (classifying name, address, and subscriber number or identity as non-content

3   information for purposes of required disclosures by an ECS or RCS in response to proper

4   process by governmental entities).

5   　　　　Courts also have interpreted "records" (as distinguished from contents) to include

6   transactional information such as a User ID or URL—*i.e.*, information that only reveals that a

7   communication occurred (and between or among whom), without revealing what was said or

8   communicated.  For example, in *Jessup-Morgan v. America Online Inc.*, 20 F. Supp. 2d 1105

9   (E.D. Mich. 1998), AOL, in complying with a civil subpoena, sent to an attorney basic identity

10   information regarding the account from which a message originated that revealed the name of

11   the account holder.  The court held that AOL's conduct was authorized by the SCA because

12   non-content information had been disclosed to a non-governmental entity.  *Id.* at 1108.  *See also*

13   *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (in Fourth Amendment context,

14   the to/from addresses of email messages, the IP addresses of websites visited, and total amount

15   of data transmitted to or from an account are not "contents"); *Hill v. MCI WorldCom Commcn's*,

16   *Inc.*, 120 F. Supp. 2d 1194, 1195 (S.D. Iowa 2000) (in the telephone communication context

17   (for which the same definition of "contents" applies), invoice/billing information and names,

18   addresses, and phone numbers of parties called by a subscriber were not "contents" of the

19   communication); *but cf. In re Application*, 416 F. Supp. 2d 13, 17-18 (D.D.C. 2006) ("contents"

20   does include all information related to the subject line and body of an email communication).

21   　　　　Here, plaintiff simply alleges that LinkedIn has disclosed his "personal identity"

22   in the form of a User ID within a URL, *see e.g.*, Compl. ¶¶ 2, 14-16.  It is unclear how

23   transmission of either the string of numbers constituting plaintiff's User ID (as alleged), or

24   transmission of the User ID of the person whose LinkedIn profile was viewed by plaintiff (as

25   actually occurs) could reveal plaintiff's identity.  In any event, even if plaintiff's identity *was*

26   revealed through disclosure of this record information, LinkedIn's alleged disclosure of this

27   non-content, transactional information to non-governmental entities such as "third parties,

28   including advertisers, Internet marketing companies, data brokers, and web tracking companies"

NOTICE OF MOTION AND MOTION OF DEFENDANT
LINKEDIN CORPORATION TO DISMISS THE
COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES

12

Civil Case No.: 5:11-cv-01468 LHK

1  (*id.* ¶ 1) would be authorized by the SCA.  For this reason too, the SCA claim fails as a matter

2  of law.

          **d)**      **Any Disclosure Of Communications Content Was Authorized Under The "Addressee Or Intended Recipient" Exception To The SCA.**

5          Even if LinkedIn's alleged disclosure concerns *content* information that was

6  *stored*, such disclosure still would be permissible under SCA because, under the allegations of

7  the Complaint, any disclosure was made to the "addressee or intended recipient" of the

8  communication.  The SCA permits an ECS or an RCS to "divulge the contents of a

9  communication . . . to an addressee or intended recipient of such communication or an agent of

10  such addressee or intended recipient."  18 U.S.C. § 2702(b)(1).  Plaintiff alleges that LinkedIn

11  violated the SCA by transmitting plaintiff's User ID to third parties.  *See e.g.*, Compl. ¶ 2

12  (information was transmitted "to third parties by LinkedIn"); *id.* ¶ 18 ("logging in and looking at

13  a profile page caused LinkedIn to transmit the user ID" to third parties—namely, IMR

14  Worldwide/Nielson NetRatings, Quantcast, Scorecard Research, and DoubleClick).

15          Accordingly, by plaintiff's own admission, these third parties are the "addressee

16  or intended recipient" of the purported communication.  Such disclosure, as Judge Ware

17  recently held, is permissible under the SCA.  *See In re Facebook Privacy Litig.*, No. C 10-02389

18  JW, 2011 WL 2039995, at \*6 (N.D. Cal. May 12, 2011) (dismissing plaintiff's SCA claim with

19  prejudice based on similar allegations involving the alleged transmission of User IDs because

20  "if the communications were sent to advertisers, then the advertisers were their addressees or

21  intended recipients, and Defendant was permitted to divulge the communications to them" under

22  section 2702(b)(1)).

23          For each of these four reasons, plaintiff's SCA cause of action does not state a

24  claim and must be dismissed with prejudice.

        **2.**      **Plaintiff's Claims Under The California Business And Professions Code Must Be Dismissed As A Matter Of Law.**

        The Complaint asserts causes of action under two provisions of the California

Business and Professions Code—Section 17200 (California's Unfair Competition Law or

"UCL") and Section 17500 (California's False Advertising Law or "FAL").  Section 17200 defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the FAL]."  Cal. Bus. & Prof. Code § 17200.  Section 17500 makes it unlawful, in relevant part, to "disseminate or cause to be so made or disseminated . . . any . . . statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."  Cal. Bus. & Prof. Code § 17500.

Proposition 64, approved by California voters in 2004, amended certain provisions of the UCL and FAL to require that a person bringing an action under either statute has "suffered injury in fact and has lost money or property *as a result of* the unfair competition."  Cal. Bus. & Prof. Code § 17204 (emphasis added) (UCL); *see id.* § 17535 (parallel restriction under FAL).  Because plaintiff does not allege either (1) injury in fact and loss of money or property or (2) reliance, the UCL and FAL claims must be dismissed.

> **a)  The UCL And FAL Claims Fail Because Plaintiff Has Not Alleged Injury In Fact Or Loss Of Money Or Property.**

As noted, after the enactment of Proposition 64, a plaintiff asserting a violation of either Section 17200 or Section 17500 must allege that he "suffered injury in fact *and* has lost money or property as a result of" the violation.  *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 228-29 (2006) (emphasis added); *see Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (to assert a claim under California's UCL, a private plaintiff needs to have "suffered injury in fact and . . . lost money or property as a result of the unfair competition").

Even if plaintiff had adequately alleged "injury in fact" (and, as discussed above, he has not done so), he still must allege loss of "money or property."  As the California Court of Appeal recently explained, "when we say someone has 'lost' money we mean that he has parted, deliberately or otherwise, with some *identifiable sum* formerly belonging to him or subject to his control; it has passed out of his hands by some means, such as being spent or mislaid, or ceded in a gamble, bad loan, or investment.  Similarly, when we say someone has 'lost' property we

NOTICE OF MOTION AND MOTION OF DEFENDANT
LINKEDIN CORPORATION TO DISMISS THE
COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES

14

Civil Case No.: 5:11-cv-01468 LHK

1   mean that he has parted with some particular item of property he formerly owned or possessed;

2   it has *ceased to belong to him*, or at least has passed beyond his control or ability to retrieve it."

3   *See Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210, 244 (2010) (emphasis added);

4   *accord, Claridge v. RockYou, Inc.*, No. 4:09-cv-06032-PJH, 2011 WL 1361588 (N.D. Cal. April

5   11, 2011).

6           Here, there is no proper allegation that plaintiff lost any property or money.  Of

7   course, plaintiff alleges that LinkedIn disclosed his User ID to third parties.  But courts have

8   repeatedly held that disclosure of personal information does not constitute a loss of property

9   sufficient for standing under Proposition 64.  *See, e.g., Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121,

10   1127-28 (N.D. Cal. 2008) (rejecting contention that unauthorized release of personal

11   information constitutes a loss of property), *aff'd*, 380 F. App'x 689 (9th Cir. 2010); *Thompson v.*

12   *Home Depot, Inc.*, No. 07cv1058 IEG (WMc), 2007 WL 2746603, at *3 (S.D. Cal. Sept. 18,

13   2007) (rejecting argument that "personal information," including name, telephone number, and

14   signature, constitutes property under the UCL).  Most recently, the court in *In re Facebook*

15   *Privacy Litigation* considered allegations that Facebook had violated the UCL  by knowingly

16   transmitting users' personal information to third-party advertisers without consent.  The court

17   dismissed the UCL claim with prejudice because "personal information does not constitute

18   property for purposes of a UCL claim."  2011 WL 2039995 at *6-7 (citation omitted); *see also*

19   *Claridge v. RockYou, Inc.*, 2011 WL 1361588, No. C09-6032 PJH at *6 (N.D. Cal. Apr. 11,

20   2011) (plaintiff's login and password information did not constitute property under UCL, as

21   they "did not cease to belong to him, or pass beyond his control" after alleged disclosure).

22           Nor can plaintiff here contend that he parted with money as a result of

23   LinkedIn's alleged conduct, because he does not actually allege that he paid any money to

24   LinkedIn.  Plaintiff simply describes himself as a "registered user" of LinkedIn (Compl. ¶ 1),

25   not that he paid to be such.[6]

26

27   [6] As noted above, the Complaint refers in passing to plaintiff having "purchased *or* used"
     LinkedIn's services.  Compl. ¶ 64 (emphasis added).  Such a vague and unsubstantiated
28   (continued…)

Because the Complaint does not identify the loss of any money or property as a result of LinkedIn's alleged conduct, the UCL and FAL claims must be dismissed with prejudice.  *See In re Facebook Privacy Litig.*, 2011 WL 2039995 at *7-8.

          **b)**       **The UCL And FAL Claims Fail Because Plaintiff Does Not Allege Reliance On LinkedIn's Alleged "Unfair Competition" Or "False Advertising."**

In addition to requiring a loss of money or property, Proposition 64 also requires claimants under the UCL and FAL to plead reliance on defendant's alleged unfair competition or false advertising—that is, that they were harmed "as a result of" such conduct.  *See Laster v. T-Mobile USA Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) ("Because Plaintiffs fail to allege they actually relied on false or misleading advertisements, they fail to adequately allege causation as required by Proposition 64.  Thus, . . . Plaintiffs lack standing to bring their UCL and FAL claims."); *Doe v. Texaco,* No. C 06-02820 WHA, 2006 WL 2053504, at *3 (N.D. Cal. July 21, 2006) ("the 'as a result of' language in the statute means that, for a plaintiff to state a claim, he or she must allege that they [sic] *relied* upon the defendant's acts of unfair competition and, *as a result,* suffered injury in fact.") (emphasis in original) (internal citation omitted).

Plaintiff here does not allege that he actually relied on *any* representation or advertising in registering for or using the LinkedIn website.  In fact, although the Complaint sets our provisions of LinkedIn's privacy policy at great length (*see* Compl. ¶¶24-33), plaintiff never alleges that he read, let alone relied on, any statements in the policy, or that any such reliance caused his injury.[7]  For this reason too, plaintiff's claims under the UCL and FAL must be dismissed as a matter of law.

---

allegation is insufficient.  Of course, under *Iqbal*, a plaintiff must plead "more than a sheer possibility that a defendant has acted unlawfully."  129 S. Ct. at 1949.

[7] The Complaint makes a vague and conclusory assertion that "[h]ad Plaintiff known that Defendants would share his personally identifiable information with third parties, he would not have purchased or used to [sic] Defendants' services. . . ."  Compl. ¶ 64.  But this is not allegation of reliance for purposes of the UCL or FAL, as plaintiff does not suggest in any way that plaintiff read, let alone relied upon, any statement or representation made by LinkedIn.

### c) The UCL Cause Of Action Does Not Properly Allege Unlawful, Fraudulent, Or Unfair Conduct.

Plaintiff's UCL cause of action also fails to allege the underlying conduct required by the statute—actions that are unlawful, fraudulent, or unfair.  *See* Compl. ¶ 61; *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 (2006).

As explained in this Motion, plaintiff does not properly allege a violation of any other statute invoked—the SCA, California Civil Code Section 1750, or even the California Constitution—so he has not alleged a claim of "unlawful" conduct under Section 17200.  *See Whiteside v. Tenet Healthcare Corp.*, 101 Cal. App. 4th 693, 706 (2001) (no Section 17200 claim where complaint fails to state a violation of any underlying law).

Nor has plaintiff properly pled a violation of the "fraud" prong of the UCL.  Such a claim must be pled with the particularity required by Rule 9(b).  *Vess v. Ciba-Geigy Corp, USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).  Accordingly, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Id.* at 1106 (citation omitted); *see Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("mere conclusory allegations of fraud are insufficient").  But plaintiff has not alleged with particularity (or even at all) if and when he read the purported terms of the LinkedIn privacy policy, and, as noted, the Complaint is silent on whether plaintiff relied on any statement in the policy.

Plaintiff also fails to allege "unfair" conduct within the scope of the UCL.  As an initial matter, plaintiff's claim of unfair conduct is indistinguishable from his claim of fraudulent conduct (*see* Compl. ¶¶ 62-65), and so is also subject to the heightened pleading requirements of Rule 9(b), which are not met here.  *See Vess*, 317 F.3d at 1103-04.  But in addition, courts have held that to state a UCL claim for "unfair" conduct in a consumer context, a plaintiff must allege facts establishing (1) substantial consumer injury; (2) that the injury is not outweighed by countervailing benefits to consumers; and (3) that the injury is one that consumers could not reasonably have avoided.  *See Camacho v. Auto Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006).  As discussed above, plaintiff has not plead injury, let alone

"substantial" injury, nor has he plead that such injury could have been avoided or was not outweighed by the benefit of LinkedIn's website to other users.[8]

Without meeting one of the three prongs of Section 17200, the UCL claim fails.

### 3.   Plaintiff's CLRA Cause Of Action Fails To State A Claim For Multiple Reasons.

The Consumer Legal Remedies Act ("CLRA"), California Civil Code section 1750 *et seq.*, provides protection to a specific category of consumers from damages suffered in connection with a consumer transaction.  *In re Facebook Privacy Litig.*, 2011 WL 2039995 at *8 (citing *Robinson v. HSBC Bank USA,* 732 F.Supp.2d 976, 987 (N.D. Cal. 2010)).  Plaintiff fails to state a claim under the CLRA for several reasons.

First, a violation of the CLRA only may be alleged by a "[c]onsumer," which the statute defines as "an individual who seeks or acquires, *by purchase or lease,* any goods or services for personal, family, or household purposes."  Cal. Civ. Code § 1761(d) (emphasis added); *see In re Facebook Privacy Litig.*, 2011 WL 2039995 at *8; *Schauer v. Mandarin Gems of Cal., Inc.,* 125 Cal. App. 4th 949, 960 (2005).  As noted above, plaintiff describes himself only as a "registered user" of LinkedIn (Compl. ¶ 1) and never actually alleges that he *paid* for use of LinkedIn in any way, or that he otherwise purchased or leased any goods or services.  Thus, as in *In re Facebook Privacy Litigation*, plaintiff's cause of action under the CLRA should be dismissed with prejudice because "it is not possible for Plaintiff[s] to state a claim pursuant to the CLRA."  2011 WL 2039995 at *8; *see Schauer*, 125 Cal. App. 4th at 960 (party that did not purchase ring at issue was not "consumer" and so could not maintain CLRA claim).

Second, the LinkedIn website does not fit the definition of a "good" or "service" under the CLRA.  Cal. Civ. Code § 1770(a).  Because the LinkedIn website is not a "tangible

---

[8] Other standards for "unfair" conduct that courts recently have applied also are not met here. *See Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256-57 (2010) (unfair conduct must be "tethered to specific constitutional, statutory, or regulatory provisions" or must be "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" given "the utility of the defendant's conduct [weighed] against the gravity of the harm to the alleged victim").

chattel[]" it cannot be a "good[]." *Id.* § 1761(a).  The CLRA defines "services" as "work, labor, and services . . . including services furnished in connection with the sale or repair of goods." *Id.* § 1761(b).  The LinkedIn website plainly is not "work" or "labor" and also is not a "service" as the Northern District of California and California state courts have interpreted that term.  *See Ferrington v. McAfee, Inc.*, No. 10-cv-01455-LHK, 2010 WL 3910169, at *9 (N.D. Cal. Oct. 5, 2010) (software not a "good" or "service" under the CLRA); *Fairbanks v. Super Ct.*, 46 Cal. 4th 56, 61 (2009) (life insurance not a "good" or "service" under the CLRA); *Berry v. Am. Express Publ'g, Inc.,* 147 Cal. App. 4th 224, 227 (2007) (credit card transactions not covered by CLRA).

Third, the particular prongs of the CLRA plaintiff seeks to invoke—violations of Civil Code Sections 1770(a)(5), (7), (9), and (16)—all require that a plaintiff allege "that she was the victim of defendant's false representations," and are therefore subject to the pleading requirements of Rule 9(b).  *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009); *see Vess*, 317 F.3d at 1103 (Rule 9(b) applicable to CLRA claims premised on misrepresentations).  As explained above, the Complaint does not meet this standard.  In particular, actual reliance is an element of any CLRA claim sounding in fraud (*see Marolda*, 672 F. Supp. 2d at 1002-03), and plaintiff fails to plead reliance—he never alleges that he read, let alone relied on, any particular representation by LinkedIn.

For all of these reasons, plaintiff's CLRA claim fails as a matter of law.

### 4. Plaintiff's Privacy Claims Under The California Constitution And Common Law Invasion Of Privacy Should Be Dismissed.

Plaintiff alleges privacy-related claims under Article 1, Section 1 of the California Constitution and common law invasion of privacy.  See Compl. ¶¶ 54-59, 102-07. Each of these claims should be dismissed because plaintiff's privacy was not invaded at all, let alone in a sufficiently egregious way to trigger these claims.

### a) Plaintiff's Claim Under The California Constitution Fails Because Plaintiff Has Not Alleged A Serious Invasion Of Privacy.

A "plaintiff alleging an invasion of privacy in violation of the [California] constitutional right to privacy must establish . . . (1) a legally protected privacy interest; (2) a

1 reasonable expectation of privacy . . . ; and (3) conduct by defendant constituting a serious

2 invasion of privacy."  *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39-40 (1994).

3 "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual

4 or potential impact to constitute an egregious breach of the social norms underlying the privacy

5 right."  *Id.* at 37.  Appling this standard, courts have found no violation of a constitutionally

6 protected privacy interest even under extreme facts.  For example, in *Ruiz*, the plaintiff alleged

7 that his social security number had been disclosed, creating a risk of identity theft.  540 F.

8 Supp.2d at 1128.  However, the court held that such allegations "d[id] not *approach* th[e]

9 standard" required under the California Constitution.  *Id.* (emphasis added).  Similarly, the

10 California Court of Appeal recently held that where the alleged invasion of privacy was

11 obtaining plaintiff's address without knowledge or permission and using it to mail

12 advertisements and coupons, "[t]his conduct is not an egregious breach of social norms, but

13 routine commercial behavior."  *Folgelstrom v. Lamps Plus, Inc.*, No. B221376, 2011 WL

14 1601990, at *3 (Cal. Ct. App. Apr. 29, 2011).  And in *Hill,* the California Supreme Court held

15 that the NCAA's observation of athlete's urinating for purposes of drug testing did not violate

16 California's constitutional right to privacy.  *See* 7 Cal. 4th at 40.  Surely if disclosure of a

17 person's social security number or name and address, or even observation of urination, does not

18 implicate California's constitutional privacy right, the alleged disclosure of  plaintiff's User ID

19 from the LinkedIn website (*see* Compl. ¶ 2)—a non-sensitive number randomly assigned to

20 plaintiff by LinkedIn—also is insufficient as a matter of law.  Accordingly, the California

21 constitution claim should be dismissed.

22          **b)      Plaintiff's Common Law Invasion Of Privacy Claim Fails
                      Because LinkedIn's Conduct Was Not Offensive And**
23          **Objectionable To A Reasonable Person.**

24          Plaintiff's common law "invasion of privacy" claim appears to be an attempt to

25 plead the tort of either "intrusion into private places, conversations, or other matters" or "public

26 disclosure of private facts."  *See* Compl. ¶¶ 102-107.  To state a claim under an "intrusion"

27 theory, a plaintiff must allege two elements:  (1) intrusion into a private place, conversation or

28 matter (2) in a manner highly offensive to a reasonable person.  *Shulman v. Group W Prods,*

1   *Inc.*, 18 Cal. 4th 200, 231 (1998).  To state a claim under a "public disclosure of private facts"

2   theory, a plaintiff must allege: "(1) public disclosure (2) of a private fact (3) which would be

3   offensive and objectionable to the reasonable person and (4) which is not of legitimate public

4   concern."  *Id.* at 214.  For either of these alleged torts to be actionable, the invasion must be

5   "highly offensive" to a reasonable person and "sufficiently serious" and unwarranted as to

6   constitute an "egregious breach of the social norms."  *Hernandez v. Hillsides, Inc.*, 47 Cal.4th

7   272, 295 (2009) (internal citations omitted).

8            As with California's constitutional right to privacy, discussed above, disclosure

9   of a website User ID simply does not rise to this level.  *See, e.g., id.* at 300-01.  Furthermore,

10  plaintiff's User ID is not a "private matter" or "private fact" as this was a number assigned by

11  LinkedIn.  Indeed, even the disclosure of a user's browser history would not rise to the level of

12  "highly offensive" given the ubiquity of cookies and targeted online advertising.  *See Ruiz*, 540

13  F. Supp. 2d at 1128; *Folgelstrom*, 2011 WL 1601990, at *3 (retailer's conduct of obtaining

14  customer's zip code under false pretenses and using it for its own marketing purposes was not

15  highly offensive, as required to constitute intrusion tort).  And as the *Fogelstrom* court observed,

16  no court has found potential liability based on a defendant obtaining unwanted *access* to a

17  plaintiff's private information, in the absence of an allegation that the *use* of plaintiff's

18  information was highly offensive.  *Id.* at *3.  Here, there is no allegation that plaintiff's User ID

19  or browsing history was used in a highly offensive way.

20           Additionally, as with his other claims, plaintiff fails to sufficiently allege

21  damages.   *See, e.g.*, Compl. ¶ 107.  For these reasons, the Court should dismiss plaintiff's

22  common law invasion of privacy claim.

23       **5.     Plaintiff's Claims Of Breach Of Contract And Breach Of Implied
             Covenant Of Good Faith And Fair Dealing Each Fail Because
24           Plaintiff Does Not Allege Actual Damages, Let Alone The Kinds Of
             Damages Cognizable Under These Claims.**
25
           Under California law, to properly state a claim for breach of contract a plaintiff
26
    must plead "the contract, plaintiffs' performance (or excuse for nonperformance), defendant's
27
28  breach, and damage to plaintiff therefrom."  *In re Facebook Privacy Litig.*, 2011 WL 2039995,

1    at *8-9 (citing *Gautier v. General Tel.* Co., 234 Cal. App. 2d 302, 305 (1965)).  California law

2    requires a showing of "appreciable and actual damage" to assert a breach of contract claim.

3    *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000); *Ruiz*, 622 F.

4    Supp. 2d at 917.  Nominal damages and speculative harm do not suffice to show legally

5    cognizable damage under California contract law.  *Ruiz*, 622 F. Supp. 2d at 917; *In re Facebook*

6    *Privacy Litig.*, 2011 WL 2039995, at *8-9.  A claim for breach of the implied covenant of good

7    faith and fair dealing also requires actual damages.  *See Britz Fertilizers, Inc. v. Bayer Corp.*,

8    665 F. Supp. 2d 1142, 1167 (E.D. Cal. 2009) (citing cases); *see also Reyes v. Wells Fargo Bank,*

9    *N.A.*, No. C-10-01667 JCS, 2011 WL 30759, at *10 (N.D. Cal. Jan. 3, 2011) (dismissing

10   plaintiffs' causes of action for breach of contract and implied covenant of good faith and fair

11   dealing because plaintiffs did not and could not allege damages).  Here, the breach of contract

12   cause of action only alleges that plaintiff and the class "have been damaged," without any

13   further explanation.  Compl. ¶ 92; *see also id.* ¶ 101 (similar allegation for breach of implied

14   covenant cause of action).  As the court held in *In re Facebook Privacy Litigation*, such an

15   unsubstantiated statement is insufficient to state a claim for breach of contract.  2011 WL

16   2039995, at *9; *see also Dyer v. Nw Airlines Corps.*, 334 F. Supp. 2d 1196, 1200 (D.N.D. 2004)

17   (dismissing breach of contract claim premised on "conclusory statements" of damage from

18   disclosure of personal information).

19              In addition, as discussed above, the only other vague references to harm in the

20   Complaint are for "embarrass[ment] and humiliat[ion]" and the purported loss of the value of

21   plaintiff's "personally identifiable browsing history."  *See* Compl. ¶ 1.  As a matter of law,

22   neither of these are within the categories of damages that can support a claim sounding in

23   contract.  Emotional distress damages generally are not recoverable on a contract claim.  *Gibson*

24   *v. Office of the Attorney Gen.*, 561 F.3d 920, 929 (9th Cir. 2009); *Applied Equip. Corp. v. Litton*

25   *Saudia Arabia Ltd.*, 7 Cal. 4th 503, 516 (1994).  And the purported loss of the value of

26   plaintiff's personally identifiable information is not a cognizable form of *contract* damages, as it

27   does not correspond to any benefit of the bargain theory—because the purpose of contract

28   damages is to place a plaintiff in the position "he would have occupied had the contract been

performed." *Ajaxo Inc. v. E\*Trade Group, Inc.*, 135 Cal. App. 4th 21, 56 (2005); *see* Cal. Civ. Code § 3358. Here, plaintiff had no contractual expectation that he would be paid for his personal information if LinkedIn performed its alleged obligations under the privacy policy, so he cannot recover the purported value of that information as a measure of contract damages. As explained in *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp.2d 299 (E.D.N.Y. 2005), "[p]laintiffs may well have expected that . . . they would obtain a ticket for air travel and the promise that their personal information would be safeguarded consistent with the terms of the privacy policy. They had no reason to expect that they would be compensated for the 'value' of their personal information." *Id.* at 327 (citation omitted).

Because plaintiff has not pled cognizable contract damages, the causes of action for breach of contract and breach of the implied covenant both fail as a matter of law.

**6. Plaintiff's Conversion Claim Fails As A Matter of Law.**

To state a claim for conversion, plaintiff must show (1) an "ownership or right to possession of *personal property*; (2) [defendant's] disposition of the property in a manner that is inconsistent with [plaintiff's] property rights; and (3) resulting damages." *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 119 (2007) (emphasis added). California law allows an intangible interest to be the subject of a conversion claim only where that interest is "merged with, or reflected in, something tangible." *Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 954 (N.D. Cal. 2010). In addition, for an intangible item to be subject to a conversion claim, it must be capable of *exclusive* possession or control, and the putative owner must have established a legitimate claim to exclusivity. *G.S. Rasmussen & Assoc. Inc. v. Kalitta Flying Serv.*, Inc., 958 F.2d 896, 903 (9th Cir. 1992).

Here, plaintiff's conversion claim is specifically premised on the assertion that his "personal browsing history and other personally identifiable information" is "valuable property owned by Plaintiff" and that LinkedIn converted such property "by providing it to third parties." Compl. ¶¶109-10. But the "property" plaintiff alleges is intangible and not "merged with, or reflected in, something tangible." *Boon Rawd Trading Int'l Co.*, 688 F. Supp. 2d at 954. Moreover, it is not intangible property that can be exclusively possessed, by plaintiff or

NOTICE OF MOTION AND MOTION OF DEFENDANT
LINKEDIN CORPORATION TO DISMISS THE
COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES

23

Civil Case No.: 5:11-cv-01468 LHK

anyone else.  *Cf. Ruiz*, 540 F. Supp. 2d at 1126 (social security number not personal property that could support bailment claim).  Accordingly, plaintiff's allegations regarding the purported disclosure of personal information cannot be the proper subject of a conversion claim.

In addition, the final element of a conversion claim is resulting damages.  *See Fremont Indem. Co.*, 148 Cal. App. 4th at 119.  But plaintiff has not offered any allegation as to how the alleged conversion damaged him or what damage he suffered, so the conversion claim must be dismissed for this reason as well.  *See* Compl. ¶ 111 (simply alleging that "Plaintiff and the Class were damaged thereby").

### 7.    The Unjust Enrichment Claim Fails On Multiple Grounds And Should Be Dismissed.

Plaintiff's unjust enrichment claim fails on at least three independent grounds.  First, absent narrow circumstances not applicable here, there is no such independent cause of action for unjust enrichment in California, as the Northern District of California and California state courts have held.  *See, e.g., NVIDIA GPU Litig.*, No. C 08-04312 JW, 2009 WL 4020104, at *12 (N.D. Cal. Nov. 19, 2009) ("Under California law, '[u]njust enrichment is not a cause of action . . . or even a remedy, but rather a general principle, underlying various legal doctrines and remedies.  It is synonymous with restitution.'") (quoting *McBride v. Boughton,* 123 Cal.App.4th 379, 387 (2004)); *GA Escrow, LLC v. Autonomy Corp. PLC*, No. C 08-01784 SI, 2008 WL 4848036, at *6 (N.D. Cal. Nov. 7, 2008) ("Defendant is correct there is no cause of action in California for unjust enrichment.") (citations omitted).

Second, court have held that because unjust enrichment is in the nature of a quasi-contract remedy, a plaintiff may not allege unjust enrichment while also alleging breach of an express contract covering the same subject matter.  *See Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004); *In re Facebook Privacy Litig.*, 2011 WL 2039995, at *9 ("as a matter of law, a quasi-contract action for unjust enrichment does not lie where . . . express binding agreements exist and define the parties' rights") (internal quotations omitted).  Here, plaintiff has affirmatively alleged an express contract—the LinkedIn privacy policy that is the basis of plaintiff's contract claims.  *See* Compl. ¶¶ 90-91 ("Plaintiff has performed his

NOTICE OF MOTION AND MOTION OF DEFENDANT
LINKEDIN CORPORATION TO DISMISS THE
COMPLAINT; MEMORANDUM OF POINTS AND
AUTHORITIES

24

Civil Case No.: 5:11-cv-01468 LHK

1   obligations under the contract.  [¶] LinkedIn materially breached its contractual obligations . . .

2   ."); *see also id.* ¶ 95 (premising claim for breach of implied covenant of good faith and fair

3   dealing on "the Agreement that embodies the relationship between LinkedIn and its users").

4   Accordingly, he cannot also allege unjust enrichment.  *See Gerlinger*, 311 F. Supp. 2d at 856.

5   Third, even if this Court treated plaintiff's unjust enrichment claim as one for

6   restitution, LinkedIn has not received any benefit that would be unjust for it to retain.  *See First*

7   *Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1662-63 (1992) ("[t]he fact that one person

8   benefits another is not, by itself, sufficient to require restitution," rather, "[t]he person receiving

9   the benefit is required to make restitution only if the circumstances are such that, as between the

10  two individuals, it is *unjust* for the person to retain it") (emphasis in original).  The Complaint

11  does not offer allegations showing that LinkedIn received any such benefit.

12  For all these reasons, plaintiff's unjust enrichment claim must be dismissed with

13  prejudice.

14  **IV.    CONCLUSION**

15  For the foregoing reasons, the Complaint should be dismissed with prejudice.

16
17  DATED:  June 17, 2011                         COVINGTON & BURLING LLP

18                                                By: _____/s/_____

19                                                    Simon J. Frankel
                                                      Attorneys for Defendant
20                                                    LINKEDIN CORPORATION

21

22

23

24

25

26

27

28