UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KEVIN LOW, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>LINKEDIN CORPORATION, a California Corporation, and DOES 1 to 50 inclusive,<br><br>Defendants. | Case No.: 11-CV-01468-LHK<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

Plaintiff Kevin Low ("Low" or "Plaintiff"), brings this putative class action against LinkedIn Corp. ("LinkedIn" or "Defendant") alleging that the personal information of the putative class members, including "personally identifiable browsing histor[ies]," were allegedly disclosed by Defendant to third party advertising and marketing companies through the use of "cookies" or "beacons." Compl. at ¶¶ 15-16, March 29, 2011, ECF No. 1. Plaintiff alleges violations of the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*; the California Constitution; the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.*; the California False Advertising Law, Cal. Bus. & Prof. Code §17500 *et seq.*; the California Consumer Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*; common law breach of contract; breach of implied covenant of good faith and fair dealing; common law invasion of privacy; conversion; and unjust enrichment. Before this Court is Defendant's motion to dismiss. Def.'s Mot. To Dismiss at 1, June 17, 2011, ECF No. 13.

A hearing was held on September 15, 2011.  For the foregoing reasons, the Defendant's motion to dismiss is GRANTED with leave to amend.

## I.  BACKROUND

Unless otherwise noted, the following allegations are taken from the Complaint and are presumed true for purposes of ruling on Defendant's motion to dismiss.  Plaintiff brings this putative class action on behalf of all persons in the United States who registered for LinkedIn services after March 25, 2007.  Compl. at ¶ 34.  LinkedIn is a web-based social networking site that presents itself as an online community offering professionals ways to network.  Compl. at ¶ 3.  Plaintiff alleges that LinkedIn allows transmission of users' personally identifiable browsing history and other personal information to third parties, including advertisers, marketing companies, data brokers, and web tracking companies, in violation of federal and state laws and in violation of LinkedIn's privacy policy.

The Complaint sets forth allegations regarding LinkedIn's general policies and practices related to the transmission of users' information to third parties.  First, LinkedIn assigns each registered user a unique user identification number.  Compl. at ¶ 14.  Then, LinkedIn's website links and transmits the user ID number to third party tracking IDs ("cookies").  Compl. at ¶ 15.  These practices allow third parties to track the LinkedIn users' online brower histories and allow them to aggregate data.  Compl. at ¶ 19.  Plaintiff alleges that "LinkedIn's role in this process is to add 'social' information such as the name of each user and the other LinkedIn profiles they view and interact with, to the otherwise potentially anonymous tracking process."  Compl. at ¶ 15.  The information is disclosed to third parties each time the member logs in and views pages on the LinkedIn website by transmitting the HTTP Referer header, and adding the user ID as a "URL parameter" when the request is transmitted to the third party.  Compl. at ¶ 16.  Plaintiff alleges that "merely logging in and looking at a profile page caused LinkedIn to transmit the user ID bundled with that site's tracking cookie ID" to third parties.  Compl. at ¶18.

Plaintiff alleges that this practice allows third parties to view a user's browser history, including potentially sensitive information that may be gathered based on a user's prior searches. Compl. at ¶ 13.  Moreover, Plaintiff alleges that these practices violate several parts of LinkedIn's

privacy policy, including the provision that states that "We do not sell, rent or otherwise provide [user's] personal identifiable information to any third parties for marketing purposes." Compl. at ¶ 24.

Low alleges that he is a registered user of LinkedIn. Although it is ambiguous from the face of the complaint, Plaintiff's counsel clarified at the hearing that Low has not paid money for the services LinkedIn provides. Low alleges that LinkedIn transmitted his LinkedIn user identification to third parties, "linking [his personal identity] to [the third party's] secretly embedded tracking device that surreptitiously recorded Mr. Low's internet browsing history." Compl. at ¶ 2. As a result "he was embarrassed and humiliated by the disclosure of his personally identifiable browsing history;" that his personally identifiable browsing history is valuable personal property; and that he "relinquished his valuable personal property without the compensation to which he was due." Compl. at ¶¶ 1, 64.

Defendant filed a motion to dismiss arguing that this Court lacks subject matter jurisdiction because Plaintiff has failed to establish that he has standing under Article III of the United States Constitution. Def.'s Mot. To Dismiss at 1, June 17, 2011, ECF No. 13. In the alternative, Defendant argues that the complaint should be dismissed because Plaintiff has failed to state a claim upon which relief can be granted as to all ten claims alleged. Def.'s Mot. To Dismiss at 1, June 17, 2011, ECF No. 13. Because the Court finds that Plaintiff has failed to establish Article III standing, it need not address Defendant's alternative argument that Plaintiff's claims fail under Fed. R. Civ. P. 12(b)(6).

## II. LEGAL STANDARD AND ANALYSIS

An Article III federal court must ask whether a plaintiff has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the U.S. Constitution. To satisfy Article III standing, plaintiff must allege: (1) injury-in-fact that is concrete and particularized, as well as actual and imminent; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely (not merely speculative) that injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992). A suit brought by a plaintiff

3

Case No.: 11-CV-01468-LHK
ORDER GRANTING MOTION TO DISMISS

without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998). In that event, the suit should be dismissed under Rule 12(b)(1). *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109-110 (1998). Defendant argues that Low has failed to allege that he has suffered an injury-in-fact that is concrete and particularized as well as actual and imminent.

### A. Injury-In-Fact

At least one named plaintiff must have suffered an injury in fact. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."). As the sole named plaintiff in this action, Low has alleged that Defendant's conduct has harmed *him* specifically in two ways. First, Low alleges that he suffered "embarrass[ment] and humiliat[ion caused] by the disclosure of his personally identifiable browsing history" Compl. at ¶ 1. Second, Low alleges that his personally identifiable browsing history is valuable personal property with a market value, and "as a result of Defendant's unlawful conduct, Mr. Low relinquished this valuable personal property without compensation to which he was due." Compl. ¶ at 1. Each of these arguments is addressed in turn.

#### (1) Emotional Harm

In support of his first theory of harm, Low alleges that LinkedIn assigns its users unique identification numbers and these user IDs are linked with cookies and beacons that allow personal information to be associated with otherwise anonymous users' browsing histories. Compl. at ¶¶ 11-12. Low alleges that "anyone who has used the Internet to discreetly seek advice about hemorrhoids, sexually transmitted diseases, abortion, drug and/or alcohol rehabilitation, mental health, dementia, etc., can be reasonably certain that these sensitive inquiries have been captured in the browsing history" and sent to third parties to be exploited. Compl. at ¶ 13. The only allegations specific to Mr. Low state that on March 24, 2011, his personal LinkedIn user identification number, associated with a social search for his own name, was transmitted to third

4

parties by LinkedIn. Compl. at ¶ 2. As a result, Mr. Low claims he was "embarrassed and humiliated by the disclosure of his personally identifiable browsing history." Compl. at ¶ 1.

Several deficiencies regarding Plaintiff's theory of harm convince the Court that Plaintiff has failed to allege facts sufficient to establish Article III standing under a theory of emotional harm. It is unclear from the face of the complaint what information was actually disclosed to third parties that would lead Plaintiff to suffer emotional harm. For example, Plaintiff has not alleged that his browsing history, with embarrassing details of his personal browsing patterns, was actually linked to his identity by LinkedIn and actually transmitted to any third parties. *See* Compl. ¶ at 2. More to the point, Plaintiff has not alleged *how* third party advertisers would be able to infer Low's personal identity from LinkedIn's anonymous user ID combined with his browsing history. Moreover, even at the oral argument Plaintiff was unable to articulate a theory of what information had actually been transmitted to third parties, how it had been transferred to third parties, and how LinkedIn had actually caused him harm. Therefore, Low has not sufficiently alleged a particularized harm as a result of Defendant's conduct. *See Lujan*, 504 U.S. at 561 n.1 ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way.").

To the extent that Plaintiff seeks to establish a future harm, Plaintiff's allegation that his sensitive information *may* be transmitted via his browser history is too theoretical to support injury-in-fact for the purposes of Article III standing. Plaintiff has not alleged that his browser history will be linked to his identity by LinkedIn and that this information will necessarily be transmitted to third parties, or indeed, how third party advertisers will be able to infer his personal identity from his anonymous LinkedIn user ID. *See* Compl. ¶ at 2. Therefore, the Court finds these allegations to be insufficient to establish an injury-in-fact that is concrete and particularized, as well as actual and imminent. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 960-61 (9th Cir. 2009) (finding lack of standing because of the "conjectural and hypothetical nature" of the alleged injury).

(2) Economic Harm

Low also alleges that he has been economically harmed by LinkedIn's practices. Low alleges that his browsing history is personal property with market value and that he has

5

Case No.: 11-CV-01468-LHK
ORDER GRANTING MOTION TO DISMISS

1   "relinquished this valuable personal property without compensation to which he was due." Compl.
2   ¶ at 1. Plaintiff clarified at oral argument that he has not paid money for LinkedIn's service. Thus,
3   it appears that Plaintiff is alleging that his personal information has an independent economic
4   value, and that he was not justly compensated for LinkedIn's transfer of his personal data to third
5   party data aggregators. Compl. ¶¶ at 1, 64.

6   These allegations, however, appear to be too abstract and hypothetical to support Article III
7   standing. The recent case of *Specific Media* is instructive. *See LaCourt v. Specific Media, Inc.*,
8   2011 U.S. Dist. LEXIS 50543, at *9-12 (C.D. Cal. Apr. 28, 2011). In *Specific Media*, plaintiffs
9   accused an online third party ad network, Specific Media, of installing "cookies" on their
10  computers to circumvent user privacy controls and track internet use without user knowledge or
11  consent. The court held that plaintiffs lacked Article III standing in part because they had not
12  alleged any "particularized example" of economic injury or harm to their computers. *Id.* at *7-13.
13  The Court noted that while Plaintiffs may theoretically have had some property interest in their
14  personal information, they had not "identif[ied] a single individual who was foreclosed from
15  entering into a 'value-for-value exchange' as a result of [Defendant's] alleged conduct," and they
16  had not explained "how they were 'deprived' of the economic value of their personal information
17  simply because their unspecified personal information was purportedly collected by a third party."
18  Id. at *5. Other cases, analyzing similar legal issues, have held that unauthorized collection of
19  personal information does not create an economic loss. *See In re iPhone Application Litig.,* No.
20  11-MDL-02250 (N.D. Cal. Sept. 20, 2011); *In re Doubleclick, Inc., Privacy Litig.*, 154 F. Supp. 2d
21  497, 525 (S.D.N.Y. 2001) (holding that unauthorized collection of personal information by a third-
22  party is not "economic loss"); *see also In re JetBlue Airways Corp., Privacy Litig.*, 379 F. Supp. 2d
23  299, 327 (E.D.N.Y. 2005) (explaining that airline's disclosure of passenger data to third party in
24  violation of airline's privacy policy had no compensable value).

25  As in *Specific Media*, Low has failed to allege facts sufficient to support his theory of harm.
26  Low relies upon allegations that the data collection industry generally considers consumer
27  information valuable, and that he relinquished his valuable personal information without the
28  compensation to which he was due. *See* Compl. at ¶¶ 1; 20-23. But Low, like the Plaintiffs in

6

Case No.: 11-CV-01468-LHK
ORDER GRANTING MOTION TO DISMISS

*Specific Media*, has failed to allege facts that demonstrate that he was economically harmed by LinkedIn's practices. Low has failed to allege how he was foreclosed from capitalizing on the value of his personal data or how he was "deprived of the economic value of [his] personal information simply because [his] unspecified personal information was purportedly collected by a third party." 2011 WL 1661532 at *5.

Plaintiff relies on *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010), to argue that the loss of personal information may be sufficient to confer Article III standing. *See* Opp'n. to Mot. to Dismiss, August 1, 2011, ECF No. 16. Plaintiffs in *Krottner* were Starbucks employees that had had their personal information, including names, addresses, and social security numbers, compromised as the result of the theft of a company laptop. *Id*. at 1140. Class members brought an action against Starbucks, alleging negligence and breach of contract. *Id*. at 1139. The Ninth Circuit held that the plaintiffs satisfied the injury-in-fact requirement through their allegations of increased risk of future identify theft because they had "alleged a credible threat of real and immediate harm stemming from the theft of a laptop containing their unencrypted personal data." *Id*. at 1143. In reaching its decision, the Ninth Circuit relied on analogous reasoning in environmental claims, wherein a plaintiff may allege a future injury in order to comply with the injury-in-fact requirement. *Id*. at 1142 (quoting *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 948-50 (9th Cir. 2002). The Ninth Circuit explained that:

> [T]he injury in fact requirement can be satisfied by a threat of future harm or by an act which harms the plaintiff only by increasing the risk of future harm that the plaintiff would have otherwise faced, absent the defendant's actions.

*Id*. at 1143 (quoting *Pisciotta v. Old Nat'l. Bankcorp*, 499 F.3d 629, 634 (7th Cir. 2007) (internal citations omitted). Thus, where sensitive personal data, such as names, addresses, social security numbers and credit card numbers, is improperly disclosed or disseminated into the public, increasing the risk of future harm, injury-in-fact has been recognized. *See Krottner*, 628 F.3d 1139; *see also Doe 1 v. AOL*, 719 F. Supp. 2d 1102, 1109-1111 (2010) (holding that past publication of sensitive personal information, including credit card numbers, social security numbers, financial account numbers, and information regarding AOL members' personal issues,

7

Case No.: 11-CV-01468-LHK
ORDER GRANTING MOTION TO DISMISS

including sexuality, mental illness, alcoholism, incest, rape, and domestic violence and continuing collection and dissemination of this same sensitive information is sufficient to establish standing).

Low, in contrast, has not yet articulated or alleged a particularized and concrete harm as the plaintiffs did in *Krottner* and *Doe*. The plaintiffs in *Krottner* and *Doe* were concerned with the harm that arose from the actual publication or theft of their highly sensitive personal data. Low has not alleged that his credit card number, address, and social security number have been stolen or published or that he is a likely target of identity theft as a result of LinkedIn's practices. Nor has Low alleged that his sensitive personal information has been exposed to the public. Indeed, the Plaintiff has failed to put forth a coherent theory of how his personal information was disclosed or transferred to third parties, and how it has harmed him. Accordingly, Low has failed to allege an injury-in-fact.[1]

Because Plaintiff does not have standing to bring his claims before this Court, no subject matter jurisdiction exists. Therefore, the Court will not address the merits of Plaintiff's claims.

### III. CONCLUSION

For the foregoing reasons the Defendant's Motion to Dismiss is GRANTED without prejudice. Plaintiff has 21 days from the filing of this order to file a First Amended Complaint.

**IT IS SO ORDERED.**

Dated: November 11, 2011

LUCY H. KOH
United States District Judge

---

[1] There is also an argument, though not specifically advanced by Plaintiff, that the creation of a statutory right may be sufficient to confer standing on Plaintiff. For example, in *In re Facebook Privacy Litig.*, Plaintiffs brought claims pursuant to both the Wiretap Act and the Stored Communications Act. The court found that the federal Wiretap Act created a statutory right sufficient to confer standing. 2011 WL 2039995, at *4 (N.D. Cal. May 12, 2011). The Wiretap Act provides that any person whose electronic communication is "intercepted, disclosed, or intentionally used" in violation of the Act may bring a civil action against the entity that engaged in that violation. *Id.* (citing 18 U.S.C. § 2520(a)). Plaintiff has not made a claim under the Wiretap Act here. Moreover, based on Judge Ware's analysis, it isn't clear whether the statutory right created by the Stored Communications Act is sufficient to overcome the standing hurdle in this case. Given that the Plaintiff is allowed leave to amend, the Court need not address this issue at this time.

8

Case No.: 11-CV-01468-LHK
ORDER GRANTING MOTION TO DISMISS