**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KEVIN LOW, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br>  v.<br><br>LINKEDIN CORPORATION, a California Corporation, and DOES 1 to 50 inclusive,<br><br>      Defendants. | Case No.: 11-CV-01468-LHK<br><br>ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS |

17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs Kevin Low ("Low") and Alan Masand (individually, "Masand," collectively "Plaintiffs"), bring this putative class action against LinkedIn Corp. ("LinkedIn" or "Defendant") alleging that personal information of the putative class members, including "personally identifiable browsing histor[ies]," were allegedly disclosed by Defendant to third party advertising and marketing companies through the use of "cookies" or "beacons."  Defendant's first motion to dismiss was granted on November 11, 2011 ("November 2011 Order").  ECF No. 28.

In the Amended Complaint ("AC"), Plaintiffs allege violations of the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*; the California Constitution; the California False Advertising Law, Cal. Bus. & Prof. Code §17500 *et seq.*; common law breach of contract; common law invasion of privacy; conversion; unjust enrichment; and negligence.  Pursuant to Civil Local Rule 7-1(b), the Court deemed Defendants' motion suitable for decision without oral argument.  Thus, the hearing and case management conference set for July 12, 2012 were VACATED.  For

1

the foregoing reasons, the Defendant's motion to dismiss is DENIED in part and GRANTED in part.

I.     **BACKGROUND**

**A. Factual Background**

Unless otherwise noted, the following allegations are taken from the Amended Complaint and are presumed true for purposes of ruling on Defendant's motion to dismiss.  Plaintiffs bring this putative class action on behalf of all persons in the United States who registered for LinkedIn services after March 25, 2007.  AC ¶ 58.  LinkedIn is a web-based social networking site that presents itself as an online community offering professionals ways to network.  *Id.* ¶ 8.  Plaintiffs allege that LinkedIn allows transmission of users' LinkedIn browsing history, as well as the user's LinkedIn ID, to third parties, including advertisers, marketing companies, data brokers, and web tracking companies.  According to Plaintiffs, LinkedIn's practices allow these third parties to identify both the individual LinkedIn user, and the user's browsing history in violation of federal and state laws and in violation of LinkedIn's privacy policy.  *Id.* ¶¶ 19-23.

The Amended Complaint sets forth allegations regarding LinkedIn's general policies and practices related to the transmission of users' information to third parties.  First, LinkedIn assigns each registered user a unique user identification number.  *Id.* ¶ 25.  Second, when an internet user visits a LinkedIn user's profile page, LinkedIn sends a command to the Internet user's browser that designates a third party from which the browser should download advertisements and other content.  *Id.* ¶ 16.  This command requires the internet user's browser to transmit two components of information: (1) the third party tracking ID ("cookies") on the user's hard drive corresponding with the designated third party, as well as (2) the URL of the LinkedIn profile being viewed, which includes the viewed party's LinkedIn ID (a unique number generated by LinkedIn to identify individual users).  *Id.*

Plaintiffs allege that third parties can theoretically de-anonymize a user's LinkedIn ID number.  Although Plaintiffs' allegations are somewhat unclear, Plaintiffs allege that third parties can associate a LinkedIn user ID and URL of the user's profile page with a user's cookies ID and thus determine a LinkedIn user's identity.   For example, Plaintiffs allege that third parties can

2

United States District Court
For the Northern District of California

correlate a user's LinkedIn ID and profile page with the corresponding cookies ID because LinkedIn users generally view their page more than any other LinkedIn profile page.  The information transmitted to third parties includes the LinkedIn ID and URL of the page being viewed as well as the cookies ID of the person viewing the LinkedIn page.  Thus, third parties can determine that a LinkedIn user ID corresponds with a specific internet user because the LinkedIn user ID transmitted with the most frequency is likely the cookies ID owner's profile page.  *Id.* ¶ 34.  Similarly, Plaintiffs allege that when a LinkedIn user selects his or her own LinkedIn profile, a unique "View Profile" URL is generated and transmitted to third parties, which contains that user's LinkedIn ID.  From this transmission a third party could associate a LinkedIn user's numeric identification and profile page with the cookie ID of the LinkedIn user.  *Id.* ¶ 35.

Once a third party can associate a LinkedIn ID and profile page with a cookies ID, Plaintiffs allege that a third party can associate a de-anonymized LinkedIn user's identity with the user's browsing history.  An internet user's cookies ID corresponds to a third party's records of Internet users' internet histories.  Plaintiffs allege that third parties can view a LinkedIn user's browser history, including the other LinkedIn profiles with which a user has interacted as well as potentially sensitive information that may be gathered based on a user's prior Internet history.  *Id.* ¶¶ 20-23.  Moreover, Plaintiffs allege that these practices violate several parts of LinkedIn's privacy policy, including the provision that states that: "We do not sell, rent or otherwise provide [user's] personal identifiable information to any third parties for marketing purposes."  *Id.* ¶ 49.

Low and Masand allege that they are both registered users of LinkedIn.  *Id.* ¶¶ 1-2.  Although Low has not paid money for the services LinkedIn provides, Masand purchased a "Job Seeker Premium" subscription in November 2011, and his subscription remained active throughout the relevant time period. *Id.* ¶ 2.  Both Low and Masand allege that LinkedIn transmitted their LinkedIn user ID to third parties, "linking [their personal identities] to [the third party's] secretly embedded tracking device that surreptitiously recorded Mr. Low's [and Mr. Masand's] internet browsing history." *Id.* ¶¶ 3, 36.  Plaintiffs allege that as a result of the allegations explained above, Plaintiffs suffered two types of harm.  First, Plaintiffs allege that they were "embarrassed and humiliated by the disclosure of his personally identifiable browsing history."  Second, Plaintiffs

3

1    allege that their personally identifiable browsing histories are valuable personal property; and that

2    they "relinquished [their] valuable personal property without the compensation to which [they

3    were] due." *Id.* ¶ 5.

4                                    **B. Procedural Background**

5              The original complaint, brought only by Plaintiff Low, was filed on March 29, 2011.  Low

6    alleged violations of the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*; the California

7    Constitution; the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.*; the

8    California False Advertising Law, Cal. Bus. & Prof. Code §17500 *et seq.*; the California Consumer

9    Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*; common law breach of contract; breach of the

10   implied covenant of good faith and fair dealing; common law invasion of privacy; conversion; and

11   unjust enrichment.  On June 17, 2011, Defendant filed a motion to dismiss for lack of subject

12   matter jurisdiction and failure to state a claim.  ECF No. 13.  Plaintiff filed an opposition on

13   August 1, 2011.  ECF No. 16.  Defendant filed a reply on August 15, 2011.  ECF No. 17.  On

14   November 11, 2011, the Court found that Plaintiff had failed to establish Article III standing, and

15   granted Defendant's motion to dismiss for lack of jurisdiction with leave to amend.  ECF No. 28.

16             Shortly thereafter, Low filed an Amended Complaint that added Alan Masand as a named

17   plaintiff.  ECF No. 31.  The Amended Complaint also withdrew the claims based on the California

18   Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.*, and the Consumer Legal

19   Remedies Act, but added a claim for negligence.

20             Defendant filed a motion to dismiss for lack of subject matter jurisdiction and failure to

21   state a claim on January 9, 2012.  Motion to Dismiss ("MTD"), ECF No. 34.  In the motion to

22   dismiss, Defendant argues that the Amended Complaint fails to remedy the defects identified in the

23   November 2011 Order.  In particular, Defendant argues that this Court still lacks subject matter

24   jurisdiction because Plaintiffs have failed to establish that either Low or Masand has standing

25   under Article III of the United States Constitution.  MTD at 1-2.  In the alternative, Defendant

26   argues that Plaintiffs continue to fail to state a claim upon which relief can be granted as to all eight

27   claims alleged.  *Id.* at 2-3.  Plaintiffs filed an opposition to the motion to dismiss on February 2,

28

**United States District Court**
For the Northern District of California

4

1   2012.  ECF No. 37.  Defendant filed a reply in support of the motion to dismiss on February 21,

2   2012.  ECF No. 38.

3   **II.     LEGAL STANDARD**

4          **A.     Motion to Dismiss Under Rule 12(b)(1)**

5          A jurisdictional challenge may be facial or factual.  *Safe Air for Everyone v. Meyer*, 373

6   F.3d 1035, 1039 (9th Cir. 2004).  Where the attack is facial, the court determines whether the

7   allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction,

8   accepting all material allegations in the complaint as true and construing them in favor of the party

9   asserting jurisdiction.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975).  Where the attack is factual,

10  however, "the court need not presume the truthfulness of the plaintiff's allegations."  *Safe Air for*

11  *Everyone*, 373 F.3d at 1039.  In resolving a factual dispute as to the existence of subject matter

12  jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a

13  motion to dismiss into one for summary judgment.  *See id.*; *McCarthy v. United States*, 850 F.2d

14  558, 560 (9th Cir.1988) (holding that a court "may review any evidence, such as affidavits and

15  testimony, to resolve factual disputes concerning the existence of jurisdiction").  Once a party has

16  moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party

17  bears the burden of establishing the Court's jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co.*,

18  511 U.S. 375, 377 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th

19  Cir. 2010).

20         **B.     Motion to Dismiss Under Rule 12(b)(6)**

21         A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief

22  can be granted "tests the legal sufficiency of a claim."  *Navarro v. Block,* 250 F.3d 729, 732 (9th

23  Cir. 2001).  Dismissal under Rule 12(b)(6) may be based on either: (1) the "lack of a cognizable

24  legal theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory."

25  *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990).  While "'detailed factual

26  allegations'" are not required, a complaint must include sufficient facts to "'state a claim to relief

27  that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009)

28  (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility

**United States District Court**
For the Northern District of California

1    when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

2    the defendant is liable for the misconduct alleged." *Id.*

3          For purposes of ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all

4    allegations of material fact as true and construes the pleadings in the light most favorable to the

5    plaintiffs. *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008).  The

6    Court need not, however, accept as true pleadings that are no more than legal conclusions or the

7    "'formulaic recitation of the elements' of a cause of action." *Iqbal,* 129 S.Ct. at 1949 (quoting

8    *Twombly,* 550 U.S. at 555).  Mere "conclusory allegations of law and unwarranted inferences are

9    insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.,*

10   83 F.3d 1136, 1140 (9th Cir. 1996); *accord Iqbal,* 129 S. Ct. at 1949–50.

11         **C.     Leave to Amend**

12         Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely

13   given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate

14   decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith,* 203 F.3d

15   1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). When

16   dismissing a complaint for failure to state a claim, "'a district court should grant leave to amend

17   even if no request to amend the pleading was made, unless it determines that the pleading could not

18   possibly be cured by the allegation of other facts.'" *Id.* at 1127 (quoting *Doe v. United States,* 58

19   F.3d 494, 497 (9th Cir. 1995)).  Generally, leave to amend shall be denied only if allowing

20   amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the

21   moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g.,* 512 F.3d 522, 532

22   (9th Cir. 2008).

23   **III.   ANALYSIS**

24         **A.     Article III Standing**

25         An Article III federal court must ask whether a plaintiff has suffered sufficient injury to

26   satisfy the "case or controversy" requirement of Article III of the U.S. Constitution.  To satisfy

27   Article III standing, plaintiff must allege: (1) injury-in-fact that is concrete and particularized, as

28   well as actual and imminent; (2) wherein injury is fairly traceable to the challenged action of the

**United States District Court**
For the Northern District of California

6

United States District Court
For the Northern District of California

1   defendant; and (3) it is likely (not merely speculative) that injury will be redressed by a favorable

2   decision.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81

3   (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992).  A suit brought by a plaintiff

4   without Article III standing is not a "case or controversy," and an Article III federal court there-

5   fore lacks subject matter jurisdiction over the suit.  *Steel Co. v. Citizens for a Better Environment,*

6   523 U.S. 83, 101 (1998).  In that event, the suit should be dismissed under Rule 12(b)(1).  *See id.* at

7   109-110.  Moreover, at least one named plaintiff must have suffered an injury in fact.  *See Lierboe*

8   *v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) ("[I]f none of the named

9   plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the

10   defendants, none may seek relief on behalf of himself or any other member of the class.").  The

11   parties only dispute the first prong of the standing requirement: whether the injury is both

12   "concrete and particularized."  *Lujan*, 504 U.S. at 560; *see* MTD at 5-10; Opp'n at 3-9; Reply at 2-

13   4.

14           As an initial matter, the Court notes that because "injury" is a requirement under both

15   Article III and Plaintiffs' individual causes of action, "the threshold question of whether [Plaintiffs

16   have] standing (and the [C]ourt has jurisdiction) is distinct from the merits of [Plaintiffs'] claim."

17   *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).  The issue of whether Plaintiffs have

18   established standing "in no way depends on the merits of the plaintiff's contention that particular

19   conduct is illegal."  *Warth*, 422 U.S. at 500; *accord Equity Lifestyle Props., Inc. v. Cnty. of San*

20   *Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008) ("The jurisdictional question of standing

21   precedes, and does not require, analysis of the merits.").  In other words "[a] plaintiff may satisfy

22   the injury-in-fact requirements to have standing under Article III, and thus may be able to 'bring a

23   civil action without suffering dismissal for want of standing to sue,' without being able to assert a

24   cause of action successfully."  *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 712 n.5 (N.D.

25   Cal. 2011) (citing *Doe v. Chao*, 540 U.S. 614, 624-25 (2004)).

26           In the November 2011 Order, the Court determined that Plaintiff had failed to establish

27   standing under either of the two theories of harm asserted.  The Court left open the possibility that

28   Plaintiffs would be able to establish Article III standing based upon the violation of a statutory

                                                7

Case No.: 11-CV-01468-LHK
ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1   right, even though the issue was not fully briefed for the Court.  *See* November 2011 Order at 8

2   n.1.  In their opposition, Plaintiffs argue that Defendants' conduct violates several statutory and

3   constitutional rights, and that the violation of these rights confers standing upon Plaintiffs.  Opp'n

4   at 3-9.

5          The injury required by Article III may exist by virtue of "statutes creating legal rights, the

6   invasion of which creates standing."  *See Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir.

7   2010) (quoting *Warth*, 422 U.S. at 500).  In such cases, the "standing question . . . is whether the

8   constitutional or statutory provision on which the claim rests properly can be understood as

9   granting persons in the plaintiff's position a right to judicial relief."  *Id.* (quoting *Warth*, 422 U.S.

10  at 500)).  The Ninth Circuit recently clarified that a suit brought alleging violations of surveillance

11  statutes, including the Stored Communications Act, establishes a "concrete" injury with respect to

12  the first prong of the Article III standing inquiry.  *See Jewel v. National Security Agency*, 673 F.3d

13  902, 908 (9th Cir. 2011).  Moreover, the invasion of a personal constitutional right – such as the

14  First Amendment right to freedom of association, or a Fourth Amendment right to be free from

15  unreasonable searches and seizures – may also establish a "concrete" harm for the purposes of

16  Article III standing.  *Id.* at 909.

17         In this case, Plaintiffs have alleged a violation of their statutory right under the Stored

18  Communications Act, 18 U.S.C. §§ 2701, et seq., as well as a violation of the California

19  constitutional right to privacy.  *See* AC ¶¶ 65-86.  The Stored Communications Act generally

20  prohibits providers from, among other things, "knowingly divulg[ing] to any person or entity the

21  contents of a communication."  18 U.S.C § 2702(a)(1)-(2); *see id.* § 2707 (creating a private right

22  of action).  Similarly, the California Constitution creates a privacy right that protects individuals

23  from the invasion of their privacy by private parties.  *Am. Acad. of Pediatrics v. Lungren,* 16 Cal.

24  4th 307 (1997).  Thus, Plaintiffs have articulated harm which is "concrete" for the purposes of

25  Article III standing.  *See, e.g. Jewel*, 673 F.3d at 908-09; *Gaos v. Google, Inc*., 5:10-CV-4809-EJD,

26  2012 WL 109446, at *3 (N.D. Cal. Mar. 29, 2012) ("Thus, a violation of one's statutory rights

27  under the SCA is a concrete injury."); *cf. In re Facebook Privacy Litig.*, 791 F. Supp. 2d at 711-12.

28

8

In addition to establishing a "concrete" injury, Plaintiffs must also establish that the alleged injury is "sufficiently particularized." *Jewel*, 673 F.3d at 909. In other words, the Court must determine whether Plaintiffs have "a particularized grievance," such that Plaintiffs have "a personal stake in the outcome of the controversy as to warrant . . . invocation of federal court jurisdiction." *Id.* (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

The Court agrees with Defendant that many of the allegations in the Amended Complaint relate only to LinkedIn's practices generally. Moreover, the allegations that third parties can *potentially* associate LinkedIn identification numbers with information obtained from cookies and can de-anonymize a user's identity and browser history are speculative and relatively weak. Nonetheless, Plaintiffs have alleged enough to articulate a "particularized grievance" by Plaintiffs here. For example, like *Jewel*, Plaintiffs describe not only LinkedIn's general practices, but also allege that Plaintiffs were likely impacted by LinkedIn's conduct. For example, Plaintiffs are both registered LinkedIn users. *See* AC ¶¶ 1-2. Moreover, Low alleges that LinkedIn browsing histories and user identification numbers, sent in connection with third party cookie identification numbers, were transmitted to third parties by LinkedIn. *See id.* ¶ 3. Low gives specific examples of the information allegedly transmitted to third parties when he visited the LinkedIn website. *See id.* ¶¶ 3-4. Because Plaintiffs have alleged that *their information* has been disclosed to third parties by LinkedIn's policies, Plaintiffs have sufficiently articulated, with particularity, injury as to themselves for the purposes of Article III standing. *See Jewel*, 673 F.3d at 910 ("Significantly, [Plaintiff] alleged with particularity that *her* communications were part of the dragnet."). The Court finds that Plaintiffs have established Article III standing. Therefore, Defendant's motion to dismiss under Rule 12(b)(1) is DENIED.

**B.     Rule 12(b)(6) Motion to Dismiss Causes of Action**

In light of the Court's finding that Plaintiffs have established Article III standing, the Court will turn to whether Plaintiffs have plausibly stated a claim as to each cause of action alleged in the Amended Complaint. *See In re Facebook Privacy Litig.*, 791 F. Supp. 2d at 712.

**1.  Stored Communications Act**

Case No.: 11-CV-01468-LHK
ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1    Plaintiffs' first cause of action alleges that LinkedIn violated the federal Stored

2    Communications Act, 18 U.S.C. § 2701, et seq. ("SCA").  *See* AC ¶¶ 65-78.  Enacted in 1986 as

3    Section II of the Electronic Communications Protection Act ("ECPA"), the SCA creates criminal

4    and civil liability for certain unauthorized access to stored communications and records.  *See*

5    *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 874 (9th Cir. 2002).  "The SCA was enacted

6    because the advent of the Internet presented a host of potential privacy breaches that the Fourth

7    Amendment does not address."  *Quon v. Arch Wireless Operating Company, Inc.*, 529 F.3d 892,

8    900 (9th Cir. 2008), *rev'd on other grounds by City of Ontario v. Quon*, 130 S.Ct. 2619 (2010).

9    Despite this purpose, the SCA has a narrow scope: "[t]he SCA is not a catch-all statute designed to

10   protect the privacy of stored Internet communications;" instead "there are many problems of

11   Internet privacy that the SCA does not address."  Orin S. Kerr, *A User's Guide to the Stored

12   Communications Act, and a Legislator's Guide to Amending It*, 72 GEO. WASH. L. REV. 1208, 1214

13   (2004).  Generally, the SCA prohibits providers from (1) "knowingly divulg[ing] to any person or

14   entity the contents of a communication."  18 U.S.C § 2702(a)(1)-(2); *see id.* § 2707 (creating a

15   private right of action); *see also Quon*, 529 F.3d at 900 ("[T]he SCA prevents 'providers' of

16   communication services from divulging private communications to certain entities and/or

17   individuals.").

18   The SCA covers two types of entities: (1) "remote computing services" ("RCS"), and (2)

19   "electronic communication services" ("ECS").  18 U.S.C § 2702(a)(1)-(2).  The non-disclosure

20   obligations depend on the type of provider at issue.  *See, e.g. Quon*, 529 F.3d at 900-902.  Plaintiffs

21   contend in their opposition that LinkedIn is an RCS for the purposes of its SCA liability.  *See*

22   Opp'n at 14-15.  The SCA prohibits an entity "providing remote computing service to the public"

23   from "knowingly divulge[ing] to any person or entity the contents of any communication which is

24   carried or maintained on that service." 18 U.S.C § 2702(a)(2).

25   The SCA only creates liability for a provider that is an RCS or an ECS.  A provider of e-

26   mail services is an ECS.  *Quon*, 529 F.3d at 901.  On the other hand, under the SCA the term

27   "remote computing service" means "the provision to the public of computer *storage or processing*

28   *services* by means of an electronic communications system."  18 U.S.C § 2711(2) (emphasis

10

1   added).  A "remote computing service" refers to "the processing or storage of data by an offsite

2   third party."  *Quon*, 529 F.3d at 901.  In defining RCS, "Congress appeared to view 'storage' as a

3   virtual filing cabinet."  *Id*. at 902.  Indeed, the Ninth Circuit has explained that "[i]n light of the

4   Report's elaboration upon what Congress intended by the term 'Remote Computer Services,' it is

5   clear that, before the advent of advanced computer processing programs such as Microsoft Excel,

6   businesses had to farm out sophisticated processing to a service that would process the

7   information."  *Id*. at 902 citing Kerr, 72 GEO. WASH. L. REV. at 1213-14.

8           Whether an entity is acting as an RCS or an ECS (or neither) is context dependent, and

9   depends, in part, on the information disclosed.  *See In re U.S.*, 665 F. Supp. 2d 1210, 1214 (D. Or.

10  2009) ("Today, most ISPs provide both ECS and RCS; thus, the distinction serves to define the

11  service that is being provided at a particular time (or as to a particular piece of electronic

12  communication at a particular time), rather than to define the service provider itself.  The

13  distinction is still essential, however, because different services have different protections."); Kerr,

14  72 GEO. WASH. L. REV. at 15-16 ("The classifications of ECS and RCS are context sensitive: the

15  key is the provider's role with respect to a particular copy of a particular communication, rather

16  than the provider's status in the abstract.  A provider can act as an RCS with respect to some

17  communications, an ECS with respect to other communications, and neither an RCS nor an ECS

18  with respect to other communications.").

19          Although many allegations within the Amended Complaint relate to information that third

20  parties would be able to *infer*, the Amended Complaint limits the information *LinkedIn* allegedly

21  disclosed to third parties.  The Amended Complaint alleges that LinkedIn transmits to third parties

22  the LinkedIn user ID and the URL of the LinkedIn profile page viewed by the internet user.  *See*

23  AC ¶¶ 28, 66-68.  Even taking Plaintiffs' allegations as true, it does not appear that LinkedIn was

24  functioning as an RCS[1] when it disclosed the LinkedIn user ID and the URL of the profile pages

25  the user had viewed to third parties.  LinkedIn was not acting as a "remote computing service" with

26  respect to the disclosed information because it was not "processing or stor[ing] [] data by an offsite

27

28  _____
[1]  Nor was LinkedIn an ECS under the SCA as the alleged disclosures did not include e-mail
transmissions or relate to LinkedIn's functionality as an electronic communication service.

Case No.: 11-CV-01468-LHK
ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS

**United States District Court**
For the Northern District of California

1    third party [in this case LinkedIn]."  *Quon*, 529 F.3d at 901.  LinkedIn IDs are numbers generated

2    by LinkedIn and were not sent by the user for offsite storage or processing.  *See* 18 U.S.C. §

3    2702(a)(2)(A).  LinkedIn was not acting "as a virtual filing cabinet," or as an offsite processor of

4    data with respect to the user IDs it created.  Similarly, the URL addresses of viewed pages were not

5    sent to LinkedIn by Plaintiffs for storage or processing.  *See* 18 U.S.C. § 2702(a)(2)(A)-(B).

6    LinkedIn was not functioning as either a "filing cabinet" or "an advanced computer processing

7    program such as Microsoft Excel," that allows businesses to "farm out sophisticated processing to

8    a service that would process the information," with respect to the LinkedIn user IDs or the URLs of

9    users' profile pages.  *Quon*, 529 F.3d at 902.

10          At least one commentator has seriously doubted the conclusion that a website, such as

11   LinkedIn, provides "processing services" for its customers, qualifying it as an RCS.  Kerr, 72 GEO.

12   WASH. L. REV. at 1229-31.  This view is supported by the legislative history of the SCA.  Congress

13   established liability for "remote computing services to include services that store and process

14   information.  S. Rep. No. 99-541, at 3 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3557

15   ("[C]omputers are used extensively today for the storage and processing of information. With the

16   advent of computerized recordkeeping systems, Americans have lost the ability to lock away a

17   great deal of personal and business information.  For example, physicians and hospitals maintain

18   medical files in offsite data banks, businesses of all sizes transmit their records to remote

19   computers to obtain sophisticated data processing services.").  Therefore, the Court finds that

20   Plaintiffs have not stated a claim for relief pursuant to the SCA because Plaintiffs have not

21   established that LinkedIn was acting as an RCS when it disclosed LinkedIn IDs and URLs of

22   viewed pages to third parties.[2]  Therefore, Defendants' motion to dismiss the SCA claim is

23   GRANTED.

24          Plaintiff Low also alleged a violation of the SCA in the original complaint.  Compl. ¶¶ 41-

25   53.  Plaintiff's original complaint did not articulate a coherent theory regarding its SCA claim.

26   Specifically, the original complaint's SCA claim failed to identify what information was

---

[2]  In light of this conclusion, the Court need not address LinkedIn's alternative arguments that the
SCA statutory exception applies, or that the disclosed information was not "content" of a
communication and thus did not violate the SCA.

12

**United States District Court**
For the Northern District of California

1    transmitted to third parties.  Plaintiffs' Amended Complaint now identifies what information was

2    transmitted to third parties and how, theoretically, a LinkedIn user's information can be de-

3    anonymized.  However, the additional factual allegations in the Amended Complaint establish that

4    Plaintiffs' SCA claim fails to establish a cause of action.  This defect is based on a failure of theory

5    and not on a failure of pleading.  Additional factual allegations are unlikely to establish that

6    Defendant was an RCS in light of the legislative history of the SCA.  Because further amendment

7    would be futile, Defendant's motion to dismiss the SCA claim is granted with prejudice.

8    **2.  Invasion of Privacy Under the California Constitution and Common Law**

9    Plaintiffs' second cause of action alleges that Defendant's conduct violates their right to

10   privacy pursuant to Article I, Section 1 of the California Constitution.  Additionally, Plaintiffs'

11   fifth cause of action alleges that Defendant's conduct constitutes a common law invasion of

12   privacy.  Because the parties present arguments relating to both causes of action together, and

13   because both causes of action suffer similar defects, the Court will discuss both claims together.

14   The California Constitution creates a privacy right that protects individuals from the

15   invasion of their privacy by private parties.  *Am. Acad. of Pediatrics,* 16 Cal. 4th 307; *Leonel v.*

16   *Am. Airlines, Inc.*, 400 F.3d 702, 711-12 (9th Cir. 2005), *opinion amended on denial of reh'g*, 03-

17   15890, 2005 WL 976985 (9th Cir. Apr. 28, 2005).  To establish a claim under the California

18   Constitutional right to privacy, a plaintiff must first demonstrate three elements:[3] (1) a legally

19   protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3)

20   conduct by the defendant that amounts to a serious invasion of the protected privacy interest.  *Hill*

21   *v. Nat'l Collegiate Athletic Ass'n,* 7 Cal. 4th 1, 35-37 (1994).  These elements do not constitute a

22   categorical test, but rather serve as threshold components of a valid claim to be used to "weed out

23   claims that involve so insignificant or de minimis an intrusion on a constitutionally protected

24   privacy interest as not even to require an explanation or justification by the defendant." *Loder v.*

25

26

27

28

[3]  Plaintiffs argue that the intent of the voters in passing the Privacy Initiative establishes that the
constitutional right of privacy under the California Constitution is designed to prevent
"unnecessary information gathering, use, and dissemination by public and private entities"
including the "collecting and stockpiling [of] unnecessary information."  *See* Opp'n at 9 (citing
*Hill*, 7 Cal. 4th at 21).  Even in light of this ballot history, the subsequent case law regarding the
Constitutional right to privacy establishes that only serious invasions of privacy give rise to a
private right of action.

Case No.: 11-CV-01468-LHK
ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1    *City of Glendale,* 14 Cal. 4th 846, 893 (1997).  "Actionable invasions of privacy must be

2    sufficiently serious in their nature, scope, and actual or potential impact to constitute an *egregious*

3    *breach of the social norms* underlying the privacy right."  *Hill,* 7 Cal. 4th at 37 (emphasis added).

4    Thus, if the allegations "show no reasonable expectation of privacy or an insubstantial impact on

5    privacy interests, the question of invasion may be adjudicated as a matter of law."  *Pioneer*

6    *Electronics, Inc. v. Sup. Ct. of L.A.,* 40 Cal. 4th 360, 370 (2007) (citing *Hill,* 7 Cal. 4th at 40).

7    Plaintiff's claim for common law invasion of privacy must meet similarly high standards for the

8    type of invasion that is actionable.  Under a claim for common law "invasion of privacy" tort,

9    Plaintiff must allege: (1) intrusion into a private place, conversation or matter (2) in a manner

10   *highly offensive to a reasonable person.  Shulman v. Group W Prods, Inc.*, 18 Cal. 4th 200, 231

11   (1998) (emphasis added).

12          The California Constitution and the common law set a high bar for an invasion of privacy

13   claim.  Even disclosure of personal information, including social security numbers, does not

14   constitute an "egregious breach of the social norms" to establish an invasion of privacy claim.  *See,*

15   *e.g.*, *In re iPhone Application Litig.*, __ F.3d __, Case No. 11-MD-02250-LHK, 2012 WL

16   2126351, at *15-16 (holding that the disclosure to third parties of unique device identifier number,

17   personal data, and geolocation information did not constitute an egregious breach of privacy); *Ruiz*

18   *v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127-28 (N.D. Cal. 2008) *aff'd*, 380 F. App'x. 689 (9th Cir.

19   2010) (holding that the theft of a retail store's laptop containing personal information, including the

20   social security numbers, of job applicants did not constitute an egregious breach of privacy and

21   therefore was not sufficient to state a claim for the California Constitutional right to privacy);

22   *Fogelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) ("Here, the supposed invasion

23   of privacy essentially consisted of [Defendant] obtaining plaintiff's address without his knowledge

24   or permission, and using it to mail him coupons and other advertisements.  This conduct is not an

25   egregious breach of social norms, but routine commercial behavior.").

26          Under either formulation of Plaintiffs' claims for invasion of privacy, Plaintiffs have failed

27   to allege sufficient facts to establish a highly offensive disclosure of information or a "serious

28   invasion" of a privacy interest.  Plaintiffs allege that Defendant disclosed to third parties the

14

1   LinkedIn ID and the URL of the LinkedIn profile page that the user viewed (which in the aggregate

2   discloses a user's browsing history among LinkedIn profiles).  *See* AC ¶¶ 5, 20, 28.  Although

3   Plaintiffs postulate that these third parties could, through inferences, de-anonymize this data, it is

4   not clear that anyone has actually done so, or what information, precisely, these third parties have

5   obtained.  *See* AC ¶¶ 31-36.  The information disclosed to third parties by LinkedIn, including a

6   numeric code associated with a user and the URL of the profile page viewed, does not meet the

7   standard set by California courts.  Plaintiffs have failed to establish that Defendant's conduct

8   "amounts to a serious invasion" of the protected privacy interest.  *See Hill*, 7 Cal. 4th at 26.

9   Therefore, Defendant's motion to dismiss Plaintiffs' invasion of privacy claims is GRANTED.

10        Plaintiff Low also alleged claims for invasion of privacy based on the California

11   Constitution and the common law in the original complaint.  Compl. ¶¶ 54-59; 102-107.  In the

12   original motion to dismiss, Defendant asserted the same arguments in favor of dismissing the

13   invasion of privacy claims that it now asserts in the second motion to dismiss.  *Compare* Motion to

14   Dismiss at 19-21, ECF No. 13 *with* Mot. to Dismiss at 20-22, ECF No. 34.  Thus, Plaintiffs were

15   on notice that their California privacy claims were required to meet a high standard to establish a

16   claim for invasion of privacy.  Despite this notice, Plaintiffs' Amended Complaint still fails to

17   allege facts establishing a serious invasion of privacy or an invasion that is highly offensive to a

18   reasonable person.  Accordingly, the Court finds amendment would be futile, and Defendant's

19   motion to dismiss counts two and four are granted with prejudice.

### 3.  False Advertising Law

21        Plaintiffs' third cause of action alleges that LinkedIn violated the False Advertising Law,

22   Cal. Bus. & Prof. Code § 17500, et seq. ("FAL").  The FAL provides that "[i]t is unlawful for any

23   person . . . corporation or association, or any employee thereof . . . to disseminate or cause to be so

24   made or disseminated [,] any such statement as part of a plan or scheme with the intent not to sell

25   that personal property or those services, professional or otherwise, so advertised at the price stated

26   therein, or as so advertised."  Cal. Bus. & Prof. § 17500.  California courts have noted that the FAL

27   prohibits "not only advertising which is false, but also advertising which[,] although true, is either

28

Case No.: 11-CV-01468-LHK
ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1   actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the

2   public."  *See e.g.*, *Leoni v. State Bar,* 39 Cal. 3d 609, 626 (1985).

3          In 2004, Proposition 64 amended the standing requirements under the FAL so that a private

4   plaintiff has standing to bring an FAL action if the plaintiff "has suffered injury in fact and has lost

5   money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17535.  Courts

6   have interpreted Proposition 64's "as a result of" language to require an allegation of reliance on

7   the alleged unfair competition or false advertising.  *See Laster v. T-Mobile USA, Inc.*, 407 F. Supp.

8   2d 1181, 1194 (S.D. Cal. 2005) *aff'd*, 252 F. App'x 777 (9th Cir. 2007).  Thus, actual reliance is

9   required to have standing to sue under the FAL.  *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th

10  310, 326–27 (2011) (applying the actual reliance standard to a FAL claim).  To establish actual

11  reliance, "plaintiff is not required to allege that [the challenged] misrepresentations were the sole or

12  even the decisive cause of the injury-producing conduct," however, "a plaintiff must show that the

13  misrepresentation was an immediate cause of the injury-producing conduct."  *Id*. (internal

14  quotations and citations omitted).

15         The Court agrees with Defendant that with respect to Low, the threshold requirement of

16  "lost money or property" has not been met.  Unlike Masand, Low does not allege that he paid any

17  money to LinkedIn and relies solely upon a theory that the alleged loss of personal property can

18  constitute "lost money or property."  Reply at 11, Opp'n at 22.  For reasons discussed in detail in

19  the November 2011 Order, "personal information" does not constitute money or property under

20  Proposition 64.

21         Low's failure to meet the threshold requirement of a loss of money or property is not in

22  itself fatal to Plaintiffs' FAL claim.  Defendant does not contest that Masand meets the threshold

23  requirement of lost money or property.  Plaintiffs allege that Masand paid $24.99, for a "Job

24  Seeker Platinum" LinkedIn subscription.  AC ¶¶ 2, 24; Opp'n at 24.  Masand meets the first

25  requirement of "lost money or property" to establish standing to pursue the FAL claim on behalf of

26  the represented class.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 314 (2009).

27         However, the Court ultimately agrees with Defendant that neither Low nor Masand have

28  alleged reliance on false advertisements or misrepresentations made by Defendant.  Plaintiffs argue

16

that the Amended Complaint pleads sufficient reliance on two occasions. First, Plaintiffs allege that Masand paid for LinkedIn's services "in exchange for Defendant's promises that it would not make '[a]ny information provided to third parties through cookies . . . personally identifiable' and that it 'does not provide personally identifiable information to any third party ad network.'" AC ¶ 57; Opp'n at 25. Second, Plaintiffs alleged that "had [they] known Defendant was not keeping their personal information from third parties, they would not have consented [to the dissemination of this information] and Defendant would not have gained commercial advantage from third parties." AC ¶ 117; Opp'n at 25. Because these misrepresentations were material, Plaintiffs argue they are entitled to an inference of reliance. *In re Tobacco II Cases*, 46 Cal. 4th at 327.

The Court finds multiple flaws in Plaintiffs' assertion that they have pleaded sufficient facts and allegations for an inference of reliance. A careful reading of the Amended Complaint reveals that Plaintiffs never alleged reliance on any specific representation or advertising in registering for or using the LinkedIn website. Although Plaintiffs describe "advertisements and inducements . . . made within the State of California" and "promotional materials [] intended as inducements to purchase and use products and services" that "misrepresented and/or omitted the truth about the extent to which Defendant would share valuable information with third parties," Plaintiffs never identify any advertisements or promotional materials exhibiting the alleged misrepresentations or omissions or allege that Plaintiffs viewed and subsequently relied on these materials. AC ¶ 90. As noted by Defendant, although the Amended Complaint describes the terms of Defendant's privacy policy in detail, Plaintiffs never allege that they were aware of the privacy policy, let alone saw or read it. Other courts have found the lack of allegations that a plaintiff had read an alleged false representation to be fatal to an FAL claim. *See e.g.*, *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010) (" the [complaint] does not allege Durell ever visited Sharp's Web site or even that he ever read the Agreement for Services."). Without an allegation that Plaintiffs were somehow aware of contents of Defendant's privacy policy, this Court finds that Plaintiffs cannot

Case No.: 11-CV-01468-LHK
ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS

1    allege Defendant's misrepresentations were an "immediate cause of the injury-causing conduct."[4]

2    Accordingly, Defendant's motion to dismiss the FAL claim is GRANTED.

3         Plaintiff Low alleged a violation of the FAL in the original complaint.  Compl. ¶¶ 69-75.

4    Defendant asserted the same arguments to dismiss the FAL claim in its initial motion to dismiss

5    that it now asserts in the second motion to dismiss.  *Compare* Motion to Dismiss at 13-16, ECF No.

6    13 *with* Mot. to Dismiss at 19-20, ECF No. 34.  Specifically, Defendant argued that Plaintiff's FAL

7    claim failed because Plaintiff had failed to establish both a loss of money or property and reliance

8    on the allegedly false advertising.  Motion to Dismiss at 13-16, ECF No. 13.  Plaintiffs cured one

9    of the defects by adding Plaintiff Masand, a paid subscriber to LinkedIn's services, and thus

10   established that at least one of the named Plaintiffs could have lost money or property in the

11   transaction.  However, despite Defendant's argument in the first motion to dismiss that reliance

12   was a necessary element to establish an FAL violation, Plaintiffs failed to establish actual reliance

13   by either Plaintiff in the Amended Complaint.  Accordingly, the Court finds amendment would be

14   futile, and thus grants Defendant's motion to dismiss count three with prejudice.

15              **4. Breach of Contract**

16        Plaintiffs' fourth cause of action is for breach of contract.  Under California law, to state a

17   claim for breach of contract a plaintiff must plead "the contract, plaintiffs' performance (or excuse

18   for nonperformance), defendant's breach, and damage to plaintiff therefrom."  *Gautier v. General*

19   *Tel. Co.*, 234 Cal. App. 2d 302, 305 (1965).  To establish contractual damages, a Plaintiff must

20   establish "appreciable and actual damage."  *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d

21   1010, 1015 (9th Cir. 2000); *Patent Scaffolding Co. v. William Simpson Const. Co.*, 256 Cal. App.

22   2d 506, 511 (1967) ("A breach of contract without damage is not actionable.").  Nominal damages,

23   speculative harm, or threat of future harm do not suffice to show legally cognizable injury.  *See*

24   *Aguilera*, 223 F.3d at 1015; *see also Ruiz*, 622 F. Supp. 2d at 917.

25

26   [4]  Plaintiffs attempt to circumvent their failure to adequately plead reliance by creatively
     characterizing their FAL claim as one premised on omissions.  Plaintiffs argue that it was
27   Defendant's nondisclosure of its practice of providing user's personal information to third parties
     that serves as the basis of Plaintiff's theory of harm, as opposed to affirmative representations that
28   were false or misleading.  This theory is unpersuasive because Plaintiffs still have failed to allege
     that Plaintiffs were aware of, read, and relied on Defendant's privacy policy.

18

Case No.: 11-CV-01468-LHK
ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1    Plaintiffs allege two theories of damages in the Amended Complaint.  First, Plaintiffs allege

2    that they suffered "embarrass[ment] and humiliat[ion caused] by the disclosure of their personally

3    identifiable browsing history[ies]."  AC ¶ 5.  Second, Plaintiffs allege that their "personal

4    information is valuable property" that they "exchange[d] for LinkedIn's services."  According to

5    Plaintiffs, because their personal information has a market value, and as a result of Defendant's

6    breach of contract, "Plaintiffs relinquished this valuable personal property without compensation to

7    which they were each due."  *Id.*

8    Neither theory of harm is sufficient to state a claim for breach of contract under California

9    law.  Plaintiffs' first theory that they suffered "embarrassment and humiliation," in addition to

10   being implausible in light of the specific factual allegations in the Amended Complaint, is clearly

11   foreclosed by California law.  Emotional and physical distress damages are not recoverable on a

12   California contract claim.  *Gibson v. Office of the Attorney Gen.*, 561 F.3d 920, 929 (9th Cir.

13   2009); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 516 (1994).

14   Secondly, as discussed extensively in the November 2011 Order, the premise of Plaintiffs'

15   alternative theory that their personal information has independent economic value is unsupported

16   by decisions of other district courts, which have held that unauthorized collection of personal

17   information does not create an economic loss.  *See In re iPhone Application Litig.*, No. 11-MDL-

18   02250 (N.D. Cal. Sept. 20, 2011); *In re Doubleclick, Inc., Privacy Litig.*, 154 F. Supp. 2d 497, 525

19   (S.D.N.Y. 2001) (holding that unauthorized collection of personal information by a third-party is

20   not "economic loss"); *see also In re JetBlue Airways Corp., Privacy Litig.*, 379 F. Supp. 2d 299,

21   327 (E.D.N.Y. 2005) (explaining that airline's disclosure of passenger data to third party in

22   violation of airline's privacy policy had no compensable value).  Neither the Amended Complaint

23   nor Plaintiff's Opposition to the Motion to Dismiss cite legal or statutory authority to the contrary,

24   and the Court is unconvinced by the technical reports cited by Plaintiffs in support of this theory.

25   AC ¶¶ 44-46.

26   Furthermore, the Court agrees with Defendant that even accepting the Plaintiffs' theory that

27   personal information does have independent economic value that has been diminished by

28   Defendant's alleged breach of contract, this loss in value would not be a cognizable form of

Case No.: 11-CV-01468-LHK
ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS

1    contract damages. A basic principle of contract law is that the "purpose of contract damages is to

2    put a plaintiff in the same economic position he or she would have occupied had the contract been

3    fully performed." *Katz v. Dime Sav. Bank, FSB*, 992 F. Supp. 250, 255 (W.D.N.Y. 1997).

4    Plaintiffs have not persuasively alleged that they "reasonably expect[ed] that they would be

5    compensated for the 'value' of their personal information." *In re Jetblue Airways Corp. Privacy*

6    *Litig.*, 379 F. Supp. 2d at 327. Plaintiffs have not alleged that they, or any other LinkedIn users,

7    have been foreclosed from opportunities to capitalize on the value of their personal data. Although

8    Plaintiffs cite to Allow Ltd. as an example of a company that offers to sell people's personal

9    information on their behalf and gives them 70% of the sale, Plaintiffs do not allege that they have

10   made any attempt to do so through Allow Ltd. or any similar service. In sum, the alleged decrease

11   in the value of Plaintiffs' personal information does not constitute cognizable contract damages for

12   the purposes of a breach of contract claim.

13          In their Opposition, Plaintiffs do not address any of Defendant's substantive arguments on

14   this issue of contract damages. They simply reallege that Plaintiffs entered into a contract with

15   Defendant, Defendant breached the contract, and therefore "Plaintiffs are entitled to contractual

16   damages." Opp'n at 26. However such a conclusory statement is insufficient to state a claim for

17   breach of contract. *In re Facebook Privacy Litig.*, 791 F. Supp. 2d at 717; *Patent Scaffolding Co.*,

18   256 Cal. App. 2d at 511. Accordingly, Defendant's motion to dismiss the breach of contract claim

19   is GRANTED.

20          The original complaint included a breach of contract cause of action. Compl. ¶¶ 86-92.

21   Defendant asserted the same arguments in support of its motion to dismiss the breach of contract

22   claim in its initial motion as it now asserts in the second motion to dismiss. *Compare* Motion to

23   Dismiss at 21-23, ECF No. 13 *with* Mot. to Dismiss at 22-23, ECF No. 34. Specifically, in the

24   original motion, Defendant argued that Plaintiff failed to establish appreciable and actual damages

25   in his breach of contract claim. Despite this, Plaintiffs did not allege appreciable or actual damages

26   in the Amended Complaint.

27          Moreover, in the November 2011 Order, the Court identified several problems with

28   Plaintiff's theory of harm. Specifically, the Court explained that the theory of economic harm

20

Case No.: 11-CV-01468-LHK
ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS

**United States District Court**
For the Northern District of California

1  advanced by Plaintiff was too abstract and speculative to support Article III standing.  Although

2  Plaintiffs' Amended Complaint has satisfied the Article III standing requirement based on statutory

3  standing, the issues the Court initially identified with respect to the theory of harm also apply to the

4  breach of contract claim and were not cured in the Amended Complaint.  Therefore, leave to

5  amend would likely be futile as to the breach of contract claim, and Defendant's motion to dismiss

6  is granted with prejudice.

7            **5.  Conversion**

8        Plaintiffs' sixth cause of action alleges that Defendant's conduct constitutes conversion

9  under California law.  California law defines conversion as "any act of dominion wrongfully

10  asserted over another's personal property in denial of or inconsistent with his rights therein."  *In re*

11  *Bailey*, 197 F.3d 997, 1000 (9th Cir. 1999).  "The conversion of another's property without his

12  knowledge or consent, done intentionally and without justification and excuse, to the other's injury,

13  constitutes a willful and malicious injury within the meaning of § 523(a)(6)."  *In re Bailey*, 197

14  F.3d at 1000 (citing *Transamerica Comm. Fin. Corp. v. Littleton,* 942 F.2d 551, 554 (9th Cir.

15  1994)).  To establish conversion, a plaintiff must show "ownership or right to possession of

16  property, wrongful disposition of the property right and damages."  *Kremen v. Cohen*, 337 F.3d

17  1024, 1029 (9th Cir. 2003).   The court applies a three part test to determine whether a property

18  right exists: "[f]irst, there must be an interest capable of precise definition; second, it must be

19  capable of exclusive possession or control; and third, the putative owner must have established a

20  legitimate claim to exclusivity."  *Id.* at 1030; *Boon Rawd Trading Int'l Co. v. Paleewong Trading*

21  *Co.*, 688 F. Supp. 2d 940, 955 (N.D. Cal. 2010).

22        Plaintiffs allege that Defendant "unlawfully exercised dominion" over "Plaintiffs' personal

23  browsing history and other personally identifiable information – including full name, email

24  address, mailing address, zip code, telephone number, and credit card number" and that such

25  information is "valuable property owned by Plaintiffs."  AC ¶¶ 110-111.  Plaintiffs' claim fails to

26  establish the requisite "property interest" to state a claim for conversion.  *See* Opp'n at 24-25

27  (Plaintiffs' opposition conflates the invasion of a *privacy* interest (discussed above), with the

28  conversion of a *property* interest).  As an initial matter, this court has already rejected a similar

21

argument because the weight of authority holds that a plaintiff's "personal information" does not constitute property.  *See, e.g.*, *In re iPhone Application Litig.*, __ F.3d __, Case No. 11-MD-02250-LHK, 2012 WL 2126351, at *27 (holding that "personal information" is not property); *see also Thompson v. Home Depot, Inc.*, No. 07cv1058 IEG, 2007 WL 2746603, at *3 (S.D. Cal. Sept. 18, 2007); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d at 715.

Additionally, although Plaintiffs allege that "personally identifiable information – including full name, email address, mailing address, zip code, telephone number, and credit card number" was disclosed to third parties, these statements are not supported by the factual allegations in the Amended Complaint.  Indeed, the factual allegations only establish disclosure of limited information.  This information includes the LinkedIn user identification number, the URL of the viewed LinkedIn profile pages, and allegedly the subsequent LinkedIn browser history.  Plaintiffs do not have a property interest in the information disclosed to third parties.  For one, the LinkedIn user identification number generated *by LinkedIn* is not property over which Plaintiffs have "established a legitimate claim to exclusivity."  *Kremen*, 337 F.3d at 1030.  Similarly, information such as what LinkedIn profile pages are viewed by a user is not "capable of exclusive possession or control."  *Id.*

Finally, Plaintiffs have failed to establish the requisite claim for damages necessary to establish a claim for conversion.  *Kremen*, 337 F.3d at 1029.  As explained in the November 2011 Order and as described above, "Low has failed to allege how he was foreclosed from capitalizing on the value of his personal data or how he was 'deprived of the economic value of [his] personal information simply because [his] unspecified personal information was purportedly collected by a third party.'"  November 2011 Order at 7 (citing *LaCourt v. Specific Media, Inc.*, No. SACV10-1256-GW(JCGx), 2011 WL 1661532 at *5 (C.D. Cal. Apr. 28, 2011)).  The Amended Complaint fails to cure this deficiency, and therefore, Plaintiffs have not established a necessary element of their claim for conversion.  Accordingly, Defendant's motion to dismiss Plaintiffs' sixth cause of action is GRANTED.

The original complaint also included a claim for conversion.  Compl. ¶¶ 108-111.  Defendant asserted the same arguments in its initial motion to dismiss as it asserts in the second

Case No.: 11-CV-01468-LHK
ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1   motion to dismiss.  *Compare* Motion to Dismiss at 23-24, ECF No. 13 *with* Mot. to Dismiss at 23-

2   24, ECF No. 34.  In the original motion to dismiss the conversion claim, Defendant argued that

3   Plaintiffs failed to establish a property interest in the personal information transmitted to third

4   parties and resulting damages in order to state a claim for conversion.  Despite this notice,

5   Plaintiffs did not cure these defects in the Amended Complaint.  Therefore, leave to amend

6   Plaintiffs' claim for conversion would likely be futile, and Defendant's motion to dismiss is

7   granted with prejudice.

8                           **6.  Unjust Enrichment**

9          Plaintiffs' seventh cause of action against Defendant is for unjust enrichment.  AC ¶¶ 113-

10   121.  Plaintiffs' opposition failed to address their claim for unjust enrichment.  Accordingly, the

11   Court deems this claim abandoned.  *See In re TFT-LCD Antitrust Litig.*, 586 F. Supp. 2d 1109,

12   1131 (N.D. Cal. 2008).

13          Moreover, California does not recognize a stand-alone cause of action for unjust

14   enrichment: "[u]njust enrichment is not a cause of action, just a restitution claim."  *Hill v. Roll Int'l*

15   *Corp.*, 195 Cal. App. 4th 1295, 1307 (2011); *accord Levine v. Blue Shield of Cal.*, 189 Cal. App.

16   4th 1117, 1138 (2010); *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003);

17   *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010).  Both this Court, as well as other

18   federal district courts, have previously determined that "there is no cause of action for unjust

19   enrichment under California law."  *Fraley v. Facebook*, 830 F. Supp. 2d 785, 2011 WL 6303898,

20   at *23 (N.D. Cal. 2011); *accord Ferrington v. McAfee, Inc.*, No. 10–cv–01455–LHK, 2010 WL

21   3910169, at *17 (N.D. Cal. 2010); *see also Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976,

22   987 (N.D. Cal. 2010) (Illston, J.) (dismissing with prejudice plaintiffs' unjust enrichment claim

23   brought in connection with claims of misappropriation and violation of the UCL because unjust

24   enrichment does not exist as a stand-alone cause of action); *Specific Media, Inc.*, 2011 WL

25   1661532 at *8 (dismissing unjust enrichment claim because it "cannot serve as an independent

26   cause of action"); *In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1091–92 (C.D.

27   Cal. 2010) (same).  Thus, Plaintiffs' unjust enrichment claim does not properly state an

28   independent cause of action and must be dismissed.  *See Levine*, 189 Cal. App. 4th at 1138.

Case No.: 11-CV-01468-LHK
ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS

1    Accordingly, Defendant's motion to dismiss Plaintiffs' seventh cause of action is GRANTED.

2    Because this claim is not recognized in California as a matter of law, Defendant's motion to

3    dismiss is granted with prejudice.

### 7.   Negligence

5    Plaintiffs' eighth cause of action is a claim for negligence against Defendant.  The elements

6    of negligence under California law are: "(a) a *legal duty* to use due care; (b) a *breach* of such legal

7    duty; [and] (c) the breach as the *proximate or legal cause* of the resulting injury." *Evan F. v.*

8    *Hughson United Methodist Church*, 8 Cal. App. 4th 828, 834 (1992) (italics in original).  Plaintiffs

9    allege that "LinkedIn owed a duty to Plaintiffs and Class members to comply with its stated

10   privacy policy and terms of service, and to protect its users' information from disclosure to or

11   access by unauthorized third parties."  AC ¶ 123.  Plaintiffs allege that LinkedIn breached that duty

12   by allowing disclosure of LinkedIn IDs to third parties and allowing access to users' LinkedIn

13   profile pages.  AC ¶ 124.

14   Even assuming that LinkedIn owes an affirmative duty not to disclose the LinkedIn user

15   identification numbers, or to allow third parties access to users' LinkedIn profile pages, Plaintiffs

16   have not alleged an "appreciable, nonspeculative, present injury." *See Aas v. Super. Ct.*, 24 Cal.

17   4th 627, 646 (2000) *superceded by statute on other grounds as stated in Rosen v. State Farm Gen.*

18   *Ins. Co*., 30 Cal. 4th 1070, 1079-80 (2003).  Plaintiffs allege that "LinkedIn's negligent actions

19   directly and proximately caused Plaintiffs and Class members harm."  AC ¶ 125.  Beyond this

20   allegation, Plaintiffs have not identified what the "appreciable, nonspeculative, present injury" is.

21   Indeed, as explained above, the Amended Complaint fails to allege how either Plaintiff was

22   foreclosed from capitalizing on the value of his personal data.  Moreover, although Plaintiffs

23   theorize that third parties could de-anonymize this data, it is not clear that anyone has actually done

24   so, or what information, precisely, these third parties have obtained.  Therefore, Defendant's

25   motion to dismiss the eighth cause of action for negligence is GRANTED.

26   The original complaint did not include a claim for negligence.  Although a claim for

27   negligence was not addressed in the November 2011 Order, the Court's *reasoning* in dismissing

28   the original complaint put Plaintiffs on notice that they had to articulate a nonspeculative theory of

Case No.: 11-CV-01468-LHK
ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS

1   actual harm in the Amended Complaint.  In the November 2011 Order, the Court found that

2   Plaintiff's original complaint failed to establish harm under Article III standing.  Specifically, the

3   Court explained that Plaintiff's theory of emotional harm was deficient because "Plaintiff has not

4   alleged that his browsing history, with embarrassing details of his personal browsing patterns, was

5   actually linked to his identity by LinkedIn" and that "Plaintiff's allegation that his sensitive

6   information may be transmitted via his browser history is too theoretical."  November 2011 Order

7   at 4-5.  Similarly, the Court explained that Plaintiff "failed to allege facts that demonstrate that he

8   was economically harmed by LinkedIn's practices" and that that Plaintiff "failed to allege how he

9   was foreclosed from capitalizing on the value of his personal data or how he was 'deprived of the

10  economic value of [his] personal information simply because [his] unspecified personal

11  information was purportedly collected by a third party."  *Id*. at 7 (citing *Specific Media*, 2011 WL

12  1661532 at *5).

13          Although the Amended Complaint and opposition to the second motion to dismiss clarified

14  that Plaintiffs have statutory standing in this case, Plaintiffs still have not established a cognizable

15  theory of appreciable, nonspeculative injury to state a claim for negligence.  Given that Plaintiffs

16  were on notice of this Court's concerns regarding the theory of harm and failed to cure the defects

17  in the Amended Complaint, it appears that leave to amend would likely be futile.  Accordingly,

18  Defendant's motion to dismiss the negligence claim is granted with prejudice.

19          **C.      Leave to Amend**

20          In order to determine whether leave to amend should be granted, the Court must consider

21  "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

22  deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of

23  allowance of the amendment, [and] futility of amendment, etc.'"  *Eminence Capital, LLC v.

24  Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182

25  (1962)).  Leave to amend need not be granted where doing so would be an exercise in futility.  *See

26  Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011) (leave to amend).  "A district court may

27  deny a plaintiff leave to amend if it determines that allegation of other facts consistent with the

28  challenged pleading could not possibly cure the deficiency, or if the plaintiff had several

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    opportunities to amend its complaint and repeatedly failed to cure deficiencies." *Telesaurus VPC,*

2    *LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (citations and quotation marks omitted).

3           All of the asserted claims in the Amended Complaint, with the exception of Plaintiffs'

4    claim for negligence, were raised in the original complaint.  As explained above, with respect to

5    each cause of action, Plaintiffs' claims are dismissed without leave to amend either (1) because the

6    claim is legally defective, (2) because Defendant raised the same issue in the initial motion to

7    dismiss which Plaintiff failed to cure in the Amended Complaint, and/or (3) because the Plaintiff

8    failed to cure deficiencies regarding Plaintiff's theory of harm as identified in the November 2011

9    Order.

10           In the first category of claims, the Court finds that Plaintiffs' SCA claim and the claim for

11   unjust enrichment are legally defective and cannot be cured by amendment.  As explained above,

12   these claims fail because the theory upon which the claims are based are legally defective.

13           In the second category of claims, the Court finds that Plaintiffs' claims if invasion of

14   privacy, breach of contract, violation of the FAL, and conversion are dismissed with prejudice

15   because any amendment would likely be futile.  Defendant's first motion to dismiss placed

16   Plaintiffs on notice regarding the deficiencies of these claims in the complaint, and Plaintiffs failed

17   to cure the defects in the Amended Complaint.

18           Finally, in the third category, the Court finds that amendment of Plaintiffs' breach of

19   contract, conversion and negligence claims would be futile because each claim fails to establish

20   cognizable harm and to cure the deficiencies identified in the November 2011 Order.

21           For the foregoing reasons, the Court finds that leave to amend would be futile as to each of

22   the claims in the Amended Complaint.  Therefore, Defendant's motion to dismiss for failure to

23   state a claim is granted with prejudice.

24   **III.      CONCLUSION**

25           For the foregoing reasons the Defendant's Motion to Dismiss is DENIED in part and

26   GRANTED in part.

27           Defendant's motion to dismiss for lack of Article III standing is DENIED.

28           Defendant's motion to dismiss Plaintiff's SCA claim is GRANTED, with prejudice.

Case No.: 11-CV-01468-LHK
ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS

1      Defendant's motion to dismiss Plaintiff's invasion of privacy claim under the California

2 Constitution is GRANTED, with prejudice.

3      Defendant's motion to dismiss Plaintiff's common law invasion of privacy claim is

4 GRANTED, with prejudice.

5      Defendant's motion to dismiss Plaintiff's FAL claim is GRANTED, with prejudice.

6      Defendant's motion to dismiss Plaintiff's breach of contract claim is GRANTED, with

7 prejudice.

8      Defendant's motion to dismiss Plaintiff's conversion claim is GRANTED, with prejudice.

9      Defendant's motion to dismiss Plaintiff's unjust enrichment claim is GRANTED, with

10 prejudice.

11      Defendant's motion to dismiss Plaintiff's negligence claim is GRANTED, with prejudice.

12      The Clerk shall close the file.

13 **IT IS SO ORDERED.**

14 Dated: July 12, 2011

_____
LUCY H. KOH
United States District Judge

Case No.: 11-CV-01468-LHK
ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS